Case 3:00-cv-01050-AVC   Document 119   Filed 11/19/2003   Page 1 of 34 District Court
District of Connecticut
FILED AT HARTFORD
11/19/03
Kevin F. Rowe, Clerk
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MARY CARR, ET AL          :     CIVIL ACTION NO.: 3 00 CV1050 (AWT)
     *Plaintiffs*            :
                             :     US DISTRICT COURT
     v.                     :     HARTFORD CT
                             :

PATRICIA WILSON-COKER,
COMMISSIONER OF THE DEPARTMENT
OF SOCIAL SERVICES         :
     *Defendant*            :     OCTOBER 31, 2003

## DEFENDANT'S REPLY BRIEF IN SUPORT OF MOTION FOR SUMMARY JUDGMENT

The defendant primarily relies upon her August 8, 2003 Memorandum in Support of Motion of Summary Judgment. The defendant selectively replies in this memorandum only to certain of the claims made in plaintiffs' memorandum in opposition to the defendant's motion for summary judgment.

I.      **Defendant's Statements of Fact as "Material" (Pl. Br., pp 4-6).**

Plaintiffs claim that defendant's Local Rule 56(a)1 Statements of Fact Nos. 6, 7, 17, 18 and 29 are "inmaterial" and should not be considered by this Court.

Plaintiffs do not claim that statements 17, 18, and 29 are inadequately supported, but claim that these statements are "immaterial" because the term "general population" has been construed by several cases to require comparison of access to the "insured population." The disputed statements indicate that only about half of the general population is covered by any form of third party dental coverage, that the population is diverse regarding a number of factors that are associated with dental utilization (other than insured status), including income level, age, family size, race, and parental education levels, and that even generous commercial plans,

insuring middle and upper middle class individuals, do not achieve 80% utilization levels (the

EPSDT dental screening goal set by the federal agency). These facts are material to this action

because the defendant disputes plaintiffs' statutory interpretation and maintains that, in the

absence of ambiguity, the term "general population" must be construed in accordance with its

common, everyday meaning to mean the entire population. These statements of fact are also

material because even if plaintiffs are correct and the statutory term "general population" can

somehow be re-written to mean "insured population" in order to achieve the policy objectives

sought by plaintiffs, factors such as race, income level, and parental education levels still impact

on the utilization levels of dental services, even if only insured individuals are considered. These

characteristic which have been demonstrated to be closely associated with low dental utilization,

are all present in the Medicaid population at much higher rates than in comparison to the insured

population. Plaintiffs, therefore, can't simply compare Medicaid dental utilization levels with

the utilization levels that are achieved by some third party insurers and claim that the resulting

discrepancy indicates a lack of Medicaid dental access, when the discrepancy in utilization levels

can be explained by a host of other factors.

Statement of Fact 7 that the Department is in the progress of "carving out" dental

services from managed care is also material to this action. Plaintiffs assert claims for equitable

relief that are committed to the discretion of this Court. Plaintiffs have not clarified the relief

that they are seeking, but presumably seek some kind of order requiring the defendant to ensure

that its contractual Medicaid managed care organizations ("MCOs") pay higher rates of

reimbursement to their participating providers. Assuming arguendo that plaintiffs can establish a

"violation" of 42 U.S.C. § 1396a(a)(30(A), plaintiffs make no effort at reconciling how the

defendant state agency can/should do that when its contractual payments to MCOs are

constrained by a number of other federal statutory requirements (discussed in our brief in chief) which require its contractual payments to MCOs to be cost-effective (in comparison to aggregate, total expenditures for the Medicaid fee for service program), in accordance with actuarial certifications, and pre-approved by the federal Secretary.  Plaintiffs also do not adequately address defendant's arguments that the requirements of 42 U.S.C. § § 1396a(a)(30)(A) and 1396a(a)(8) do not apply in a managed care environment because they have been superceded by subsequent statutory provisions that specifically apply to managed care.  As demonstrated in our brief in chief (and not adequately responded to by plaintiffs), the Medicaid managed care statutory provisions contain specific statutory requirements regarding access to services and the sufficiency of managed care provider networks- which statutory provisions omit any requirements related to the adequacy of rates of provider reimbursement.  The federal courts have been repeatedly advised, in the interests of federalism, to avoid unnecessary intrusions into state affairs.  Printz v. U.S., 521 U.S. 898 (1997).  Gregory v. Ashcroft, 501 U.S. 452 (1991).  In a relatively short period of time, Medicaid dental services will be removed from managed care and will be administered directly by the State on a fee for service basis, using the administrative assistance of a dental services administrator.  Plaintiffs' statutory claims (all of which are only asserted to the extent that dental services are provided through a managed care system) will become moot, and plaintiffs will be free to assert any statutory claim they wish (including 42 U.S.C. § § 1396a(a)(30)(A) and 1396a(a)(8)) if the defendant fails to administer the program in compliance with the requirements of federal law (without any complications attributable to the use of managed care).  Under such circumstances, it is appropriate for the Court to consider that the challenged system is in the process of being removed and altered by the state, on its own volition, in the absence of any court order.

3

II.    **Standards for Finding Individual Enforceable Rights (Pl. Brief, pp. 12-27).**

Plaintiffs deny that <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 112 S.Ct. 2268 (2002), which was subsequently applied by the Second Circuit in <u>Taylor v. Vermont Department of Education</u>, 313 F.3d 768 (2d Cir. 2002), constitutes any change in the standards that are applied in determining whether an individual can enforce a spending clause, federal statutory provision in a § 1983 action. They maintain that a statute is privately enforceable as long as it imposes a mandatory <u>duty</u> on the defendant which is both capable of judicial enforcement and "intended to benefit" plaintiffs. Plaintiffs go so far as to suggest that, "A correct application of <u>Blessing</u> and its predecessor cases (<u>Golden State Transit</u>, <u>Wilder</u>, <u>Wright</u>, <u>Suter</u>) will necessarily lead to the correct application of <u>Gonzaga</u>," pl. memo in opp. p. 22., and repeatedly argue that the statutory provisions cited in their complaint are privately enforceable based upon a mandatory duty/ intention to benefit analysis and pre-<u>Gonzaga</u> case law. <u>Gonzaga</u>, and <u>Taylor</u> directly rebut plaintiffs' contentions. Indeed, it is hard to believe from the parties' prior briefing that all parties have read the same cases.

Certiorari was granted in <u>Gonzaga</u> for the express purpose of clarifying the perception that <u>Blessing v. Freestone</u>, 520 U.S. 329, 117 S.Ct. 1353 (1997), allows "plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls with the general zone of interest that the statute is intended to protect." <u>Gonzaga</u>, 122 S.Ct. at 2275. <u>Gonzaga</u> expressly rejects the "intention to benefit" test that plaintiffs continue to maintain is still applicable, ruling:

> We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is <u>rights</u>, not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section.

4

Gonzaga, 122 S.Ct. at 2275.

Gonzaga clarifies prior Supreme Court precedent by indicating that a statute which requires the performance of specified duties in order to receive federal funds does not create enforceable rights unless the "text and structure" of the statute "clearly" and "unambiguously" demonstrate that Congress intends "to create new individual rights." 122 S.Ct. at 2277. Turning to the FERPA educational privacy statute at issue in that case, Gonzaga reiterates (and applies to § 1983 actions) its prior holding in Alexander v. Sandoval, 532 U.S. 275, 289 (2001) (an implied private right of action case) that "statutes that focus on the person regulated rather than the individual protected create 'no implication of an intent to confer rights on particular class of persons.'" 122 S.Ct. at 2277. It held that the "focus" of the statutory FERPA text was "two steps removed from the interests of the individual student", which "clearly does not confer the sort of 'individual entitlement' that is enforceable under § 1983." 122 S.Ct. at 2277 (emphasis in original). The statutory nondisclosure provisions at issue in Gonzaga were held to "speak any only in terms of institutional policy and practice, not individual instances of nondisclosure", such that it could not be construed to "give rise to individual rights." 122 S.Ct. 2278. Note that the statutory focus was held to be on the Secretary's determination of whether the institution complied with required practices, notwithstanding that the required statutory practices specifically referenced individual rights. 122 S.Ct. at 2278 fn. 6, quoting 20 U.S.C. § 1232g(b)(2)(A). As examples of individually-focused statutory provisions, Gonzaga cited Title VI and Title IX both of which are focused directly on the individual who is afforded enforceable rights.

Gonzaga also relied upon the fact that grantees can avoid termination of funding so long as they "comply substantially" with the Act's requirements, which statutory standard was held to be "not unlike Blessing, which found that Title IV-D failed to support a § 1983 suit in part because it only required 'substantial compliance' with federal regulations education records." 122 S.Ct. at 2278. The statutory standard for the termination of federal funds at issue in Gonzaga is directly analogous to the substantial compliance standard of 42 U.S.C. § 1396c, which applies to Medicaid.

This Court may not construe Gonzaga with a blank slate because the Second Circuit has already interpreted and applied Gonzaga in Taylor, supra.[1] Taylor overruled prior second circuit precedent in light of Gonzaga, thereby demonstrating that it is improper to continue to rely upon previous authority that had applied Blessing/Wilder standards, without re-examining the question anew in light of Gonzaga. It notes that Gonzaga expressly rejects the "intention to benefit test", and rigorously requires clear and unambiguous evidence that Congress intends to create individual rights, as evidenced by individually-focused, rights-creating language in the text of the statute. Taylor, 313 F.3d at 783, 784.

In order for individually enforceable rights to be found, Taylor holds that there may not be any ambiguity in the text of the statute as to whether Congress intended to directly create individual rights, or only intended to describe the conditions that must be satisfied by the State to receive federal funds. Accordingly, even a mandatory funding requirement, the performance of which is intended to benefit all recipients of assistance, is insufficient to create individually enforceable rights. The text of the statute at issue in Taylor expressly referenced the "rights" of

---

[1] Significantly, plaintiff ignore Taylor notwithstanding that it constitutes controlling authority in this circuit on the reach of Gonzaga. Respectfully, plaintiffs ignore Taylor because they cannot prevail on their arguments if Gonzaga is fairly applied, in accordance with the holding of Taylor.

students; however, it was held to be insufficient to create individual rights when the language was capable of being construed as only describing the duty that was owed by the fund granter to receive federal funds.[2]  The second circuit held that since the "language in § 1232 (g)(a) (referencing <u>rights</u>) can be read as simply modifying the terms imposed on fund receiving institutions, we cannot say that it creates an 'unambiguously conferred right.'" <u>Taylor</u> 313 F.3d at 785, quoting <u>Gonzaga</u>, 122 S.Ct. at 2275.[3]

   **(i)  The focus of § 1396a(a) is on the Secretary, or, at best, on the State, Not directly on individual recipients.**

   As noted in both parties prior briefing, <u>Blessing</u> cautions against conclusions being drawn broadly about the enforceability of all statutory provisions in an Act, and requires consideration of each particular statutory provision at issue.  Because of the structure and purpose of the Social Security Act, however, there <u>are</u> conclusions that can be drawn about <u>all</u> of the statutory claims that are asserted in this action.  First, like the FERPA statutory provisions at issue in <u>Gonzaga</u> and <u>Taylor</u>, the focus of the Medicaid Act is also on the federal Secretary – <u>two steps</u>

---

[2]   Respectfully, the case for finding individual rights in <u>Gonzaga</u> and <u>Taylor</u>, based upon the text of the statutes at issue in those cases which specifically referenced the "rights" of students and parents, was much stronger than the claims that are asserted in this action.  At best, the text of (some) of the Medicaid statutes asserted in this case evidence an intent to indirectly benefit "all" recipients of assistance by the state's performance of its funding obligations.  That is insufficient to create individual rights under <u>Gonzaga</u> and <u>Taylor</u>.

[3]   See also 31 <u>Foster Children v. Bush</u>, 329 F.3d 1255 (11th Cir. 2003) where the Eleventh Circuit applied <u>Gonzaga</u> to Social Security Act statutory provisions and held that the statues at issue in that case were not privately enforceable due to the absence of individually-focused, rights creating language.  <u>31 Foster Children</u> further clarifies that private enforcement is the <u>exception</u> rather than the rule, that <u>the use of language prescribing conditions for the receipt of federal funds does not constitute the required individually-focused, rights creating language</u>, that a substantial compliance standard for the termination of federal funds is inconsistent with the creation of individual entitlements, and that references to individual <u>rights in the content of describing the duties that must be performed by the State to obtain federal funds are insufficient since any such references "cannot make out the requisite congressional intent to confer individual rights enforceable by § 1983</u>.  <u>31 Foster Children</u>, 329 F.3d at 1272.

<u>removed from the interests of individual beneficiaries</u>. Specifically, the Act authorizes appropriations to the federal Secretary and specifies conditions "for making payments to States which have submitted and had approved by the Secretary, State plans for medical assistance." 42 U.S.C. § 1396. 42 U.S.C. § 1396b specifically authorizes the Secretary "to pay to each State" as sum equal to the applicable "Federal medical assistance percentage" of the amount expended by the State "medical assistance under the State plan." 42 U.S.C. § 1396b(a)(1).

The statutory requirements of 42 U.S.C. § 1396a(a) (which are common to all of plaintiffs' claims) are stated in terms of required state plan assurances which must be made by a participating state to the Secretary's satisfaction, as a condition for plan approval and the receipt of federal Matching funds under 42 U.S.C. § 1396b. <u>Each</u> provision in 42 U.S.C. § 1396a commences with the same preamble language that, "A state plan for medical assistance must _____ provide…" Accordingly, the statutory focus of both FERPA and Medicaid is the same, i.e., on the administering federal agency, specifying conditions when the agency may provide federal funds to the recipient of federal financial participation.

There are minor differences between the statutory language at issue in FERPA and the statutory language employed in Medicaid. The FERPA statutory provision at issue in <u>Gonzaga</u> specifies a prohibition on federal funding for institutions that do not comply with specified disclosure requirements in a discrete section of the Act, which provides that, "No funds shall be made available…to any educational agency or institution which also has a policy of denying (student access to educational records)" 20 U.S.C. § 1232g (a). The Medicaid Act is similarly structured in terms of conditions that must be satisfied before federal financial participation may be made available to the State. The only difference between FERPA and Medicaid is that instead of specifying the obligations that must be met by the grantee of federal funds in the same

section of the Act that authorizes funding, the conditions that must be met and the authority to expend funds are stated in two different sections. Specifically, 42 U.S.C. § 1396b specifies that federal funds can be provided to a state for a percentage of its assistance expenditures made in accordance with it approved Medicaid state plan, and 42 U.S.C. § 1396a specifies the assurances that must be provided by a State before the Secretary can approve its Medicaid state plan. The net result is the same, however, with the focus of both statutes or when the federal agency can disburse federal funds, i.e., two steps removed from the interests of individual recipients of assistance.

42 U.S.C. §1396a(a) specifically states requirements for the content Medicaid state plans. Even construing this section is isolation (without regard to the funding authority of 42 U.S.C. §1396 and 42 U.S.C. §1396b) all provisions in § 1396a(a) (including 42 U.S.C. § 1396a(a)(1), (8), (30) and (43) which are asserted in plaintiffs' Complaint) focus on the State and the required content of its Medicaid state plan assurances. Arguably, the focus of each subsection of this section, construed in isolation from § 1396b, is on the State and its plan assurances rather than on the federal Secretary. However, even if the focus of these provisions is on the State rather than on the Secretary, the focus is <u>still</u> <u>at</u> <u>least</u> <u>one</u> <u>step</u> <u>removed</u> <u>from</u> <u>the</u> <u>interests</u> <u>of</u> <u>beneficiaries</u>.[4] As noted by <u>Gonzaga</u> and <u>Alexander v. Sandoval</u>, "statutes that focus on the person regulated rather than the individual protected create no implication of an intent to confer rights on a particular class of persons'". <u>Gonzaga</u>, 122 S.Ct. at 2277, quoting <u>Alexander</u> 121 S. Ct. at 1511. The fact that the required state plan assurances are phrased in mandatory terms and may

---

[4]    The statutory focus of 42 U.S.C. § 1396a(a) is on the State, and not directly on individual recipients of assistance. 42 U.S.C. §1396a(a) also only imposes <u>aggregate</u> requirements, in terms of state plan assurances that apply generally to the State's administration of its program. The language and structure of § 1396a(a) is not at all similar to the language employed by Congress in Titles VI and IX, which were cited as examples of individually-focused statutes in <u>Gonzaga</u>.

indirectly benefit recipients of assistance is <u>insufficient</u> after <u>Gonzaga</u> and <u>Taylor</u> to demonstrate clear and unambiguous Congressional intent to create individual entitlements directly in each recipient of assistance.

### ii. The Substantial Compliance Standard Bars Any Individual Rights.

Second, none of the required state plan assurances in 42 U.S.C. § 1396a(a) can give rise to enforceable individual entitlements because compliance with <u>all</u> of the requirements of § 1396a(a) is subject to the substantial compliance standard of 42 U.S.C. § 1396c.[5] <u>Gonzaga</u>, <u>supra</u>; <u>Blessing</u>, <u>supra</u>; <u>31 Foster Children</u>, <u>supra</u>; <u>Sabree v. Houston</u>, 245 F. Supp. 2d 653 (E.D. Pa 2003), <u>M.A.C. v. Betit</u>, 2003 WL 22119134 (D. Utah 2003). Plaintiffs claim in their brief that the substantial compliance bar to the availability of a § 1983 cause of action does not apply in this case because the substantial compliance standard is not directly woven into the statutory provisions that plaintiffs seek to enforce (as it was in <u>Blessing</u>, when Plaintiffs sought to enforce a statutory requirement that the states substantially comply with their Title IV-D child support obligations), but is provided in a separate section of the statute that authorizes the Secretary to terminate federal funding. <u>This purported distinction was expressly rejected by the Supreme Court in Gonzaga</u>. Specifically, <u>Gonzaga</u> notes that no individual entitlement is created by FERPA since, "Recipient institutions can further avoid termination of funding so long as they 'comply substantially' with the Act's requirements. § 1234c(a)." <u>Gonzaga</u>, 122 S.Ct. at 2278. <u>Gonzaga</u> specifically holds that the substantial compliance standard for the termination of federal educational funds in 20 U.S.C. § 1234c(a) "is not unlike <u>Blessing</u>, which found that Title IV-D

---

[5]    The defendant will not repeat her "substantial compliance" argument <u>infra</u> when she analyzes each of the particular statutory provisions asserted in the complaint. The record should be clear, however, that it is the defendant's position that none of this claims asserted in the complaint are actionable because all of plaintiffs' claims are subject to the substantial compliance standard.

failed to support a § 1983 suit in part because it only required 'substantial compliance' with federal regulations." Gonzaga, 122 S.Ct. at 2278. The ability of the federal Secretary to terminate educational federal funds upon noncompliance with a substantial compliance standard in 20 U.S.C. § 1234c(a) is essentially identical to, and cannot distinguished from, the similar authority of the federal Secretary to take action against a State that has failed to substantially comply with Medicaid Act statutory requirements as a result of 42 U.S.C. § 1396c. Gonzaga, therefore, precludes this Court from finding that any of plaintiffs' claims are individually enforceable by § 1983 since compliance with all claims is subject to the substantial compliance standard.[6]

### (iii)  42 U.S.C. § 1320a-2 does not impact upon the Gonzaga analysis.

Plaintiffs' reliance on the Congress' 1994 enactment of 42 U.S.C. § 1320a-2 in reaction to the decision of Suter v. Artist M, 503 U.S. 347, 112 S.Ct. 1360 (1992), is also misplaced. 42 U.S.C. § 1320a-2 does not manifest congressional intent that all Social Security Act provisions are privately enforceable, as suggested by plaintiffs in their brief. Indeed, Congress specifically provides in that statute that it does not intend to override the holding of Suter that the particular statutory provisions at issue in that case are not privately enforceable in a § 1983 action. The import of 42 U.S.C. § 1320a-2 is limited to the rule that "the mere fact that an obligation is couched in a requirement that the State file a plan is not itself sufficient grounds for finding the obligation unenforceable under § 1983." Harris v. James, 127 F.3d 993, 1003 (11th Cir. 1997)

---

[6]    The defendants' argument that no individually enforceable rights can be found as a result of the applicability of the "substantial compliance" standard is particularly strong because this case arises out of the Medicaid managed care content. The federal statutory provisions that apply to state Medicaid managed care programs specially make State and MCO compliance with their respective statutory obligations subject to a substantial compliance standard. 42 U.S.C. § 1396u-2(e); 42 U.S.C. 1396b(m)(5). In addition, plaintiffs' EPSDT claims have also been held to be specifically subject to a substantial compliance standard as a result of the terms of 42 U.S.C. § § 1396a(a)(43) and 1396d(r). (discussed infra).

(emphasis in original). Indeed, it is not at all clear that 42 U.S.C. § 1320a-2 is of any significance because it is not at all clear that "Suter announced or implicitly stood for the rule rejected by Congress." Harris v. James, 127 F.3d at 1003.

In any event, 42 U.S.C. § 1320a-2 clearly only attempts to override one rationale that may, or may not, have been relied upon by the Court in Suter, i.e., that the mere fact that the requirement is stated in the form of a state plan assurance makes it unenforceable. 42 U.S.C. § 1320a-2 does not purport to override the subsequent requirements of Gonzaga, that: 1) Congress must have clearly and unambiguously indicated its intention to create individually enforceable rights through the use of individually – focused, rights-creating language in the text of the statute; and 2) that a substantial compliance standard for federal enforcement precludes the ability of a Court to find that Congress created individually-enforceable "entitlements."

III.    **42 U.S.C. § 1396a(a)(30)(A) is Not Enforceable § 1983 (Pl. Brief 31-45).**

Plaintiffs maintain that they are entitled to enforce the quality of care and equal access requirements of 42 U.S.C. § 1396a(a)(30)(A)[7] primarily as a result of prior case law that applied a Wilder/Blessing "intention to benefit"/mandatory duty/capable of judicial enforcement analysis. This case law is no longer fully applicable, post-Gonzaga, in light of the clarifications provided by Gonzaga that enforceable rights can only rarely be found in spending clauses legislation, that Congress must clearly and ambiguously intend to create individually-enforceable rights as evidenced by individually-focused rights-creating language in the text of the statute, and that a substantial compliance enforcement standard precludes individually enforceable rights. Instead of analyzing the text of the statute for evidence of individually-focused, rights-creating language, plaintiffs merely assert, in conclusory fashion, that plaintiffs have individually

---

[7] The only "quality of care" concern expressed, however, is "access", so the defendant treats both of these § 1396a(a)(30)(A) claims as claims for "access".

12

enforceable rights because the ultimate purpose of the statutory provision is to benefit them, by assuring their access to care. Plaintiffs thereby miss the whole point of Gonzaga, which is that not every statutory duty, the performance of which will benefit a class of individuals, creates individual rights. Enforcement of funding conditions is left to the administering federal agency, with recipients of assistance only allowed to enforce their individual rights which Congress clearly and unambiguously intended to confer directly on them.

Indeed, plaintiffs are not even consistent in their conclusory assertions, first asserting (without support) that Congress intended to create individual rights in 42 U.S.C. § 1396a(a)(30)(A) "through rights creating language that is individually-focused," Pl. Br. p. 36, but then acknowledging, in almost the very next sentence, that the statutory obligation "is directed…toward the defendant and its direct obligation to implement a state plan mandate." Id.[8]

Plaintiffs cite three cases which purport to apply Gonzaga and hold that 42 U.S.C. § 1396a(a)(30)(A) creates individually enforceable rights in recipients of assistance. One of the cases cited, Pennsylvania Pharmacists Ass'n v. Houston, 283 F.3d 531 (3rd Cir.), cert den., 537 U.S. 821 (2002), is in fact, a pre-Gonzaga case that was decided several months prior to the Supreme Court's decision in Gonzaga. Applying a Wilder/Blessing analysis, it held that participating providers are not the intended beneficiaries of 42 U.S.C. § 1396a(a)(30), and cannot

---

[8]    Plaintiffs thereby correctly acknowledge that 42 U.S.C. § 1396a(a)(30)(A) is directed at the defendant and describes the State agency's duty to set payment rates consistently with the requirements of 42 U.S.C. § 1396a(a)(30)(A). This acknowledgment precludes this Court from finding individually enforceable rights because the statute can be read (and plaintiffs acknowledge, should be read) as describing the duties owed by the defendant to receive federal funds. Gonzaga, supra; Taylor, supra. For individual rights to be found, it must be unmistakably clear that Congress intended to create individual rights as evidenced by the use of language that focuses directly on the class of individuals. If the statute can be read as focused on the state agency and describing its duties to receive federal funds, no individual rights can be found (even if the duties are mandatory, and even if the performance of its duties will benefit plaintiffs). Gonzaga, supra; Taylor, supra.

assert a claim as a result. Although it suggests that a recipients of assistance are the "intended beneficiaries" of the provisions, the third circuit makes no determination of whether Congress unambiguously intended to create individual rights under the more restrictive standard that was subsequently provided by Gonzaga. Pennsylvania Pharmacists Ass'n, therefore, is of no assistance to plaintiffs.

Upon analysis, the two post-Gonzaga district court cases cited by plaintiffs, McCree v. Odum, No. 4:00-CV-173(H)(4) (E.D.N.C. Nov. 26, 2002) and Association of Residential Resources in Minnesota v. Minnesota Commission on Human Services, 2003 WL 22037719 (D.Mn. 2003) are not at all persuasive and should not be followed by this Court. Both cases merely cite pre-existing authority in their circuit that 42 U.S.C. § 1396a(a)(30(A) is privately enforceable, and refuse to reconsider in light of Gonzaga in the absence of direction to do so by their circuit court. There is no controlling pre-Gonzaga authority on the enforceability of 42 U.S.C. § 1396a(a)(30)(A) in this circuit. Furthermore, even if there were pre-Gonzaga authority on point, this Court would be required, as a result of the direction provided by Taylor v. Vermont Dept' of Education, supra, to re-examine the prior authority and determine if it is still valid as a result of Gonzaga[9].

Turning to the text of 42 U.S.C. § 1396a(a)(30(A), considered alone, in isolation from 42 U.S.C. § § 1396 and 1396b, its focus is, as plaintiffs' acknowledge, on the State and the contents

---

[9]    As indicated supra, the second circuit in Taylor examined its prior precedent in light of Gonzaga and reversed its prior holding that the statue at issue was privately enforceable. The second circuit rigorously applied the Gonzaga standards, insisting on clear and unambiguous evidence, in the text of the statute, that Congress intended to create individual rights as evidenced of rights-creating language focused directly on the individual benefited. Taylor found insufficient evidence of an intention to create individual rights-notwithstanding the use of the word "rights" in the text of the statute – because Congress could have only intended to described the duty that is owed by the State as a condition of receiving federal funds from the administering federal agency.

of its required State plan assurances.  The State is required to assure the Secretary that its State

Medicaid Plan:

> provide(s) such methods and procedures relating to the utilization of, and the
> payment for, care and services available under the plan…as may be necessary to
> safeguard against unnecessary utilization…and to assure that payments are
> consistent with efficiency, economy, and quality of care and are sufficient to
> enlist enough providers so that care and services are available under the plan at
> least to the extent that such care and services are available to the general
> population in the geographic area.  42 U.S.C. § 1396a(a)(30)(A).

In order to be approved by the Secretary, the State's plan is required to *assure that*

methods and procedures are employed designed to ensure that its payments to providers are

consistent with five different factors.  Not only is the focus at least one step removed from the

interests of recipients of assistance, i.e., on the state, the statute also is focused on the aggregate

content of the plan in terms of the methods and procedures that are employed in determining

provider reimbursement.  It clearly can be ready as only describing the duty owed by the state to

qualify for federal funds.  Gonzaga, supra; Taylor, supra.  Notwithstanding that individual

recipients may ultimately benefit from the State's compliance with its state plan obligations, the

text of the statue is utterly devoid of the kind of individually-focused, rights-creating language

that is required after Gonzaga and Taylor to find individually enforceable rights in recipients of

assistance.[10]

IV.     **Alternatively, § 1396a(a)(30(A) Is Not Capable of Judicial Enforcement (Pl. Br. pp. 37-45)**

        Alternatively, 42 U.S.C. § 1396a(a)(30)(A) is not privately enforceable because it would

strain judicial competency for this Court to determine if the rates set by the MCOs are consistent

with five different, inconsistent factors.  The defendant's principal summary judgment brief

---

[10]    There certainly is no text in § 1396a(a)(30(A) granting each individual recipient with the
right to "rates" that are sufficient to ensure that each and every recipient of assistance will have
access to care, as claimed in plaintiffs' brief.

pointed out that all courts that have held that the equal access clause of 42 U.S.C. § 1396a(a)(30)(A) is capable of judicial enforcement have construed that clause in isolation, without considering the impact of the other four factors which must <u>also</u> be considered by the state in setting its rates. The failure of the courts to consider <u>all five</u> factors is not in accord with accepted rules of statutory interpretation, which require all factors in the statute to be considered, and all factors to be given effect.

Plaintiffs do not dispute the rule of statutory interpretation, but simply assert that other courts that have considered the question have "severed the provisions of this section into four requirements," and considered the equal access provision in isolation from the other four factors. Pl. Br., p. 31, citing <u>McCree v. Odum</u>, <u>supra</u>. The fact that other courts have considered the equal access factor in isolation from the other four factors that the State is also required to consider is precisely the point made by the defendant in her brief! This Court, therefore, must consider the issue, in accordance with accepted rules of statutory interpretation. All five factors must be considered together. The determination of the question of whether the state's reimbursement rates are consistent with all five, inconsistent factors is beyond the capabilities of the courts, and should be reserved for determination by the Secretary.[11]

---

[11]    Plaintiffs' suggestion that the admonition in <u>Blessing</u> "to identify with particularly the rights…claimed" and not to assess the statute as "an undifferentiated whole" supports consideration of the equal access factor in 42 U.S.C. § 1396a(a)(30)(A) in isolation from the other four statutory factors is clearly erroneous. The admonition in <u>Blessing</u> is to look at each statutory provision separately rather than making global assertions about the Act as a whole. The defendant is not raising this claim based upon global assertions of the Act as a whole. Instead, the defendant's claim is based upon the fact that the language employed in the particular section at issue, 42 U.S.C. § 1396a(a)(30)(A), requires the defendant to assure the Secretary that its payments are consistent with five factors. The defendant, in setting her reimbursement rates cannot consider any factors in isolation. Assuming <u>arguendo</u> that this section is somehow construed to create "individual rights", the contours of any individual right would be to methods and procedures that are designed to ensure that payment rates are consistent with <u>all</u> <u>five</u> <u>factors</u>. Any assumed "right", properly defined, is incapable of judicial enforcement.

V.      **Alternatively, The Equal Access Clause, Standing Alone, Does Not Create Individual Rights (Pl. Br. pp. 37-45)**

Alternatively, even if the equal access clause both confers individual rights and can be enforced in isolation from the other four factors that are required to be considered in settling reimbursement rates, the clause, by itself, is not privately enforceable because the clause it does not create individual entitlements and is incapable of judicial enforcement. As noted in the defendant's prior briefing, if Congress had intended to create individual entitlements to access to services, or even a mandatory <u>duty</u> (enforceably by the Secretary for the State) to set rates that are sufficient to ensure that <u>all</u> recipients will have access to services, it would have done so directly with straight-forward language to that effect. It did not do so, and only requires the States to assure the Secretary that its plan contains methods and procedures designed to ensure that its "rates" are "sufficient" to enlist "enough" providers such that care is available under the plan to the same extent that care is available to the "general population" in the "geographic area." Plaintiffs do not respond to the argument in defendant's primary brief that the foregoing standard does not create a duty on the State (much less an enforceable individual right) to ensure that <u>each</u> recipient of assistance will obtain access to care. In the absence of an individual entitlement for <u>all</u> recipients of assistance, enforceable individual rights are clearly <u>not</u> created. <u>Blessing</u>, <u>supra</u>; <u>Gonzaga</u>, <u>supra</u>.

Plaintiffs also do not respond to defendant's contention that <u>Blessing</u>, <u>supra</u>, and <u>Frazar v. Gilbert</u>, 300 F.3d 530, 547 (5th Cir. 2002), stand for the proposition that standards such as "sufficient" and "enough" are too vague to be susceptible to judicial enforcement.[12]

---

[12]    <u>Frazar</u> ruled, in the context of a 42 U.S.C. § 1396a(a)(30)(A) claim, that "<u>Blessing</u> makes clear that staffing mandates...are not enforceable under § 1983, since they do not give rise to

Plaintiffs only claim that 42 U.S.C. § 1396a(a)(30)(A) is capable of judicial enforcement because the statutory term "general population" has been construed to mean "insured population." Plaintiffs, however, make no claim that the term "general population" is ambiguous, thereby justifying resort to the legislative history. The cases cited by plaintiffs, including Arkansas Medical Society v. Reynolds, 6 F.3d 519, 529 (8th Cir. 1993), did not find that the term "general population" is at all ambiguous, but nevertheless construed the term in light of Congress' presumed policy intentions and its legislative history. In the absence of ambiguity, this Court is required to construe the term "general population" in accordance with its common, everyday plain meaning as referring to the entire population. Judicial review must end at the statute's unambiguous terms. In re: Venture Mortgage Fund, L.P. v. Schmutz, 282 F.3d 185, 188 (2nd Cir. 2002). Furthermore, "it is the statute and not the Committee Report which is the authoritative expression of the law." Leonard F. v. Israel Discount Bank of New York, 199 F.3d 99, 105 (2nd Cir. 1999). Accordingly, in the absence of ambiguity, it would be improper for this Court to construe the statute in a manner that would impose an obligation on the State (access comparable to access of insured population) that a majority of Congress was not willing to impose in the text of the legislation enacted into law.[13]**

VI.    **42 U.S.C. § 1396a(a)(30)(A) does Not Apply to the Managed Care Context (Pl. Br. p. 82).**

---

individual rights, and because an underfined standard of "sufficient" staffing would strain judicial competence." 300 F.3d at 547.

[13]    Plaintiffs' reliance on "regulatory" materials to support their "insured population" construction of 42 U.S.C. § 1396a(a)(30)(A) is also misplaced since the referenced materials do not constitute regulations, but are merely informal administrative interpretations. The administering federal agency cannot alter the plain meaning of the Act by mere administrative interpretation (or by formal regulation).

42 U.S.C. § 1396a(a)(30)(A) sets requirements, stated in terms of state plan assurances, that the state agency employ methods and procedures in setting provider reimbursement rates that are consistent with five factors. It is undisputed that the state agency does <u>not</u> set provider reimbursement rates in the managed care context, and that <u>MCOs</u> are free to negotiate rates of reimbursement with providers who elect to participate in <u>their</u> plans as long as the <u>MCOs</u> achieve prescribed results. 42 U.S.C. § § 1396b(m); 1396u-2.[14] Specific statutory provisions apply to Medicaid managed care programs. 42 U.S.C. § § 1396n(b), 1396b(m), and 1396u-2. As noted in the defendant's principal brief, federal managed care statutory provisions require the defendant's contractual payments to MCOs to be both cost-effective (in comparison to total, aggregate expenditures for the Medicaid fee for service program) and in accordance with capitation rates that are certified to be actuarially sound. 42 U.S.C. § 1396b(m) and 42 C.F.R. § 438.6(c)(2)(i). The Medicaid managed care statutes specifically address client ability to access services. 42 U.S.C. § 1396u-2(b)(5) (MCO must provide assurances that it "maintains a sufficient number, mix, and geographic distribution of providers") and § 1396b(m)(l)(A)(i) (defining a MCO as an organization that makes its services available to MCO enrollees to the same extent that services are available to Medicaid recipients not enrolled in managed care). However, there are significant differences between the federal Medicaid statutes applicable to managed care and the statute applicable to the fee for service program where the State sets its own rates of reimbursement. Specifically, notwithstanding that the managed care statutes specifically address access to care, in marked contrast to 42 U.S.C. § 1396a(a)(30)(A), <u>the managed care statutes impose no requirements related to the methods and procedures that are employed by managed care organizations in setting rates of reimbursement.</u> The <u>only</u> statutory

---

[14]    By its terms, 42 U.S.C. § 1396a(a)(30)(A) only applies to the assurances that must be provided <u>when the State agency sets the rates that it pays to participating providers.</u>

requirement is that MCOs maintain "a sufficient number, mix, and geographic distribution of providers." 42 U.S.C. § 1396u-2(b)(5). This statutory requirement is implemented by a regulation that provides guidance on when a provider network is "sufficient", but contains no regulatory requirement related to rates of reimbursement paid by MCOs. 42 C.F.R. 483.206(b)(1).

Plaintiffs' 42 U.S.C. §1396a(a)(30(A) claim is specifically targeted at the adequacy of rates paid to participating providers by MCOs. However, Congress specifically omitted any statutory requirements applicable to payment rates set by MCOs – only requiring that MCOs assure a sufficient number, mix, and geographic distribution. In accordance with accepted rules of statutory interpretation, the only conclusion that can reasonably be drawn is that 42 U.S.C. § 1396a(a)(30)(A) does not apply in the managed care context because it has been superceded by subsequent provisions that specifically address access to care in a managed care environment. Plaintiffs only assert claims predicated upon 42 U.S.C. § 1396a(a)(30)(A), and do not assert any claim predicated upon the managed care statutes. Summary judgment, therefore must enter in favor of the defendant on the 42 U.S.C. § 1396a(a)(30)(A) claims that are asserted in plaintiffs' complaint.[15]

Plaintiffs cite a number of cases in their brief in opposition which cases allegedly demonstrate that 42 U.S.C. § 1396a(a)(30(A) continues to apply in the managed care context. Upon analysis, none of the cases cited by plaintiffs support their claim.

---

[15] The managed care statutes and implementing regulations also specifically set requirements regarding the prompt provision of services, which provisions also supercede (and, indeed, exceed the scope of) § 1396a(a)(8). According, for essentially the same reasons, summary judgment must enter in favor of the defendant on plaintiffs' § 1396a(a)(8) claim.

Westside Mothers v. Haveman, 289 F.3d 852, 863 (6th Cir. 2002) was primarily concerned with novel jurisdictional issues. It briefly found, with minimal analysis (based upon prior case law that must now be re-examined in light of Gonzaga) , that a number of statutes, including U.S.C. § § 1396a(a)(8), 1396a(a)(30)(A) and 1396u-2, create rights that are enforceable by § 1983; however, the defendant's supercedence argument was not raised and the Court did not consider which of these statutory provisions applies to Michigan's Medicaid managed care program.

In Pennsylvania Pharmacists Association v. Houston, 2000 WL 730344 (E.D. Pa. 2000), the State of Pennsylvania did not dispute (and erroneously acknowledged) that 42 U.S.C. § 1396a(a)(30)(A) applied to Medicaid managed care, so there was no occasion for the court to consider the argument raised by this defendant  Rosie D. v. Romney, 256 F. Supp 2d 115 (D. Ma. 2003) and Ward v. Presbyterian Healthcare Services, 79 F. Supp 2d 127 (D.N.M. 1999) are of absolutely no help because one case involved a discovery dispute and the other a money damage, negligence claim. The courts' discussions of 42 U.S.C. § 1396u-2 is of no assistance to this case.[16]

Finally, it is impossible to read too much into the obscure indication in Oklahoma Chapter of the American Academy of Pediatrics v. Fogarty, 205 F. Supp. 2d 1265, 1272 (N.D. Okl. 2002) ( a pre-Gonzaga case) that U.S.C. § 1396u-2 creates enforceable rights because it "appl(ies) the duties of the first four provisions to the state's official management of managed care organizations." The Fogarty court only held that 42 U.S.C. § § 1396a(a)(8),

---

[16]    Hillburn v. Maher, 795 F.2d 252 (2nd Cir. 1986) is similarly of no avail because it only upheld the injunction of the District Court, which required the State agency to fulfill its regulatory obligation to take corrective action as needed based upon the findings of inspection review teams. It did not address the question of whether a Medicaid statutory provision had been superceded by another subsequent provision that specifically applies to managed care.

1396a(a)(30)(A), and 1396u-2 all create enforceable rights, <u>without addressing whether or not 42</u>

<u>U.S.C. § § 1396a(a)(8) and 1396a(a)(30) continue to apply to managed care in light of the</u>

<u>specific provisions of § 1396u-2</u> . Indeed, the indication that § 1396u-2 applies to the state's

management of managed care organizations <u>can just as readily be read as only that section</u>

<u>applies to managed care.</u>[17]

## VII.    42 U.S.C. § 1396a(a)(8) Does Not Require The State Medicaid Agency To Ensure That Every Recipient Of Assistance Will Obtain Care From A Participating Provider (Pl. Br. 45-49).

Plaintiffs assert in, solely conclusory fashion, without any support from the terms of the

statute or its implementing regulation, that the reasonable promptness provision of 42 U.S.C. §

1396a(a)(8) "is a directive to the state to ensure, through providers, the furnishing of those

services on a continuing, timely basis." Pl. Memo in Opp. p. 49. 42 U.S.C. § 1396a(a)(8)

imposes no such obligation on the state Medicaid agency.

Assuming <u>arguendo</u> that the reasonable promptness obligation of 42 U.S.C. § 1396a(a)(8)

extends at all beyond the initial determination that the client is eligible for assistance, it does not

impose an obligation on the state agency to ensure that all recipients will be furnished services

promptly by participating dentists. The assistance that must be provided with reasonable

promptness is "<u>medical assistance</u>." As noted in our prior brief in support of summary judgment

at pp. 5-6, and 53-60, the term <u>medical assistance</u> "is defined as <u>payment</u> for a covered service

that a participating provider undertakes to provide on behalf of a recipient of assistance. 42

U.S.C. § § 1396d(a), 1396a(a)(23), 1396a(a)(27). Accordingly, to the extent that the reasonable

promptness provision of 42 U.S.C. § 1396a(a)(8) (plan must assure that "…such assistance shall

---

[17]  <u>Fogarty</u> certainly does not acknowledge the differences between 42 U.S.C. § 1396a(a)(30)(A) and § 1396u-2, notably the absence of any statutory requirements in § 1396u-2concerning the methods that are employed by MCOs in setting payment rates.

furnished with reasonable promptness to all eligible individuals") and 42 C.F.R.

435.____(b)("continue to furnish Medicaid regularly to all eligible individuals…") extend

beyond "the initial determination of eligibility, the obligation can only be construed to refer to

the agency's administrative function of furnishing the benefit provided by the Act, i.e., payment

for a covered service that a participating provider undertakes to provide.  The agency does not

provide any medical services directly, by itself, but reimburses participating providers who

undertake to provide a covered service.  It is under no statutory obligation to ensure that every

recipient will promptly find a provider who is willing to undertake to provide a service.

To be sure, a number of cases, including cases relied upon by plaintiffs, have

misconstrued 42 U.S.C. § 1396a(a)(8) as imposing an obligation on the agency to ensure that

services are provided promptly for every individual who desires to receive a service.  The

seventh circuit in Bruggeman v. Blagojevich, 324 F.3d 906, 910 (7th Cir. 2003) recently rejected

such authority, including cases relied upon by the plaintiffs such as the Bryson v Shumway, 308

F.3d 79 (1st Cir. 2002) and Doe v. Chiles, 136 F.3d 709 (11th Cir. 1998), correctly ruling that

those cases had failed to acknowledge that the "medical assistance" provided by the Act is the

financial benefit of payment for a covered service.  Plaintiffs criticize Bruggeman because it

allegedly "bypasses the express language of the statute and implementing regulations."  Pl.

Memo in Opp. p. 49.  Query, what statutory language is plaintiffs referring to?  Only the

defendant has analyzed the terms of the statute, which statutory terms demonstrate that the

assistance provided by the Act is the financial benefit of payment for a covered service that a

participating provider undertakes to provide.  42 U.S.C. § 1396d(a); § 1396a(a)(23) and (27).[18]

---

[18]    As noted in our prior brief, the terms of § 42 U.S.C. § 1396a(a)(30)(A) also supports the
defendant's position that 42 U.S.C. § 1396a(a)(8) does not require the agency to ensure that
desired services are always provided promptly since that section addresses access to care in the

VIII.     **42 U.S.C. § 1396a(a)(8) Is Not Privately Enforceable Through § 1983**.

42 U.S.C. § 1396a(a)(8), fairly construed, focuses on the State and the required content of its State plan assurance that it furnish "medical assistance" with reasonable promptness to all eligible individuals. Plaintiffs latch on the use of the word "all" in § 1396a(a)(8) and maintain that this evidences Congressional intent to create individual rights directly on individual recipients of assistance. The problem with plaintiffs' argument is that it ignores the holding of Gonzaga and Taylor that such language can just as readily (or, in this case, more readily) be construed to describe the duty that is owed by the state to the Secretary as a condition of receiving federal funds. Taylor expressly construes Gonzaga as holding that merely because the State is required to provide assurances with respect to "all individuals" is not sufficient to demonstrate that Congress intended to confer individual-enforceable entitlements, reasoning that such language "can be construed as a more detailed description of the general policy...that educational institutions are required to implement." Taylor, 313 F.3d at 785. Further clarifying its reading of Gonzaga, Taylor holds that statutory provisions will not be held to clearly and unambiguously manifest Congress' intent to create individual rights if the text "can be read as simply modifying the terms imposed on fund receiving institutions." Id. The text of 42 U.S.C. § 1396a(a)(8) clearly can be construed as describing the duties owed by the State as a condition of receiving federal funds. Its focus is on the State and its performance of its plan assurances. 42 U.S.C. § 1396a(a)(8), therefore, cannot be construed as creating individual rights,

---

context of assurances related to payments to providers. The required assurances do not require payments to be sufficient to ensure that each recipient will have access to care. The states are only required to consider whether their payments afford access that is comparable to the access available general population (which is clearly less than 100%). Respectfully, this Court cannot construe 42 U.S.C. § 1396a(a)(8) to provide an "entitlement" to prompt access to services when the statute most directly on point, 42 U.S.C. § 1396a(a)(30)(A), does not afford any such "right."

notwithstanding that the State's performance of its funding obligations will benefit recipients of assistance. Gonzaga, supra; Taylor, supra.

The post-Gonzaga cases cited by plaintiffs' as finding 42 U.S.C. § 1396a(a)(8) privately enforceable, do not properly follow the strict standards that are articulated in Gonzaga and Taylor, and should be not be followed by this Court. Bryson v. Shamway, 308 F.3d 79, 88 (1st Cir. 2002) cites Gonzaga, but then proceeds to apply the overruled Blessing "intended to benefit" test, without undertaking any analysis of the terms of the statue or demonstrating whether Congress clearly intended to provide individual rights, or only intended to describe the duty that was owed by the State to receive federal funds.

The decision of the district court in White v. Martin, No. 02-4154-CV-C-NKL, slip op. at 9-10 (W.D. Mo. Oct. 3, 2002) similarly does not properly apply Gonzaga, in the same manner it was construed by the second circuit in Taylor. White acknowledges the requirement of Gonzaga that the text of the statute must clearly evidence Congressional intent to create individual rights, but then held that 42 U.S.C. § 1396a(a)(8) was privately enforceable merely as a result of two prior eight circuit cases that had held (pre-Gonzaga) that other Medicaid statutory provisions are privately enforceable. White held that the statute was phrased in terms of "persons benefited", but did not determine if the statute was clearly intended to create individual rights, or may alternatively be construed as merely describing the duty owed by the State to receive federal funds. Gonzaga, supra. Taylor, supra.

The decision of the District Court in McCree v. Odum, No. 4:00-CV-173(H)-(4)(E.D.N.C. 2002) is even more cursory, and not worthy of deference. McCree merely indicates that "the word 'reasonable' may seem to indicate an aggregate focus" but then holds that 42 U.S.C. § 1396a(a)(8) is privately enforceable because "it is directed toward individual Medicaid

beneficiaries not toward the state." <u>McCree</u> similarly makes no effort at determining whether the text of 42 U.S.C. § 1396a(a)(8) clearly and unambiguously indicates Congressional intent to create individual rights, as opposed to describing the duty that is owed by the State to receive federal funds – which analysis this Court is required to undertake as a result of <u>Gonzaga</u> and <u>Taylor</u>.

By contrast, the recent holding on the Court in <u>M. A. C. v. Betit</u>, 2003 WL 22119134 (D. Utah 2003) notes that the Supreme Court in <u>Gonzaga</u> rejected the "intended to benefit" analysis of <u>Blessing</u>, and held that nothing "short of an unambiguously conferred right (can) support a cause of action under 1983." <u>M.A.C.</u> addresses the requirement of <u>Gonzaga</u> that the statute must be "phrased in terms of the person benefited" by comparing the language in Title XIX that was quoted in <u>Gonzaga</u> as an example of the type of statute that focuses on individuals and creates individual rights ("<u>No person</u>...shall, on the bases of sex...be subject to discrimination under any education program...receiving Federal financial assistance") with the language in the Medicaid Act, which "does not contain right-creating language unequivocally conferring an individual right to support a cause of action under § 1983." Turning to the specific provisions of 42 U.S.C. § 1396a(a)(8), the <u>M.A.C.</u> court held that this provision "does not contain the explicit rights-creating language described in <u>Gonzaga</u> and merely places certain conditions upon a state seeking Medicaid funding." <u>M.A.C.</u> specifically criticizes those decisions that were brought to its attention as finding 42 U.S.C. § 1396a(a)(8) privately enforceable, post-<u>Gonzaga</u>, including <u>Bryson v. Shumway</u>, <u>supra</u>, and <u>Rabin v. Wilson-Coker</u>, 266 F.Supp. 2d 332 (D.Conn. 2003) for only giving lip service to the <u>Gonzaga</u> standards, but then finding a private right of action "under

the three-part <u>Blessing</u> test, without addressing the specific language within the statue that unambiguously confers an individual right." M.A.C., *6.[19]

See also, <u>Sabree v. Houston</u>, 245 F.Supp. 2d 653, 660 (E.D.Pa. 2003), holding that 42 U.S.C. § 1396a(a)(8) does not create individual rights, in part because the statute focuses on what the State "must do to make itself eligible for funding" rather than on conferring rights directly on individuals, and because the Secretary's function is to assess the "aggregate function of the state" instead of determining "whether the needs of any particular person have been satisfied."

## IX.        Plaintiffs' EPSDT Claims Are Not Privately Enforceable (Pl Br. pp. 61-72)

Plaintiffs claim that the EPSDT statutory provisions meet the <u>Gonzaga</u> test because the statutory provisions are phrased in terms of mandatory duties, and that at least some of the EPSDT statutory provisions are intended to benefit "all" assisted children.[20] For all of the reasons stated <u>supra</u>, a "mandatory" duty that is intended to benefit specified individuals does not create individual rights unless the statue is focused directly on the benefited individual and employs individual rights-creating language. These statutes do not clearly and unambiguously evidence Congressional intent to create individual entitlements because they can be read as describing the duties that are owed by the State in order to be eligible for federal financial participation. <u>Gonzaga</u>, <u>supra</u>; <u>Taylor</u>, <u>supra</u>.

---

[19]    This part of the District Court's ruling in <u>Rabin</u> is not currently the subject of judicial review because the defendant prevailed on the merits and the plaintiffs did not appeal from this part of the judgment. The Second Circuit will have the opportunity in <u>Rabin</u> to determine whether the other Medical statutory provisions of 42 U.S.C. § § 1396r-6 and 1396u-l (c)(2), create enforceable individual rights after <u>Gonzaga</u>.

[20]    As discussed <u>infra</u>, the Medicaid EPSDT statutes provide that the State shall <u>inform</u> "all" recipients of the availability of EPSDT services. <u>Frazar</u>, <u>supra</u>. The states, however, are only required to provide EPSDT screening and treatment services "upon request" and, then, must only substantially comply with the Secretary's annual participation goals.

The pre-<u>Gonzaga</u> cases cited by the plaintiffs in their brief in opposition are of no utility because they all apply the <u>Wilder</u>/<u>Blessing</u> intended to benefit test that was subsequently clarified by the Supreme Court in <u>Gonzaga</u> as being insufficient to demonstrate Congressional intent to create individual rights. The two post-<u>Gonzaga</u> cases cited by the plaintiffs in their brief are not at all persuasive and should not be followed by this Court because neither decision properly applies <u>Gonzaga</u>, in accordance with the teaching of <u>Taylor</u>. The District Court in <u>McCree v. Odum</u>, <u>supra</u>, merely paraphrases the statutory requirements of 42 U.S.C. § 1396a(a)(43) and § 1396d(r)(3)(A) as imposing an obligation on state Medicaid agencies to inform recipients of the availability of EPSDT services, and to "provide" such services in all cases <u>where</u> <u>they</u> <u>are</u> <u>requested</u>, and simply concludes that "congressional intent to grant Medicaid beneficiaries individual rights is clear and unambiguous." <u>McCree</u>, slip op. p. 32. Similarly, the District Court in <u>Kenny A. v. Perdue</u>, 2003 WL 22019593, (N.D. Ga 2003) found these provisions to be privately enforceable because assisted children "are the clearly intended beneficiaries" and because the provisions "focuses on the needs of individual...children."

Again, however, the focus of these statutory provisions is on the State, the content of its plan assurances, and its performance of its obligations that are conditions for the receipt of federal funds.[21] The fact that the state's fulfillment of its statutory obligations will ultimately benefit assisted children is insufficient after <u>Gonzaga</u> and <u>Taylor</u> to create individual rights when the statue can be read as describing the state's obligations to receive federal funds. The statutes at issue in <u>Gonzaga</u> and <u>Taylor</u> also mentioned students and parents, and expressly referenced their "rights." The purpose of the privacy/access to records statutes was clearly to benefit

---

[21]    The text of these Medicaid Act statutory provisions stands in marked contrast to the examples of individually-focused, rights-creating language provided by <u>Gonzaga</u>, i.e., Titles VI and IX.

students.  Those statutes, however, were held to be insufficient to create individual rights

because they could be construed as only describing the state's obligations to receive funds and

did not unambiguously manifest Congressional intent to create individual rights.  Gonzaga,

supra; Taylor, supra.  The case for individual rights was much stronger in those cases because the

statutes expressly referenced the rights of students.  No individual rights were found, however.

The claim of the plaintiffs in this case is much weaker because those plaintiffs are, at best, the

intended beneficiaries of a statute that specifies what conditions must be met before the state is

eligible for federal financial participation.

Indeed, as noted in our brief in chief, these EPSDT statutory provisions do not even meet

the earlier, more relaxed, standards of Wilder/Blessing.  Def. Memo in Support of Summary

Judgment at 79-80, relying on Frazar v. Gilbert, 300 F.3d 530 (5th Cir. 2002), cert.gr. sub. nom.,

Frew v. Hawkins, 123 S.Ct. 1481 (2003).  In their brief in opposition, plaintiffs accuse the

defendant of overstating the reach of the holding in Frazar, claiming that  Frazar only found the

consent decree to exceed the bounds of the rights created by the Act in a few minor respects,

thereby allowing the Frazar plaintiff to pursue enforcement of their claims to the extent that they

are supported by rights granted by the statute.  Respectfully, the defendant did not

mischaracterize the holding of Frazar.  The Frazar Court did not only find that the consent decree

exceeded the bounds of the statute in a few minor respects, as claimed by plaintiffs in their brief.

Instead it carefully examined the EPSDT statutory claims which were asserted in the complaint

(which are essentially the same as the EPSDT claims asserted in this actions), 300 F.3d at 534,

and determined that none of them asserted actionable violations. 300 F.3d at 548. Turning to the

primary EPSDT allegation in both cases (that the states have failed to ensure the provision of

EPSDT screening services, and required dental treatment services the need for which is

identified in a screen), <u>Frazar</u> determined that this obligation is <u>only</u> triggered <u>by a request</u> for

screening services by a client, and that the state is under no obligation to provide such screening

and treatment services the need for which is identified to every-assisted child, but is only

required to substantially comply with the Secretary's participation goals. 300 F.3d. at 544.

<u>Frazar</u> noted that the statutes require the Secretary to set annual participation <u>goals</u> (which <u>goals</u>

constitute goals, <u>not</u> mandates). 300 F.3d at 544, quoting 42 U.S.C. § 1396d(r). A "participation

goal" is inconsistent with plaintiffs' claim that each recipient has a individual entitlement.

Accordingly, <u>Frazar</u> holds (even under a <u>Wilder</u>/<u>Blessing</u> analysis) that Congress did not create

an individual entitlement in every child recipient of assistance to receive EPSDT

screening/treatment services. 300 F.3d at 545. In the absence of such a individual entitlement in

all recipients of assistance, <u>Blessing</u> holds that no enforceable, individual rights are created.[22]

X.     **There Clearly Is No Enforceable Individual Right To EPSDT-Related
       Transportation, Scheduling Assistance (Pl. Br. pp. 72-75)**

With respect to the claims for EPSDT-related transportation, scheduling assistance, and

case management services asserted in plaintiffs' ninth claim for relief, plaintiffs do not dispute

the defendant's contention that any "right" must be conferred in a federal statute in order for it to

be enforceable in a § 1983 action. Plaintiffs acknowledge that it is appropriate to turn to

implementing federal regulations for guidance on the contours of any right only when the

regulation merely fleshes out "rights" that are <u>already clearly and unambiguously conferred in

the underlying statute</u>. Def. Memo in Support of Summary Judgment at pp. 80-83, citing <u>Harris

v. James</u>, 127 F.3d 993 (11th Cir. 1997) as the leading case on point.

---

[22]    The defendant maintains on the merits, that all clients are informed of the availability of
EPSDT services, and that assistance in obtaining such services is provided in all cases upon
request. Respectfully, plaintiffs cannot prevail on this claim based on the mere fact that less than
ideal dental utilization rates are achieved in the absence of evidence that EPSDT screening
services are not provided upon request.

Plaintiffs claim that there is an underlying statutory "right" to transportation, scheduling assistance, and case management services as a result of 42 U.S.C. § 1396d(r)(5), which defines EPSDT services as including:

> Such other necessary health care, diagnostic services, treatment, and other measures described in section 1905(a) to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.

Plaintiffs' claim that the <u>statute</u> clearly establishes an individual "right" to EPSDT-related transportation, scheduling assistance, and case management services is clearly unsupportable. The statute only defines EPSDT services as including other health care services provided to correct conditions discovered in an EPSDT screen. It is devoid of any individually-focused, rights-creating language. It makes no mention of transportation, scheduling assistance, or case management services at all. While transportation, scheduling assistance, and case management services may be helpful in assisting clients access dental care, they do <u>not</u> constitute <u>health care services</u> that are "designed to correct or ameliorate defects...discovered by the screening services." 42 U.S.C. § 1396dr(5)[23]. Furthermore, in order to be covered as an EPSDT <u>treatment</u> service defined in the statute under 42 U.S.C. § 1396dr(5), the need for the service must be "discovered by the screening services." The implementing regulation, however, requires the defendant to require transportation and scheduling assistance, upon request, without regard to whether or not the need for such "health care service" was discovered in an EPSDT screen, and without regard to whether or not the provision of such services is necessary to correct health

---

[23]    The fact that payment for transportation to medical appointments is included within the regulatory definition of a service that constitutes a form of "medical assistance" 42 C.F.R. § 440 170, does not make transportation a "health care service" that is designed to correct a physical defect, the need for which is identified in an EPSDT screen. 42 U.S.C. § 1396dr(5). <u>Note that "scheduling assistance" is nowhere identified, even in regulation, as a form of "medical assistance."</u>

defects discovered in a screen. The regulation, therefore, clearly does not merely flesh out individual rights that are already unambiguously conferred by Congress in the underlying statute. Harris v. James, supra. Summary judgment must enter for the defendant on plaintiffs' ninth claim for relief due to the absence of clear and unambiguous individual rights to such services in the statute.[24]

---

[24] The implementing regulation does not even support plaintiffs' claim for EPSDT-related "case management services", which claim has no basis in law, not in statute and not in regulation. Defendant assumes that the Secretary has the authority to promulgate the regulation requiring the state to provide EPSDT related transportation and scheduling assistance, 42 C.F.R. § 441.62, and that the defendant must comply with this regulation in order to receive federal funding. As Harris v. James, supra, makes clear, however, that is insufficient to create "individual rights" Moreover, even if the text of a regulation could create enforceable "rights", the text of this regulation is clearly focused on the State, describing its duty to provide such services. On the merits, the defendant maintains that the agency complies with its obligation to provide such services.

DEFENDANT
PATRICIAL WILSON-COKER
DEPARMENT OF SOCIAL SERVICES

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Richard J. Lynch
Assistant Attorney General

BY:      _____
Hugh Barber
Assistant Attorney General
Federal Bar No. ct05731
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5210
Fax: (860) 808-5385

## CERTIFICATION

I hereby certify that a copy of the foregoing Defendant's Reply Brief in Support of

Motion for Summary Judgment  was mailed in accordance with Rule 5(b) of the Federal Rules of

Civil Procedure on this 31st of October, 2003,  first class postage prepaid to:

Amy Leete Van Dyke, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street
P.O. Box 231277
Hartford, CT  06123-1277

Jamey Bell, esq.
Greg Bass, Esq.
Victoria Veltri, Esq.
Maria Morelli-Wolfe, Esq.
Greater Hartford Legal Aid
999 Asylum Street, 3rd Floor
Hartford, CT  06105-2465

Dahlia O.F. Grace, Esq.
Connecticut Legal Services, Inc.
211 State Street
Bridgeport, CT  06604

Robert R. Simpson, Esq.
Shipman & Goodwin
1 American Row
Hartford, CT  06103

Of Counsel
Bernhardt K. Wruble
316 Westmont
West Hartford, CT  06117

Hugh Barber
Assistant Attorney General