## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARY CARR, et al,                    :
  Plaintiffs,                       :
                          :
v.                                   :          Civil No. 3:00CV1050(AVC)
                          :
PATRICIA WILSON-COKER,               :
in her official capacity as          :
Commissioner of the Department:
of Social Services.                  :
  Defendant.                        :

### <u>RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

This is an action for equitable relief arising from the Connecticut Department of Social Services' oversight of the managed care networks that supply dental care to low-income children and adult Medicaid recipients. The plaintiffs, a class and subclass of approximately 300,000 child and adult Medicaid recipients represented by Mary Carr, et al, ("Carr"), allege that the defendant, Patricia Wilson-Coker, has failed to comply with federal Medicaid statutes and regulations which has resulted in a critical shortage of Connecticut dental providers who are willing and able to offer them care. The complaint contains nine causes of action and is filed pursuant to 42 U.S.C. § 1983, various subsections of 42 U.S.C. §§ 1396a(a) and 1396d, as well as implementing regulations 42 C.F.R. §§ 447.204, 431.50(b)(1), 440.230, 441.56(a), 441.56(b)(1)(vi), 441.56(c) and 441.62. Specifically, the complaint alleges:

- <u>Counts One and Three</u>: Failure to comply with the "equal access" and "quality of care" requirements of the Medicaid

1

program.
- <u>Count Two</u>: Failure to comply with the "statewide availability" requirement of the Medicaid program.
- <u>Count Four</u>: Failure to comply with the "timely care" requirement of the Medicaid program.
- <u>Count Five</u>: Failure to comply with the "comparable services among recipients" requirement of the Medicaid program.
- <u>Count Six</u>: Failure to comply with the requirement of the Medicaid program to promptly and efficiently pay participating providers.
- <u>Counts Seven, Eight and Nine</u>: Failure to inform of and provide early and periodic screening, diagnostic and treatment ("EPSDT") dental services.

Wilson-Coker has filed the within motion for summary judgment with respect to all nine counts of the complaint, arguing that:

1. There is no private right of enforcement of the alleged statutory violations because:
   a. all the causes of action are subject to the "substantial compliance" standard;
   b. all the causes of action are "impliedly foreclosed" by the remedies provided by Congress; or
   c. the statutes that are alleged to have been violated do not create federal rights enforceable in a section 1983 cause of action.
2. The statutes that are alleged to have been violated in Counts One, Three and Four are superceded by subsequent statutory provision that apply specifically to the managed care environment.
3. The comparability of services requirement alleged to have been violated in Count Five does not apply to the HUSKY A managed care program because it was "waived" by the Secretary in Connecticut's approved waiver.
4. There is no statutory basis for the particular claims made in Count Nine.
5. Wilson-Coker is entitled to summary judgment on the merits on Counts Seven, Eight and Nine.

For the reasons that follow, the motion for summary judgment (document no. 107) is GRANTED with respect to Counts One through

2

Six of the complaint, DENIED with respect to Counts Seven and
Eight, and GRANTED in part and DENIED in part with respect to
Count Nine of the complaint.

## FACTUAL BACKGROUND

The Medicaid program was created in 1965 "for the purpose of
providing federal financial assistance to States that choose to
reimburse certain costs of medical treatment for needy persons."
Harris v. McRae, 448 U.S. 297, 301 (1980).  "To participate in
the Medicaid program, a state must obtain approval for its
Medicaid plan from [the Centers for Medicare and Medicaid
Services].  Once this approval is granted, the federal government
will reimburse the state for a portion of the expenditures made
under the state plan."  Skandalis v. Rowe, 14 F.3d 173, 175 (2d
Cir. 1994).

States are not required to participate in the program, but
states that do accept federal funding must comply with the
Medicaid Act and with regulations promulgated by the Secretary.
A state that fails to comply with its medical assistance plan
runs the risk of having its funding revoked by the Secretary.  42
U.S.C. § 1396c.

The State of Connecticut has elected to participate in the
Medicaid program.  The Department of Social Services ("DSS") is
the state agency which Connecticut has designated to oversee the
administration of the state's Medicaid program.  See 42 U.S.C. §

1396a(a)(5).

Under a federal waiver initially obtained in 1995, pursuant to 42 U.S.C. § 1396n(b), the DSS operates its Medicaid program, including the provision of dental services, under a managed care delivery system.  Among the sections waived is section 42 U.S.C. § 1396a(a)(10)(B) - Comparability of Services.  The defendant contracts with managed care organizations ("MCO's") for the delivery of Medicaid Husky A services, including dental care.

**STANDARD**

1.  <u>Summary Judgment</u>

The court appropriately grants summary judgment when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party.  <u>See</u> <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991), <u>cert. denied</u>, 502 U.S. 849 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff."  <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 252 (1986).  Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

4

issue of material fact." <u>Anderson</u>, 477 U.S. 247-48. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims...[and] it should be interpreted in a way that allows it to accomplish this purpose." <u>Celotex v. Catrett</u>, 477 U.S. 317, 323-324 (1986).

2.    <u>Private Right of Action Under Section 1983</u>

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 itself creates no substantive rights but provides a "procedure of redress for the deprivation of rights established elsewhere." <u>Thomas v. Roach</u>, 165 F.3d 137, 142 (2d Cir. 1999).

In <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980), the Supreme Court recognized that a cause of action may be brought under section 1983 against state actors to enforce rights created by federal statutes as well as by the Constitution. However, one year later the Court stated that "in legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 451 U.S. 1, 28 (1981). Since <u>Pennhurst</u>, the Court has

only twice found legislation enacted pursuant to the spending

power to give rise to privately enforceable rights:  Wright v.

Roanoke Redevelopment & Housing Authority, 479 U.S. 418 (1987)

(addressing the Public Housing Act) and Wilder v. Virginia

Hospital Ass'n, 496 U.S. 498 (1990)(addressing Title XIX of the

Social Security Act).

In Blessing v. Freestone, 520 U.S. 329 (1997), the Court

provided three factors to guide judicial inquiry into whether or

not a statute confers a privately enforceable right:

> First, Congress must have intended that the provision
> in question benefit the plaintiff. Second, the
> plaintiff must demonstrate that the right assertedly
> protected by the statute is not so vague and amorphous
> that its enforcement would strain judicial competence.
> Third, the statute must unambiguously impose a binding
> obligation on the States. In other words, the provision
> giving rise to the asserted right must be couched in
> mandatory, rather than precatory, terms.

Blessing, 520 U.S. at 340-41.

The Blessing factors did not secure a consensus in the lower

courts as to when a statute confers a right enforceable under

section 1983.  In Gonzaga Univ. v. Doe, 536 U.S. 273 (2002), the

Court recognized that its opinions in this area "may not be

models of clarity," and set out to "resolve the conflict among

the lower courts and in the process resolve any ambiguity in our

own opinions." Id. at 278.  The Court emphasized that only "an

unambiguously conferred right...support[s] a cause of action

6

brought under § 1983." Gonzaga, 536 U.S. 283. A judicial inquiry must therefore focus on whether "Congress *intended to create a federal right*." Id. (emphasis in the original). To make a determination that Congress did so intend, courts must find "rights-creating language" that clearly imparts an "individual entitlement" and have an "unmistakable focus on the benefitted class." Id. at 287. "Accordingly, where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit...under § 1983." Id. at 284.

Following the lead of the Second Circuit Court of Appeals, the court does not understand the Gonzaga directions to replace the Blessing factors but rather to supplement them. See Wachovia Bank, N.A. v. Burke, 414 F.3d 305 (2d Cir. 2005). Therefore, if the court should conclude that the text and structure of a statute make it clear that Congress intended to create a federal right, the court will then apply the Blessing factors.

In Rabin v. Wilson-Coker, 362 F.3d 190 (2d Cir. 2004), the Second Circuit recently concluded that the language of one section of the Medicaid Act, 42 U.S.C. § 1396r-6(a)(1), "reflects Congress's intention to confer a right to [temporary medical assistance] upon persons who meet the various eligibility requirements" and can therefore support a section 1983 cause of action. Id. at 202. This court will therefore use the language

7

of 1396r-6(a)(1) as a guide when considering whether the statutes that are alleged to have been violated in this case create federal rights enforceable in a section 1983 cause of action.

1396r-6(a)(1) provides in pertinent parts that:

> ...each State plan approved under this subchapter must provide that each family which was receiving [aid] in at least 3 of the 6 months immediately preceding the month in which such family becomes ineligible for such aid, because of...income from employment...remain eligible for assistance under the plan...during the immediately succeeding 6-month period.

42 U.S.C. § 1396r-6(a)(1)

The Second Circuit emphasized that "[t]his language focuses much more directly than does the FERPA provision [considered in Gonzaga] on the individual's entitlement. In particular, it contains no qualifying language akin to FERPA's 'policy or practice.'" Rabin, 362 F.3d 201.

## DISCUSSION

The main issue before the court is whether the sections of the Medicaid Act that are alleged to have been violated can be privately enforced in a section 1983 cause of action. However, Wilson-Coker also argues that summary judgment should be granted as to a number of the counts of the complaint for various other reasons. In particular, Wilson-Coker argues that she is entitled to summary judgment on: (1) Counts One, Three, Four and Six because they "fail to state a claim" since the statutes that are alleged to have been violated are superceded by subsequent

8

statutory provision that apply specifically to the managed care
environment; (2) Count Five because the comparability of services
requirements of 42 U.S.C. § 1396a(a)(10)(B) do not apply to the
HUSKY A managed care program because they were "waived" by the
Secretary in Connecticut's approved waiver; (3) Count Nine
because there is no statutory basis for the particular claims
made; and (4) Counts Six through Nine because they present no
genuine issue of material fact.

To avoid needless repetition, the court will first examine
Wilson-Coker's global arguments against the availability of
private enforcement, i.e. "substantial compliance" and "implied
foreclosure."  It will then proceed to the argument that a number
of the statutes that are alleged to have been violated are
superceded by subsequent statutory provisions that apply
specifically to the managed care environment.  As the court will
conclude that neither of these arguments are persuasive, it will
then consider the remaining arguments for summary judgment one
count at the time and in numerical order.


1.   <u>Substantial Compliance</u>

Wilson-Coker argues that all of Carr's causes of action are
subject to the "substantial compliance standard" since the
Secretary is, under 42 U.S.C. § 1396c, only authorized to take
action against a state if it "substantially" fails to comply with

a statutory requirement in its administration of the program.
"Accordingly, none of the plaintiffs' claims are predicated upon
statutes that confer individually enforceable entitlements."

Carr responds that although it is true that after Blessing
and Gonzaga, a private enforcement action cannot be based on a
"substantial compliance" standard of a statute, this does not
foreclose private enforcement of "specific, individualized
mandates of specific Medicaid Act provisions."

The court agrees with Carr.  Although the Blessing decision
made clear that a "substantial compliance standard.... does not
give rise to individual rights," Blessing v. Freestone, 520 U.S.
329, 344 (U.S. 1997), the Court did not "foreclose the
possibility that some provisions of Title IV-D give rise to
individual rights." Id. at 345.  In fact, the Court sent the
case back to the District Court "in order to determine exactly
what rights, considered in their most concrete, specific form,
respondents are asserting.  Only by manageably breaking down the
complaint into specific allegations can the District Court
proceed to determine whether any specific claim asserts an
individual federal right." Id. at 346.  Therefore, the presence
of a substantial compliance standard in section 1396c of the
Medicaid Act does not preclude the presence of individual federal
rights in other sections of the Act.  See e.g. Rabin v.
Wilson-Coker, 362 F.3d 190, 201 (2d Cir. 2004).

10

2.    Implied foreclosure

Wilson-Coker next argues that "Congress has impliedly foreclosed a private § 1983 action...by providing a comprehensive enforcement mechanism...." The mechanism includes remedies provided by the State against MCOs and remedies by the Secretary against MCOs and the State.

Because Wilson-Coker does not argue that any provision of the Medicaid Act expressly forecloses section 1983 action, "she must make the difficult showing that allowing § 1983 actions to go forward in these circumstances would be inconsistent with Congress' carefully tailored scheme." Blessing v. Freestone, 520 U.S. 329, 346 (1997)(internal quotation marks and citation omitted). In addition, she must overcome the Supreme Court's conclusion in Wilder v. Va. Hosp. Ass'n, 496 U.S. 498 (1990), that neither the provisions of the Medicaid Act authorizing the secretary to withhold approval of plans or to curtail federal funds to States whose plans are not in compliance with the Act, nor the required State administrative system allowing for appeals of reimbursement rates, could be "considered sufficiently comprehensive to demonstrate a congressional intent to withdraw the private remedy of § 1983." Id. at 522.

Although Wilson-Coker does not discuss the Wilder decision in this context, the court understands her to argue that it is not controlling because she references different sections of the

Medicaid Act than those considered in <u>Wilder</u>.

The <u>Wilder</u> decision was based on 42 U.S.C. §§
1316(a)(authorizing the Secretary to withhold approval of plans);
1396c (authorizing the Secretary to curtail federal funds to
States whose plans are not in compliance with the Act);
1396a(a)(37)(requiring States to adopt a procedure for
postpayment claims review to ensure the proper and efficient
payment of claims and management of the program); and 42 C.F.R. §
447.253(c)(requiring the States to adopt an appeals procedure by
which individual providers may obtain administrative review of
reimbursement rates).  <u>Wilder</u>, 496 U.S. 521-522.  Wilson-Coker,
on the other hand, relies on the managed care provisions of 42
U.S.C. §§ 1396u-2(e)(1)(A)(the State may impose an "intermediary
sanction" such as a monetary penalty on MCOs);  1396u-2(e)(4)(the
State may terminate a contract with an MCO);  1396b(m)(5)(the
Secretary may impose the same sanctions as the State on an MCO);
1396u-2(b)(4)(requiring each MCO to establish an internal
grievance procedure); and 42 C.F.R. § 438.402(a)(requiring
enrollees to have access to both an internal MCO grievance
process and to the State's fair hearing system).

The most relevant difference between the sections referred
to in <u>Wilder</u> and those referred to by Wilson-Coker is that the
latter add provisions requiring that individual enrollees have
access to a grievance process and to the State's fair hearing

12

system.  They therefore set out a more comprehensive enforcement mechanism than the one considered in <u>Wilder</u>.  However, on the only two occasions the Supreme Court has found a remedial scheme established by Congress sufficient to displace section 1983 suits, <u>Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n</u>, 453 U.S. 1 (1981) and <u>Smith v. Robinson</u>, 468 U.S. 992 (1984), the statutes at issue provided for private judicial remedies.  This is not the case with the Medicaid Act and the court believes that this is a crucial difference.  Clearly, if Congress builds in a private judicial remedy in a statute, there is good reason to think that it intended for this to be the sole private judicial remedy.  When such a remedy is not built in by Congress, however, and there is no explicit provision foreclosing such a remedy, it is difficult indeed to make the showing that a section 1983 action "would be inconsistent with Congress' carefully tailored scheme."  <u>Blessing</u>, 520 U.S. at 346 (internal quotation marks and citation omitted).

The court also notes that Wilson-Coker cannot cite to a single case where a court has denied a section 1983 suit involving the Medicaid Act on the grounds that Congress has impliedly foreclosed such actions.  Nor has the court's research unearthed such a case.  The court therefore concludes that Congress has not impliedly foreclosed section 1983 suits in the Medicare Act.

3.    Statutes are superseded by subsequent statutes that apply to
the managed care environment

Wilson-Coker argues that Counts One, Three, Four and Six "fail to state a claim" since the statutes that are alleged to have been violated are superceded by subsequent statutory provision that apply specifically to the managed care environment.  Specifically, Wilson-Coker argues that 42 U.S.C. §§ 1396a(a)(30), 1396a(a)(8) and 1396a(a)(37) have been superceded by 42 U.S.C. §§ 1396u-2 and 1396b(m).

Carr responds that the managed care provisions of the Medicaid Act do not supercede earlier sections but "merely implement" them.

The court agrees with Carr.  A plain reading of the statutes does not suggest that Congress intended that the States should be relieved from the obligations it set down in the Medicaid Act if they administer their Medicaid programs through contracts with MCOs.  The court also notes that Wilson-Coker has not provided, nor has the court been able to find, any authority supporting her position that is specific to the Medicaid context.  There is, however, some authority to support Carr's position.  Westside Mothers v. Olszewski, 368 F. Supp. 2d 740, 771 (D. Mich. 2005); Okla. Chapter of the Am. Acad. of Pediatrics v. Fogarty, 205 F. Supp. 2d 1265, 1272 (D. Okla. 2002);  John B. v. Menke, 176 F. Supp. 2d 786, 800 (D. Tenn. 2001);  Frew v. Gilbert, 109 F. Supp.

14

2d 579, 674 (D. Tex. 2000).

The court therefore concludes that the statutes that Carr alleges to have been violated have not been superceded by subsequent statutory provisions that apply specifically to the managed care environment.

4.    <u>The individual causes of action</u>

**Counts One and Three: 42 U.S.C. § 1396a(a)(30)(A)**

Counts One and Three of the complaint alleges that Wilson-Coker has failed to "provide payments at a level sufficient to attract a sufficient number of dental providers" to comply with the "equal access" and "quality of care" requirements of 42 U.S.C. § 1396a(a)(30)(A) and its implementing statute 42 C.F.R. §447.204.

Wilson-Coker first argues that 42 U.S.C. § 1396a(a)(30)(A) does not create rights in program recipients because the section "is devoid of individually-focused, rights creating language, which is required after <u>Gonzaga</u>..."  Wilson-Coker further contends that the text of the statute demonstrates that congress did not intend to create rights in all program recipients because "the only duty the state is to consider, as one of <u>five</u> factors, [is] whether its rates are sufficient to enlist 'enough' providers such that care is available...in a manner...comparable to the availability of care to the 'general population' in the

'geographic area.'"

Carr responds that "the entire thrust of the section is the availability of medical care for Medicaid recipients."  In Carr's view, "[c]ongress unambiguously intended, through rights-creating language that is individually focused...that the provision...create a federal right...."  Specifically, Carr contends that the "quality of care" and "equal access" factors set out in the section "created federal rights clearly benefitting and inuring to Medicaid recipients."

42 U.S.C. § 1396a(a)(30)(A) provides that:

a state plan for medical assistance must -

provide such methods and procedures relating to the
utilization of, and the payment for, care and services
available under the plan (including but not limited to
utilization review plans as provided for in section
1903(i)(4) [42 USCS § 1396b(i)(4)]) as may be necessary
to safeguard against unnecessary utilization of such
care and services and to assure that payments are
consistent with efficiency, economy, and quality of
care and are sufficient to enlist enough providers so
that care and services are available under the plan at
least to the extent that such care and services are
available to the general population in the geographic
area...

42 U.S.C. § 1396a(a)(30)(A)

Two circuit courts have considered whether 42 U.S.C. § 1396a(a)(30)(A) can be enforced in a section 1983 cause of action.  In Long Term Care Pharm. Alliance v. Ferguson, 362 F.3d 50, 57 (1st Cir. 2004), the First Circuit examined the section to decide whether it gave providers, as opposed to recipients, a

private cause of action.[1]  The court concluded that "[42 U.S.C. §
1396a(a)](30)(A)...has no rights creating language and identifies
no discrete class of beneficiaries--two touchstones in Gonzaga's
analysis.... The provision focuses instead upon the state as the
person regulated rather than individuals protected, suggesting no
intent to confer rights on a particular class of persons, or at
least not providers." Long Term Care, 362 F.3d 57 (internal
quotation marks and citations omitted).  The court went on to
state that "[t]he criteria (avoiding overuse, efficiency, quality
of care, geographic equality) are highly general and potentially
in tension.  And read literally the statute does not make these
directly applicable to individual state decisions; rather state
plans are to provide 'methods and procedures' to achieve these
general ends.  Thus, the generality of the goals and the
structure for implementing them suggests that plan review by the
Secretary is the central means of enforcement intended by
Congress." Id. at 58.

In Sanchez v. Johnson, 416 F.3d 1051, 1059 (9th Cir. 2005),
the Ninth Circuit considered whether the section grants
recipients a private cause of action.  It concluded that "there
is nothing in the text of § 30(A) that unmistakably focuses on
recipients or providers as individuals.  Moreover, the flexible,

---

[1]The distinction between providers and recipients is unimportant in this
context.

administrative standards embodied in the statute do not reflect a Congressional intent to provide a private remedy for their violation." Sanchez, 416 F.3d 1059.  The court therefore concluded that "Congress has not spoken with an unambiguous, clear voice that would put a State on notice that Medicaid recipients or providers are able to compel state action under § 1983."  Id. at 1060.

The court agrees with the reasoning and conclusions of the First and Ninth Circuit Courts of Appeal.  The court also finds the language in 1396a(a)(30)(A) distinguishable from that of 42 U.S.C. § 1396r-6(a)(1) in that it lacks the direct focus on the individual's entitlement that the Second Circuit emphasized in Rabin v. Wilson-Coker, 362 F.3d 190, 201 (2d Cir. 2004).

The court therefore concludes that neither the text nor the structure of 42 U.S.C. § 1396a(a)(30)(A) make it clear that Congress intended to create a federal right.  There is consequently no basis for a section 1983 cause of action and the defendant's motion for summary judgment is therefore granted with respect to Counts One and Three.

**Count Two: 42 U.S.C. § 1396a(a)(1)**

The second cause of action asserts a violation of the "statewide availability" requirement of 42 U.S.C. § 1396a(a)(1) and its implementing regulation 42 C.F.R. § 431.50(b)(1).

Wilson-Coker argues that the language of section 1396a(a)(1) "is entirely devoid of individually-focused, rights-creating language" as required after <u>Gonzaga</u>.

Carr responds by pointing to a pre-<u>Gonzaga</u> decision by a district court holding that section 1396a(a)(1) does create a federal right enforceable under section 1983.  <u>Sobky v. Smoley</u>, 855 F. Supp. 1123, 1133 (D. Cal. 1994).  However, Carr does not otherwise argue that the language in section 1396a(a)(1) meets the <u>Gonzaga</u> standard.

42 U.S.C. § 1396a(a)(1) provides that:

A State plan for medical assistance must–

(1) provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them.

42 USCS § 1396a(a)(1)

It is apparent to the court that 42 U.S.C. § 1396a(a)(1) contains no rights creating language and identifies no discrete class of beneficiaries.  As neither the text nor the structure of 1396a(a)(1) make it clear that Congress intended to create a federal right, there is no basis for a section 1983 cause of action.  The defendant's motion for summary judgment is therefore granted with respect to Count Two

**Count Four: 42 U.S.C. §§ 1396a(a)(4), (8) and (19)**

The complaint's fourth cause of action alleges a denial of

timely access to care in violation of 42 U.S.C. § 1396a(a)(4), (8) and (19).

With respect to sections 1396a(a)(4) and (19), Wilson-Coker argues that they do not contain the kind of rights-creating language required after <u>Gonzaga</u> for a federal statute to be enforceable in a section 1983 cause of action.  Carr does not respond to this argument.

42 U.S.C. § 1396a(a)(4) provides that:

A state plan for medical assistance must-

(4) provide (A) such methods of administration (including methods relating to the establishment and maintenance of personnel standards or a merit basis...) as are found by the Secretary to be necessary for the proper and efficient operation of the plan, (B) for the training and effective use of paid sub-professional staff . . . .

42 U.S.C. § 1396a(a)(19) provides that:

A state plan for medical assistance must-

provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients.

It is evident to the court that neither of these sections contain the rights creating language or identification of a discrete class of beneficiaries that the Supreme Court required in <u>Gonzaga</u>.  The Seventh Circuit Court of Appeals likewise concluded that the language contained in 1396a(a)(19) "cannot be

interpreted to create a private right of action, given the Supreme Court's hostility, most recently and emphatically expressed in [Gonzaga], to implying such rights in spending statutes." Bruggeman v. Blagojevich, 324 F.3d 906, 911 (7th Cir. 2003).

The court therefore concludes that neither 42 U.S.C. § 1396a(a)(4) nor 42 U.S.C. § 1396a(a)(19) create federal rights enforceable in a section 1983 cause of action.

As Wilson-Coker acknowledges, 42 U.S.C. § 1396a(a)(8) presents a closer question with regard to whether it is enforceable in a section 1983 cause of action. However, in addition to arguing that it is not so enforceable, Wilson-Coker also argues that "the reasonable promptness provision of § 1396a(a)(8) does not obligate the state Medicaid agency to ensure that a dental provider will provide services promptly." The court understands this argument to be that 1396a(a)(8) is concerned with payment for services rather then the actual delivery of services, and that since Carr's complaint states that it is the care, or services, that has not been provided with reasonable promptness, Carr has failed to state a claim upon which relief can be granted.

Carr responds that Wilson-Coker's argument ignores the clear wording of the statute and furthermore that it is enforceable in a section 1983 cause of action.

21

42 U.S.C. § 1396a(a)(8) provides that:

A state plan for medical assistance must-

provide that all individuals wishing to make
application for medical assistance under the plan
shall have opportunity to do so, and that such
assistance shall be furnished with reasonable
promptness to all eligible individuals.

At issue is the meaning of the term "medical assistance."
Wilson-Coker contends that the term is defined as payment for a
covered service while Carr contends that the term includes the
actual services, such as dental services, and not merely the
payment for such services.

As the parties have demonstrated in their memoranda, courts
in other jurisdictions have differed as to the meaning of
"medical assistance" in 1396a(a)(8). Compare Bryson v. Shumway,
308 F.3d 79, 81 (1st Cir. 2002); Doe v. Chiles, 136 F.3d 709, 714
(11th Cir. 1998) to Bruggeman v. Blagojevich, 324 F.3d 906, 910
(7th Cir. 2003); Westside Mothers v. Olszewski, 368 F. Supp. 2d
740, 763 (D. Mich. 2005).

It is this court's view, however, that Carr's definition of
"medical assistance" conflicts with the plain text of the
statute. 42 U.S.C. § 1396d provides definitions for subchapter
XIX, i.e. the subchapter in which 1396a(a)(8) is located. It
states that "[t]he term 'medical assistance' means payment of
part or all of the cost of [the listed] care and services." 42
U.S.C. § 1396d(a). Clearly, then, the statute itself defines

22

"medical assistance" as payment for services rather than the services themselves.

Carr does not offer an argument as to why the definition provided in 1396d(a) should not be controlling on the court. Instead Carr argues that "[d]ental services are expressly included as 'medical assistance'", referring to sections 1396a(a)(10)(A) and 1396d(a)(10). The latter of these sections is particularly unavailing as it simply lists dental services as one of the "care and services" payment for which is defined as "medical assistance" at the beginning of the section. The former section is more ambiguous, however. It states in relevant part that a state plan for medical assistance must provide "for making medical assistance available, including at least the care and services listed . . . ." 42 U.S.C. § 1396a(a)(10)(A). Read in isolation, this language suggests that care and services are part of the meaning of "medical assistance." Nevertheless, the explicit definition of the term provided in 1396d(a) must trump this restricted reading of the section. 1396a(a)(10)(A) should therefore, in this court's view, be read to say that <u>payment</u> for care and services, including at least those listed, must be provided.

Carr relies to a great extent on precedence from the courts that have a different view. However, an examination of the decisions that Carr refers to reveals that in none of them did

23

the court consider the definition provided in 1396d(a).[2]  In cases where courts have considered the statutory text, however, they have concluded that "medical assistance" as defined by 1396d(a) refers only to financial assistance associated with covered medical treatment and services. See Westside Mothers v. Olszewski, 368 F. Supp. 2d 740, 763 (D. Mich. 2005);  Clark v. Richman, 339 F. Supp. 2d 631, 641 (M.D. Pa. 2004);  Sanders v. Kansas Dep't of Soc. and Rehabilitation Servs., 317 F. Supp. 2d 1233, 1250 (D. Kan. 2004).  See also Bruggeman v. Blagojevich, 324 F.3d 906, 910 (7th Cir. 2003);  Schott v. Olszewski, 401 F.3d 682, 686 (6th Cir. 2005).

The court concludes that the term "medical assistance" in 42 U.S.C. § 1396a(a)(8) is synonymous with "financial assistance." Because the complaint alleges a failure to supply "needed care" with reasonable promptness, the court grants Wilson-Coker's motion for summary judgment with respect to Count Four of the complaint.

As it is not required, the court will refrain from ruling on the issue of whether 42 U.S.C. § 1396a(a)(8) creates a federal right that can be enforced in a section 1983 cause of action.

---

[2]The court also notes that Carr inaccurately quotes the court in Sobky v. Smoley, 855 F. Supp. 1123, 1147 (D. Cal. 1994) as stating that the proposition that the reasonable promptness requirement applies only to payment is "incompatible with the plain language of § 1396a(a)(8)."  In fact, the court in Sobky said that it was "incompatible with § 1396a(a)(10)(B)."

**Count Five: 42 U.S.C. § 1396a(a)(10)(B)**

The complaint's fifth cause of action alleges that the defendant's failure to ensure adequate participation by Connecticut dental providers has resulted in some Medicaid recipients being able to obtain sufficient dental care while others cannot, in violation of 42 U.S.C. § 1396a(a)(10)(B) and its implementing regulation 42 C.F.R. §440.230.

Wilson-Coker argues that she is entitled to summary judgment on this cause of action because the "comparability of services" requirements in 1396a(a)(10)(B) "were 'waived' by the Secretary in Connecticut's approved waiver."

As Carr does not respond to Wilson-Coker's argument, and the court is convinced that the requirements in 42 U.S.C. § 1396a(a)(10)(B) were waived, Wilson-Coker's motion for summary judgment is granted as to Count Five of the complaint.

**Count Six: 42 U.S.C. § 1396a(A)(37)**

The complaint's sixth cause of action alleges a failure to comply with the requirement to promptly and efficiently pay participating providers, in violation of 42 U.S.C. § 1396a(A)(37) and its implementing regulation 42 C.F.R. §440.230.

Wilson-Coker argues first that this cause of action should be dismissed because "a different statute [42 U.S.C. § 1396u-2(f)] applies to claims processing by Medicaid MCOs."

Alternatively, Wilson-Coker argues that summary judgment is
appropriate because 42 U.S.C. § 1396a(A)(37) "does not create
enforceable rights."  Carr does not respond to either argument.

42 U.S.C. § 1396a(A)(37) provides that:

A state plan for medical assistance must-

provide for claims payment procedures which (A) ensure
that 90 per centum of claims for payment (for which no
further written information or substantiation is
required in order to make payment) made for services
covered under the plan and furnished by health care
practitioners through individual or group practices or
through shared health facilities are paid within 30
days of the date of receipt of such claims and that 99
per centum of such claims are paid within 90 days of
the date of receipt of such claims, and (B) provide for
procedures of prepayment and postpayment claims review,
including review of appropriate data with respect to
the recipient and provider of a service and the nature
of the service for which payment is claimed, to ensure
the proper and efficient payment of claims and
management of the program.

As this section plainly lacks the kind of individually-
focused, rights-creating language required after Gonzaga, and is
therefore not enforceable in a section 1983 cause of action, the
court does not need to consider whether Count Six should be
dismissed because it was brought pursuant to the wrong section of
the Medicaid Act.

The motion for summary judgment is granted as to Count Six
of the complaint.

**Counts Seven and Eight: 42 U.S.C. § 1396a(a)(43)**

The complaint's seventh and eighth causes of action allege a failure to inform of, and provide to, the plaintiff "Child Subclass" early and periodic screening, diagnostic and treatment ("EPSDT") dental services, in violation of  42 U.S.C. §§ 1396a(a)(43) and 1396d(r)(1)(A), and the implementing regulations 42 C.F.R. §§441.56(a), 441.56(b)(1)(vi) and 441.56(c).

Wilson-Coker argues that 1396a(a)(43) does not create a federal right that is enforceable in a section 1983 cause of action because "the focus of the statutory language...is not directly on the individual."  Alternatively, Wilson-Coker argues that she is entitled to summary judgment on the merits.

Carr responds that 1396a(a)(43) does create individual rights and furthermore that Wilson-Coker has failed to show that there is no genuine issue of material fact.

Section 1396a(a)(43) provides in pertinent parts that:

a state Medicaid plan must provide for-

(A) informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance including services described in section 1396d(a)(4)(B) of this title, of the availability of early and periodic screening, diagnostic, and treatment services as described in section 1396d(r) of this title and the need for age-appropriate immunizations against vaccine-preventable diseases,
(B) providing or arranging for the provision of such screening services in all cases where they are requested....

The court disagrees with Wilson-Coker's view that the focus

27

of the language is not on the individual.  The beneficiaries of
the section are "all persons in the State who are under the age
of 21 and who have been determined to be eligible for medical
assistance. . ."  42 U.S.C. § 1396a(a)(43)(A).  This is a clearly
identifiable group of individuals.  It is certainly no less
identifiable than the beneficiaries of 42 U.S.C. §
1396r-6(a)(1)("each family which was receiving [aid] in at least
3 of the 6 months immediately preceding the month in which such
family becomes ineligible for such aid"), which the Second
Circuit concluded focused sufficiently directly on the
individual's entitlement to support a section 1983 cause of
action.  Rabin v. Wilson-Coker, 362 F.3d 190, 202 (2d Cir. 2004).

   Wilson-Coker relies to a great extent on Frazer v. Gilbert,
300 f.3d 530 (5th Cir. 2002), a decision in which, she contends,
the Fifth Circuit held that "none of the EPSDT statutory
provisions create individual rights enforceable in a § 1983
action."  Carr denies that Frazar stands for so broad a
proposition.

   In the court's view, Frazar is of limited precedential value
since it was decided without consideration of the Supreme Court's
decision in Gonzaga.  Furthermore, this court is bound to follow
Second Circuit precedent and it cannot find that the statute
considered here is distinguishable from the statute considered in
Rabin.

28

Finally, in every post-Gonzaga decision the court is aware of, 1396a(a)(43) has been found to create a federal right enforceable in a section 1983 cause of action. Westside Mothers v. Olszewski, 368 F. Supp. 2d 740, 775 (D. Mich. 2005); Clark v. Richman, 339 F. Supp. 2d 631, 640 (D. Pa. 2004); Health Care for All, Inc. v. Romney, 2004 U.S. Dist. LEXIS 26470 (D. Mass. 2004); A.M.H. v. Hayes, 2004 U.S. Dist. LEXIS 27387 (D. Ohio 2004); Memisovski v. Maram, 2004 U.S. Dist. LEXIS 16772 (D. Ill. 2004); Kenny A. v. Perdue, 218 F.R.D. 277, 293 (D. Ga. 2003).

The court therefore concludes that 42 U.S.C. § 1396a(a)(43) meets the Gonzaga standard for finding that a statute has created federal rights enforceable in a section 1983 cause of action. The court further concludes that 1396a(a)(43) also meets the three-part test set down in Blessing v. Freestone, 520 U.S. 329 (1997). First, the above discussion demonstrates that Congress intended that the provision in question benefit the plaintiff. Second, the right to be informed of and having provided EPSDT services is not so vague and amorphous that its enforcement would strain judicial competence. This is particularly clear in this case as Carr is only alleging a violation with respect to dental services. Third, and finally, the provision giving rise to the right is clearly couched in mandatory rather than precatory terms. Language such as "must provide," "all persons" and "in all cases" leaves no doubt that a binding obligation is imposed

on the State.

The court therefore concludes that 42 U.S.C. § 1396a(a)(43) creates federal rights enforceable in a section 1983 cause of action.  The next issue is whether Wilson-Coker is entitled to summary judgment on the merits.

For Wilson-Coker to be entitled to summary judgment with respect to the allegation that she has failed to inform of EPSDT services, there must be no genuine issue of fact that Connecticut's plan for medical assistance "inform[s] all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance...of the availability of [EPSDT] services...."  42 U.S.C. § 1396a(a)(43)(A).  Wilson-Coker argues that Connecticut's plan meets this requirement because "[d]uring the initial application process, the defendant...informs applicants for assistance of the aviliability, and of the benefit of, EPSDT services.  When a case is granted, the defendant also generates a notice that is automatically issued by the Department's eligibility computer system, which informs families of the availability of EPSDT services."  Finally, "MCOs...inform[s] clients of the availability of EPSDT services...through a variety of communications."

Wilson-Coker's argument is plainly inadequate.  The statute requires that <u>all</u> eligible persons in the State under the age of

21 are to be informed.  Wilson-Coker is merely asserting that information is provided once a person is either: (1) in the application process, (2) has had her case granted or (3) is a client of an MCO.  Without the additional claim that all eligible persons in Connecticut under the age of 21 fall into one of these three categories, Wilson-Coker has failed to make a factual assertion that the informational requirement is satisfied.  As she does not make this additional claim, and the court does not believe that such a claim would be credible in any case, the motion for summary judgment is denied with respect to Count Seven of the complaint.

With respect to the actual delivery of EPSDT services, Wilson-Coker asserts that the "evidence in record indicates that EPSDT-related screening and treatment services are provided upon request."  Carr responds that it is undisputed that Wilson-Coker has failed to meet, by a substantial percentage, Connecticut's managed care dental program's goal of 80% EPSDT child dental utilization rate.  Furthermore, Carr has produced evidence of some particular cases where EPSDT dental services appear to have been requested but not provided within a reasonable time. Wilson-Coker does not dispute this evidence.

In this court's view, the discrepancy between the utilization goal and achieved utilization is not by itself determinative.  The statute requires that Connecticut's plan for

medical assistance "provid[es] or arrang[es] for the provision of such screening services in all cases <u>where they are requested</u>." 42 U.S.C. § 1396a(a)(43)(B)(emphasis added). Therefore, if less than 80% of the eligible population requests dental service, the 80% target cannot be met. This does not absolve Wilson-Coker, however. Since there must be a causal connection between the percentage of the eligible population that is informed of the availability of dental services and the percentage that requests such services, and the court has concluded that there is a genuine issue of material fact as to whether Wilson-Coker has fulfilled her informational obligations, the court cannot conclude that there is no genuine issue of fact as to her fulfillment of the service delivery requirements.

Therefore, the motion for summary judgment is denied with respect to Count Eight of the complaint.

### Count Nine: 42 U.S.C. § 1396a(a)(43)

The complaint's ninth cause of action alleges a failure to provide case management, transportation and scheduling assistance for EPSDT services to the plaintiff "Child Subclass," in violation of 42 U.S.C. §§ 1396a(a)(43) and 1396d(a)(19), and the implementing regulation 42 C.F.R. §441.62.

The court has already concluded that 1396a(a)(43) can support a section 1983 cause of action. Wilson-Coker argues in addition, however, that the ninth cause of action is not

32

actionable under section 1983 because there is no statutory basis
for the claims of a right to case management, transportation and
scheduling assistance.  Specifically, Wilson-Coker argues that
transportation and scheduling assistance are only identified as
EPSDT services in the implementing regulation and not in the
statute, and case management is not identified as an EPSDT
service in either the statute or the regulation.  Therefore, even
if there is a privately enforceable right to EPSDT services, such
services do not include case management, transportation or
scheduling assistance.  Alternatively, Wilson-Coker argues that
she is entitled to summary judgment on the merits.

The court understands Carr's response to be that the
implementing regulation is not creating a new right for the
purposes of a section 1983 cause of action, but is merely
interpreting the statute that creates the right.  "[A] regulation
does not create a federal right for purposes of § 1983 unless it
'defines or fleshes out' the content of an enforceable right
contained in the governing statute."  Rabin v. Wilson-Coker, 266
F. Supp. 2d 332, 342 (D. Conn. 2003)(quoting Harris v. James, 127
F.3d 993, 1009 (11th Cir. 1997)).

With respect to case management, Carr's argument does not in
fact rely on a federal regulation.  1396d(r)(5) defines EPSDT
services to include "[s]uch other necessary health care,
diagnostic services, treatment, and other measures described in

33

[42 U.S.C § 1396d(a)] to correct or ameliorate defects and
physical and mental illnesses and conditions discovered by the
screening services, whether or not such services are covered
under the State plan."  42 U.S.C § 1396d(r)(5)(emphasis added).
1396d(a) provides definitions of terms used in the subchapter and
1396d(a)(19) includes "case-management services."  The court
therefore agrees with Carr that case management is plausibly
included in "other measures" and consequently that case
management is one aspect of EPSDT services.

     With respect to transportation, Carr again points to the
"other measures described in [42 U.S.C § 1396d(a)]."  42 U.S.C §
1396d(r)(5).  However, unlike case management, 1396d(a) does not
directly mention transportation.  Carr therefore points to 42
U.S.C § 1396d(a)(6), which defines "medical assistance" as
payment of part or all of the cost of care and services including
"medical care, or any other type of remedial care recognized
under State law, furnished by licenced practitioners within the
scope of their practice as defined by State law." (emphasis
added).  Carr completes the argument by pointing to 42 C.F.R. §
440.170, which "interpret[s] and implement[s]" the term "medical
assistance" to include transportation as part of "[a]ny other
medical care or remedial care recognized under State law."  42
C.F.R. § 440.170(a)(1).  Furthermore, the State Medicaid Manual,
which is issued by CMS, sets out that the State is obligated to

"ensure that recipients obtain needed Medicaid services, offer and provide, if requested, assistance with transportation and scheduling appointments."  State Medicaid Manual, Section 5150.

The court agrees with Carr that 42 C.F.R. § 440.170 should not be understood to create a new federal right, but rather to "define or flesh out" the existing right to EPSDT services.  The court therefore concludes that transportation is included in EPSDT services.

Finally, with respect to scheduling services, Carr points to 42 C.F.R. § 441.62 which includes, if requested, "[n]ecessary assistance with scheduling appointments for services" as part of EPSDT services.  Carr is unable, however, to construct a chain that connects 42 C.F.R. § 441.62 to a statute which the court has concluded can support a section 1983 cause of action.  Without such a link, it is impossible for this court to conclude that Congress intended scheduling services to be part of a federal right to EPSDT services.

The court therefore agrees with Wilson-Coker that there is no statutory basis for the claim of a federal right to scheduling services.

As the court has concluded that case management and transportation services are part of the EPSDT services, the court must next consider Wilson-Coker's claim that she is entitled to summary judgment on the merits.

35

The court understands Wilson-Coker's argument to be identical to her argument with respect to Count Eight of the complaint, namely that the "evidence in record indicates that EPSDT-related screening and treatment services are provided upon request."

Carr denies that there is no genuine issue of fact as to whether case management and transportation services are provided as required.

The court agrees with Wilson-Coker that case management and transportation services, like the other ESPDT services, fall under 1396a(a)(43)(B) and must therefore be made available upon request. However, as with the other ESPDT services there must be a causal connection between the percentage of the eligible population that is informed of the availability of dental services and the percentage that requests such services. As the court has concluded that there is a genuine issue of material fact as to whether Wilson-Coker has fulfilled her informational obligations, the court cannot conclude that there is no genuine issue of fact as to her fulfillment of the service delivery requirements, including case management and transportation services.

Therefore, with respect to Count Nine of the complaint, Wilson-Coker's motion for summary judgment is granted in part and denied in part.

36

**<u>CONCLUSION</u>**

For the foregoing reasons, the motion for summary judgment (document no. 107) is GRANTED with respect to Counts One through Six of the complaint, DENIED with respect to Counts Seven and Eight, and GRANTED in part and DENIED in part with respect to Count Nine of the complaint.

It is so ordered this 19th day of January, 2006, at Hartford, Connecticut.

_____/s/_____
Alfred V. Covello, U.S.D.J.

37