UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARY CARR, *et al.,* | ) | CIVIL ACTION NO. |
| Plaintiffs, | ) | 3:00 CV 1050 (AVC) |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICIA WILSON-COKER, in her | ) | CLASS ACTION |
| official capacity as Commissioner of the State of | ) | |
| Connecticut Department of Social Services, | ) | |
| Defendant. | ) | |
| | ) | FEBRUARY 2, 2006 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
RECONSIDERATION**

## I.     INTRODUCTION

In its January 19, 2006 ruling (hereinafter referred to as "Decision"), the Court partially

granted the defendant's motion for summary judgment in the above-captioned matter, dismissing

six of the plaintiffs' nine claims under the Medicaid Act. The plaintiffs now respectfully request

that the Court reconsider its grant of summary judgment to the defendant with respect to Count

Four, the "reasonable promptness" claim under 42 U.S.C. § 1396a(a)(8).[1]  As set forth more fully

below, the court's interpretation of "medical assistance" as solely "payment for services" is

inconsistent with the canons of statutory construction and contrary to a long line of case law that

recognizes the reasonable promptness requirement is intended to ensure facilitation of the

delivery of covered services to recipients.  The Court's interpretation of the "reasonable

promptness" provision undermines the Medicaid Act's overarching purpose in facilitating access

to critically necessary medical services.

## II.     LAW AND ARGUMENT

### A.  The Legal Standard

Local Rule 7 (c) permits the filing of a motion for reconsideration in order to bring to

---

[1] Unless otherwise specified, all references to statutes are contained in 42 U.S.C.

the Court's attention, "matters of controlling decisions which counsel believes the Court

overlooked in the initial decision or order. The Second Circuit has stated that reconsideration is

appropriate only under certain conditions:   an intervening change in controlling law, new

evidence, or the need to correct a clear error of law or to prevent manifest injustice." Lorenzetti

v. Jones, 120 F. Supp. 2d 181, 184 (D. Conn. 2000), (citing United States v. Sanchez, 35 F. 3d

673, 677 (2d Cir. 1994)).   Such a motion may not be used merely "to plug gaps in an original

argument or to argue in the alternative once a decision has been made." Channer v. Brooks, No.

399CV2564(CFD), 2001 WL 1094964 at *1 (D. Conn. Sept. 10, 2001). Thus, "the function of a

motion for reconsideration is to present the court with an opportunity to correct 'manifest errors

of law or fact or to consider newly discovered evidence'." Lo Sacco v. City of Middletown, 822

F. Supp. 870, 876-877 (D. Conn. 1993) (quoting Rothwell Cotton Co. v. Rosenthal & Co., 827 F.

2d 246, 251 (7th Cir. 1987), aff'd, 33 F. 3d 50 (2d Cir. 1994)).

> **B.  Reasonable Promptness**

The plaintiffs seek reconsideration of the Court's holding that their claim that

inadequate reimbursement rates for dental providers resulting in unreasonable delays in the

provision of Medicaid-covered dental care fails to state a claim for relief under Medicaid's

"reasonable promptness" requirement. § 1396a(a)(8).   The Court holds that the "medical

assistance" required by that section to be furnished to recipients with "reasonable promptness"

only refers to "financial assistance associated with covered medical treatment and services" and

not the actual provision of covered services. Decision, pp. 23-24.  Plaintiffs respectfully contend

that the Court made an error of law in concluding as it did with respect to this provision.

> **(i) "Medical Assistance" in Sections (a)(8) and (a)(10) Means Medical**
> ***Services*, Including Care, Medicine, and Equipment, and Not Merely**
> ***Payment* for Medical Services**

It is axiomatic, of course, that "[t]he starting point in interpreting a statute is its

language." Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409 (1993); see, e.g.,  Leocal v.

Ashcroft, 125 S. Ct. 377, 382 (2004). In other contexts, "this first canon is also the last"

sometimes, and "judicial inquiry is complete." Connecticut Nat'l Bank v. Germain, 503 U.S.

249, 254 (1992) (internal quotation marks omitted). This Court is construing the Medicaid

statute, however, and it's only a slight exaggeration to acknowledge that (in the Ninth Circuit's

words) "any quality of crystal clarity is uniformly recognized as totally absent." Beverly

Community Hospital Ass'n v. Belshe, 132 F.3d 1259, 1266 (9th Cir. 1997); *see also*

Rehabilitation Ass'n of Virginia, Inc. v. Kozlowski, 42 F.3d 1444, 1450 (4th Cir. 1994) (calling

the provisions concerning Medicaid and Medicare financing "among the most completely

impenetrable texts within human experience"); Schweiker v. Gray Panthers, 453 U.S. 34, 43

(1981) (saying that the Social Security Act's "Byzantine construction" makes the statute "almost

unintelligible to the uninitiated").

> Two sections of the statute are relevant here. First, § 1396a(a) provides that:

>> A state plan for medical assistance must –

>> (8) provide that all individuals wishing to make application for medical
>> assistance under the plan shall have opportunity to do so, and that such
>> assistance shall be furnished with reasonable promptness to all eligible
>> individuals;
>> . . . .
>> (10) provide –

>> (A) for making medical assistance available, including at least the care and
>> services listed in [certain] paragraphs . . . of section 1396d(a) . . . to –

>> (i) all individuals . . . [who meet certain specifications].

Second, § 1396d(a) appears to define "medical assistance" in its opening clause:

> The term "medical assistance" means payment of part or all of the cost of the following

care and services . . . to [certain] individuals.

> That said, the language of § 1396a(a)(8) does evince Congress's intent that the states

*make available* actual medical services, and not merely payment as the Court held in its Decision of January 19, 2006.  By "make available" the plaintiffs do not mean that the State of Connecticut must itself hire doctors and employ them in state hospitals.  Such an argument would of course render superfluous the provision in the Medicaid Act that permits a state to contract for the medical assistance with managed care organizations,.§ 1396u-2 ("Provisions relating to managed care").  Plaintiffs mean that the state must *provide* care and services, including (for example) by contracting those services out to third party providers.  What the state may not do is offer simply to pay for medical assistance and nothing more.

### (a) The Court should have used the canons of statutory construction to determine that  the term "medical assistance" used in §a(a)(8) does not merely mean "payment"

As the Second Circuit noted in Rabin v. Wilson-Coker, the Medicaid Act is a "background of a Byzantine tangle of federal statutes, any one of which is difficult to decipher if read either independently of the history of the program or in isolation from other provisions of the Medicaid Act." Rabin v. Wilson-Coker, 362 F.3d 190, 192 (2d Cir. 2004).  The Court must consider the Medicaid statute "in all its parts" when determining the meaning of "medical assistance" with respect to §§ 1396a(a)(8) and a(a)(10).  Rabin, 362 F.3d 190, 196 (2d Cir.2004), citing Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36 (1998).  Further, the Court must give "some significant measure of deference to CMS's interpretation of the statute." Community Health Ctr. v. Wilson-Coker, 311 F.3d 132, 137 (2d Cir. 2002). Third, the interpretation given to the statute must be consistent with the congressional purpose for enacting it. Holloway v. United States, 526 U.S. 1, 9 (1999).  The Court did none of these things in the Decision.

### (b) The Court failed to examine in the context of the Medicaid statute as a whole when determining the meaning of "medical

<u>assistance" in §§ 1396 a(a)(8) and a(a)(10)</u>

The term "medical assistance" appears multiple times in the Medicaid statute. Under the Court's analysis of the requirements imposed on the defendant by §1396a(a)(8), the Court relies merely upon the literal reading of "medical assistance" in §1396d(a). The court then applies the definition of 1396d(a) to §§ 1396a(a)(8) and (10)(A). In doing so, the Court creates an unworkable result and fails to take the extra step of fully applying the canons of statutory construction.

Looking to § 1396d(a) to inform § 1396a(a), as the Court did here, simply makes no sense. (Plaintiffs do not suggest that the definitional section is surplusage, only that it cannot apply to Section 1396a(a)(8) and (10)(A).) A simple substitution of the Court's interpretation of "medical assistance" under §1396d(a) as "payment for services" for the words "medical assistance" into other statutory sections, clearly shows the redundancies and contradictions that would result. For instance, if the word "payment" replaced the words "medical assistance" in § 1396a(a)(8), the statute would provide that a state plan would have to give "all individuals wishing to make application for payment" "the opportunity to do so," and further require that "such payment shall be furnished with reasonable promptness to all eligible individuals." It is not the *individuals* who receive payment under the state plan, however, but the *providers*. Replacing "medical assistance" with "payment" would render § 1396a(a)(10)(A) similarly unintelligible. That section would provide that a state plan would "mak[e] payment available, including at least the care and services" listed in parts of § 1396d(a). But "payment," by definition, cannot "include" any "care and services." The statute would be nonsensical.

In reviewing the Court's interpretation of "medical assistance" as merely "payment" against the statute as a whole, other provisions of the Medicaid Act would also be unintelligible,

including §§ 1396a(a)(10)(B) and a(a)(10)(C). These sections, on their face, refer to the amount,

duration and scope of medical assistance, and medical assistance as "services". Another section,

§ 1396a(a)(23), for example, requires that a state plan must "provide that (A) any individual

eligible for *medical assistance (including drugs)* may obtain such assistance from any[one]

qualified to perform the service." § 1396a(a)(23) (emphasis added). If "medical assistance"

meant "payment," the statute would require that states provide "payment (including drugs)" –

which is simply nonsense. Similarly, § 1396a(a)(65) requires that a state plan must "issue

provider numbers for all suppliers of *medical assistance consisting of durable medical*

*equipment*." § 1396a(a)(65) (emphasis added). Needless to say, defining "medical assistance"

as "payment" would make the statute gibberish.

Other examples of statutory provisions in which defining "medical assistance" as

"payment" makes the provision meaningless or unworkable include §§ 1396a(a)(3),

1396a(a)(10)(B), 1396a(a)(10)(C), and 1396u-2(b)(4). Further evidence that "medical

assistance" does not mean merely payment includes at least one Congressional Act amending the

Medicaid statute subsequent to the enactment of § 1396d(a). Section 9508 of P.L. 99-272 added

a new subsection (g) to §1915 of the Medicaid Act. This subsection, as amended by P.L. 100-

203, provides that:

> (g)(1) A State may provide, *as medical assistance*, case management
> *services* under the plan without regard to the requirements of section 1902(a)(1)
> and section 1902(a)(10)(B). The provision of case management services under
> this subsection shall not restrict the choice of the individual to receive medical
> assistance in violation of section 1902(a)(23)
> (2) For purposes of this subsection, the term 'case management services'
> means services which will assist individuals eligible under the plan in gaining
> access to needed medical, social, educational, and other services.".(emphasis
> added).

Consolidated Omnibus Reconciliation Act of 1955, P.L. 99-272, 100 Stat 82 (1986) as amended

by the Omnibus Budget Reconciliation Act of 1987, PL 100-203, 101 Stat 1330, 1987; (codified as amended at § 1396n(g)(1) and (2)). Clearly "medical assistance" is not "payment" under this statutory provision *despite* the pre-existence of § 1396d(a).

There are examples of places in §1396a where the definition of "medical assistance" is accurate including, § 1396a(a)(34). However, the plaintiffs never argued that § 1396d(a) *never* defines "medical assistance" in Title XIX; of course, it usually does when there is a *clear* reference to medical assistance as payment. When, however, replacing the term "medical assistance" with "payment" under §1396d(a) would be nonsensical, § 1396d(a) cannot apply. That is so with §§ 1396a(a)(8) and (a)(10). The proper reading of § 1396a(a) is the natural one: "medical assistance" must mean medical *services* (which includes items such as prescription drugs and equipment).

### (c) The Court erroneously gave no deference to CMS's interpretation of "medical assistance" under the Medicaid statute for purposes of defining "medical assistance" under §§ 1396a(a)(8) and a(a)(10)

The plaintiffs briefed, in their Opposition to Defendant's Motion for Summary Judgment of October 8, 2003, at pp. 45-56, that the regulation that implements § 1396a(a)(8), 42 C.F.R. §435.930, mandates the continuing and regular provision of Medicaid services "to all eligible individuals" until the defendant finds them to be ineligible. 42 C.F.R. § 435.930. Interpreting "medical assistance" under 42 C.F.R. 435.930 to mean "payment" works the same preposterous result as does construing "medical assistance" under § 1396a(a)(8) to mean "payment" -- it would make payment to individuals and not providers. However, the logical construction of this regulatory provision, by reference to other regulatory sections that define "medical assistance" as "services", makes it clear that "medical assistance" under § 1396a(a)(8) means "services".

The Court erred in not reviewing or giving substantial deference to any CMS regulations

governing "medical assistance". <u>Chevron U.S.A. v. Natural Resources Defense</u>, 467 U.S. 837

(1984); <u>K & A Radiologic Tech. Services Inc. v. Comm. of the Dept. of Health</u>, 189 F.3d 273,

282-3 (2nd Cir. 1999); <u>Perry v. Dowling</u>, 95 F.3d 231 (2nd Cir. 1996); <u>Bray v. Dowling</u>, 25 F.3d

135, 143 (2nd Cir. 1994).  An agency interpretation "qualifies for <u>Chevron</u> deference when it

appears that Congress delegated authority to the agency generally to make rules carrying the

force of law, and that the agency interpretation claiming deference was promulgated in the

exercise of that authority." <u>United States v. Mead Corp.</u>, 533 U.S. 218, 226-27 (2001).

If the Court gave CMS's interpretations of "medical assistance" the substantial deference

required, the Court would have concluded that "medical assistance" under §§ 1396a(a)(8) and

(a)(10) can only mean "services."  The Court's interpretation of "medical assistance" as

"payment" under §§ 1396a(a)(8) and (10)(A) is not only incompatible with a logical reading of

"medical assistance" under the statutory provisions, but it is also directly in conflict with the

Medicaid regulations that interpret § 1396a(a)(10)(A).

The federal regulations clearly define "medical assistance" for purposes of §

1396a(a)(10) as "services".  For example, 42 C.F.R. § 440.200 <u>et seq.</u> provides, "(a) [T]his

subpart implements the following statutory requirements – (1) Section 1902(a)(10) [42 USC

§1396a(a)(10], regarding comparability of *services* for groups of recipients, and the amount

duration, and scope of *services* described in 1905(a) [42 U.S.C. § 1396a] of the Act that the State

plan *must provide for* recipients." 42 C.F.R. § 440.200(a)(1).(emphasis added)

The Court's interpretation of "medical assistance" as merely "payment" cannot be

reconciled with other subdivisions of  §§ 1396a(a)(10) including a(a)(10)(B) and a(a)(10)(C).

The federal regulations implementing these sections also make clear that "medical assistance"

refers to "services" and not "payment" for services.  <u>See</u> 42 C.F.R. §§ 440.230 ("The [Medicaid

State] plan must specify the amount, duration, and scope of each *service* ....); 42 C.F.R. §

440.210 – titled "Required *services* for categorically needy" (requiring that the State plan specify

that categorically needy recipients *are furnished with services* including *dental services*)[2]

(emphasis added).

Most importantly, while the Court concludes that "medical assistance" under § 1396d(a)

means "financial assistance", the regulations implementing this statutory section make the

consistent interpretation that "medical assistance" actually refers to "provision of services" or

"types of services" required to be furnished under a Medicaid state plan. See 42 C.F.R. § 440.1

et seq. – "*Services* included in the term 'medical assistance'"; other provisions defining

"institutions and *services* that are included in the term 'medical assistance'; and waiver

provisions concerning home and community based *services* listed as 'medical assistance". 42

C.F.R. § 440.1 et seq. (emphasis added)

Other regulatory provisions, including those that implement § 1396a(a)(3), clearly

support a finding that "medical assistance" means "services" under §§ 1396a(a)(8) and (10)(A).

Under those regulations, 42 C.F.R. §§ 431.200 et seq., the State agency is required to ensure that

the fair hearings process under the Medicaid State Plan complies with United States

Constitutional due process standards as set forth in Goldberg v. Kelly, 397 U.S. 254 (1970).

Individuals specifically entitled to a fair hearing include any applicant "whose claim for *services*

is denied or is not acted upon with reasonable promptness." 42 CFR § 431.220(a)(1) (emphasis

added). Further, a recipient is entitled to a hearing upon request because he or she believes the

agency has taken an *action* erroneously. 42 CFR § 431.220(a)(2). The matters to be considered

at a hearing include "agency action or failure to act on a claim for *services*....," and "[A]gency

---

[2] See also 42 C.F.R. §431.51(a)(1) (freedom of choice regulation – "recipients may obtain *services* from any
qualified Medicaid provider that undertakes to provide the services to them")