decisions regarding changes in the type or amount of *services*." 42 C.F.R. § 431.241(a) and (b). (emphasis added). Therefore, the regulations make clear that recipients are entitled to a fair hearing upon request not just when a claim for "payment for services" is denied, as this court's interpretation of "medical assistance" would only require, but when requests for *services* themselves are denied, terminated or suspended or not acted on promptly. 42 C.F.R. §§ 431.200, 435.919. (emphasis added).

The Court made a clear error of law in interpreting the phrase "medical assistance" to mean merely "financial assistance" and should defer to the Medicaid regulations that find that "medical assistance" actually refers to the availability and facilitation of services.

### (d) The Court failed to examine whether its interpretation of "medical assistance" for purposes of §§ 1396 a(a)(8) and a(a)(10) is consistent with the intent of the Medicaid statute

Finally, the Court made no determination whether its interpretation of "medical assistance" was consistent with the purposes of the Medicaid Act. Section 1396 states the purposes of the Medicaid Act -- to furnish medical assistance to people who need medical services and who can other wise not afford them. Section 1396 also refers to the furnishing of services needed to help people retain and attain self-sufficiency. The court's intepretation of "medical assistance" as merely "payment" under §§ 1396 a(a)(8) and (10), clearly frustrates these purposes.

As various courts have found, the purpose of the Medicaid statute is to provide for necessary health care and services for indigent persons. As the Sixth Circuit has noted, "[i]t would make little sense for Congress to require a participating state to assure in its Medicaid plan that it will protect the health and welfare of [Medicaid] recipients, without also requiring that the state actually implement the promised safeguards." Wood v. Tompkins, 33 F.3d 600, 608 n.16

10

(6th Cir. 1994). This Court further explained, "[T]he rights that are enforceable include the substantive right that the state actually act in accordance with its plan; it must implement that which it assures." Id. Other courts of appeals have said the same thing. In S.D. ex rel. Dickson v. Hood, 391 F.3d 581 (5th Cir. 2004), for example, the Fifth Circuit held that the state of Louisiana "violated the Medicaid Act by denying [the plaintiff] a *service* described in § 1396d(a) that is necessary for ameliorative purposes under the EPSDT program." Id. at 596 (emphasis added). In Bryson v. Shumway, 308 F.3d 79 (1st Cir. 2002), the First Circuit held that disabled plaintiffs had a cause of action under Section 1983 to ensure that New Hampshire was providing *services* with reasonable promptness. In Doe v. Chiles, 136 F.3d 709 (11th Cir. 1998), the Eleventh Circuit held that Florida was not furnishing *services* with reasonable promptness.

Finally, the 1989 legislative history of portions of § 1396a(a), though relatively spare on the point, supports reading "medical assistance" as actual "services" and not merely payment. The House Report states that "each state much provide, as a minimum, [a number of] EPSDT *services*." H.R. Rep. No. 247, 101st Cong., 1st Sess. 398-399 (1989), reprinted in 1989 U.S.C.C.A.N. 2124-2125.

The narrow and unworkable interpretation by the Court of the term "medical assistance" to mean "payment" and not "facilitation or the provision of services," resulted from an error of law -- the Court's failure to apply the proper rules of statutory construction in its analysis. The proper application of the canons of statutory construction conclusively demonstrates that "medical assistance" under §§ 1396a(a)(8) and (10) means "services".

> **(ii) The Court's analysis of reasonable promptness ignores the substantial weight of case law in plaintiffs' favor analyzing § 1396a(a)(8) in the context of the Medicaid Act as a whole to require that services be made available to recipients**

Even if the Court does not reconsider its ruling that "medical assistance" means merely

11

"payment" as discussed supra at 2, the Court should recognize that the weight of authority holds that for § 1396a(a)(8) and § 1396a(a)(10)(A) to be meaningful and consistent with the purposes of the statute there must be services available for which "payment" can actually be made. The error of the Court's discussion is further demonstrated by a more extensive review of case law which carefully analyzes the meaning of § 1396a(a)(8) within the context of the Medicaid statutory scheme. The Court's holding is based both on a literal reading of the definition of "medical assistance" found in 42 U.S.C. §1396d(a)("[t]he term 'medical assistance' means payment of part or all of the cost of [the listed] care and services") and on a fundamental misunderstanding of Medicaid law reflected in dicta in Bruggeman v. Blagojevich, 324 F.3d 906 (7th Cir. 2003).

The application of the "reasonable promptness" provision to claims of systemic delays in the provision of services is one that federal courts have recognized for at least 19 years. *See e.g.,* Bryson v. Shumway, 308 F.3d 79, 88-89 (1st Cir. 2002) (holding §1396a(a)(8) applicable to claim that state not filling available waiver slots in a timely manner); Doe v. Chiles, 136 F.3d 709, 711 (11th Cir. 1998) (affirming a district court finding that state officials were failing to furnish Medicaid assistance with "reasonable promptness" to eligible developmentally disabled individuals who had been on lengthy waiting lists for inadequately funded covered services); Rosie D. v. Romney, No. CIV.A.01-30199-MAP, 2006 WL 181393 (D. Mass. Jan. 26, 2006) (failure to promptly provide the full range of EPSDT-required mental health assessment and treatment violates §1396a(a)(8)); Health Care for All v. Romney, No. Civ.A.00-10833RWZ, 2005 WL 1660677 (D. Mass. July 14, 2005) (applying §1396a(a)(8) to claim that dental services not timely provided due to inadequate funding of dental providers); Oklahoma Academy of Pediatrics v. Fogerty, 366 F.Supp. 2d 1050, 1109 (N.D.Okla. 2005) ("system-wide delays in

12

treatment exist and [plaintiffs] have presented convincing evidence that those delays are not reasonable. In violation of 42 U.S.C. § 1396a(a)(8), defendants are not ensuring that medical assistance is furnished with reasonable promptness to all eligible individuals"); Lewis v. New Mexico, 275 F. Supp.2d 1319, 1345 (D. N.M. 2003) (§1396a(a)(8) challenge to state's admission that individuals who had been allocated to the state's Medicaid-funded community-based waiver program "would not receive services until the following year"); Boulet v. Cellucci, No. CIV.A.99-10617-DPW, 2000 WL 1030398 (D. Mass. July 19, 2000) (applying §1396(a)(8) to delays and waiting lists for waiver services); Kirk T. v. Houstoun, No. 99-3253, 2000 WL 830731, (E.D.Pa. Jun 27, 2000) (challenge to delays in the provision of behavioral health services to children at risk of hospitalization or residential placement due to waiting months for services); Sobky v. Smoley, 855 F.Supp. 1123, 1149 (E.D.Cal.1994) (where "insufficient funding ... caused providers of methadone maintenance to place eligible individuals on waiting lists for treatment"); Linton v. Carey, 779 F.Supp. 925, 936 (M.D.Tenn.1990) (inadequate number of nursing home care beds causing patients to experience extended delays and waiting lists in attempting to gain access to long term nursing home care violated §1396(a)(8)); Clark v. Kizer, 758 F.Supp. 572 (E.D. Ca. 1990) (challenge to delays in provision of dental services due to inadequate funding of providers); Morgan v. Cohen, 665 F. Supp. 1164, 1177 (E.D. Pa. 1987) (inadequate funding of transportation services causing interruptions in services).

In the instant case the Court states that the cases plaintiffs cited in their argument failed to consider the definition of "medical assistance" found in §1396d(a). However, the courts in the above-cited cases did not fail to consider §1396d(a). As these cases make clear, "payment... of the cost of [the listed] care and services" not only means the physical act of providing payment from the state to providers for the care and service provided to individual recipients by individual

13

providers, but also the sufficiency of that payment to providers generally which is necessary to assure the availability of those goods and services provided in each state's Medicaid State Plan, including, in the case at hand, dental services. If adequate "financial assistance" is not paid to providers in the first instance, to ensure that services the state purports to be providing in its state plan are actually available, then there are no services for which to provide payment on behalf of individual recipients.

This is the precise analysis in Health Care for All v. Romney, which thoroughly considered the interplay of §1396d(a) and §1396a(a)(8) and reconciled them in a manner which gives full respect and meaning to each. See No. Civ.A.00-10833RWZ, 2005 WL 1660677, pp 18- 21. Rejecting both the defendant's argument that "medical assistance" means merely payment as defined in §1396d(a) ("Defendant's myopic reading of the statutory language misses the forest for the trees." Id, p. 9), and the plaintiffs' argument that actual delivery of services by the state may be required, the Massachusetts District Court identified

> "an interpretation of the "reasonable promptness" provision that both upholds the underlying purpose of requiring punctual medical assistance and tailors the reach of this statute to those undoubtedly intended to be governed by it. A state may not circumvent a statutory duty for prompt payment by underfunding a mandatory Medicaid service to the degree that no health care practitioners can afford to provide the service. Setting reimbursement levels so low that private dentists cannot afford to treat Medicaid enrollees effectively frustrates the reasonable promptness provision by foreclosing the opportunity for enrollees to receive medical assistance at all, much less in a timely manner. To that end, the promptness standard set forth in §1396a(a)(8) may be reasonably understood to constrain actions and protocols by a state and its Medicaid administrative and rate-setting agencies that otherwise subvert the statute's intent."
>
> No. Civ.A.00-10833RWZ, 2005 WL 1660677, pp. 20-21

The Court's reliance on dicta in Bruggeman, and on the cases which in turn rely on that dicta for the proposition that the Medicaid Act does not require the actual provision of covered care and services, is misplaced. Not only did Bruggeman not involve the unavailability of

Medicaid services due to inadequate financial assistance, the distinction it draws between "financial assistance" and the actual provision of services misconstrues both the nature of plaintiffs' claims in this case and the relief the plaintiffs seek.

In Bruggeman, the court upheld the dismissal of a claim by parents of children with mental retardation that the state had not asked local planning agencies to provide the approvals necessary to make a sufficient number of institutional facilities available in the northern part of the state. Plaintiffs' claims did not involve a lack of access to a vacancy in one of the existing facilities. Instead, their contention was simply that parents "do not want to ship their children off to [institutional facilities] in the southern part of the state because of the time and expense that would be entailed in traveling to visit them." 324 F.3d 906, 908-9. The court correctly held that §1396a(a)(8) is not infringed by the alleged "maldistribution" of institutions particularly when the plaintiffs did not allege that anyone had been put at medical risk by having to be transported to a facility in the southern part of the state. 324 F.3d 906, 910.

However, the Bruggeman court went on to gratuitously note that even if persons with mental retardation might be at medical risk from having institutions far from home, the plaintiffs still would not have a claim under § 1396a(a)(8) because the statutory reference to "medical assistance" in § 1396a(a)(8) "appears to have reference to *financial* assistance rather than to actual medical services. . . Medicaid is a payment scheme not a scheme for state provided care, as through state-operated hospitals."[3] Id. The distinction between "financial assistance" and the actual provision of medical services directly by the state, drawn by Bruggeman, and relied on by the other cases cited by the Court in its decision, see Clark v. Richman, 339 F. Supp. 2d 631 (D. Pa. 2004); and Westside Mothers v. Olszewski, 368 F. Supp. 2d 740 (E.D. Mich. 2005), is a false

---

[3] The Bruggeman court did not cite or even mention the definition of medical assistance found in 42 U.S.C. §1396d(a).

15

one. The plaintiffs herein do not seek to have the state directly provide dental services[4]; rather, they seek to have the state ensure that those services are actually available when needed, and thus can be provided with reasonable promptness.

Such financial assistance is perfectly consistent with the definition of "medical assistance" set forth in 42 U.S.C. §1396d(a). The history of the Medicaid Act's reasonable promptness requirement, set forth in Sobky v. Smoley, 855 F. Supp 1123, 1148-49 (E.D. Cal. 1994), shows that it was intended to prohibit states "responding to budgetary constraints in such a way as to cause otherwise eligible recipients to be placed on waiting lists for treatment. Id. at 1148.[5] In Oklahoma Academy of Pediatrics v. Fogerty, 366 F.Supp.2d 1050, 1109 (N.D. OK 2005), the court held that system-wide delays in the provision of treatment services for children violated the reasonable promptness requirement of §1396a(a)(8). The Oklahoma federal district court expressly rejected Bruggeman's dicta regarding the distinction between "financial assistance" and the actual provision of services: "this distinction, while accurate, does not preclude a finding in this case that defendants have violated §1396a(a)(8). Without financial assistance (provider reimbursement) sufficient to attract an adequate number of providers, reasonably prompt assistance is effectively denied." 366 F.Supp.2d at 1109.

Finally, if this Court reverses its summary judgment ruling for the defendant on Count Four, §1396a(a)(8)'s requirement of reasonable promptness, the plaintiffs direct the Court's attention to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment dated October

---

[4] A close reading of both Clark v. Richman and Westside Mothers shows that the plaintiffs in those cases also did not seek to have the state provide services directly, but, rather, that the state provide sufficient financial assistance to ensure the availability of providers to provide services to eligible recipients with reasonable promptness. Clark v. Richman, 339 F. Supp. 2d 631, 634; Westside Mothers v. Olszewski, 368 F. Supp. 2d 740, 763.

[5] Contrary to the Court's assertion in footnote 2 of its Decision, page 24, plaintiffs did not misquote Sobky v. Smoley. That decision, on p. 1147, states, as plaintiffs quoted, "Because defendant's argument is incompatible with the plain language of §1396a(a)(8), their motion to dismiss plaintiffs' reasonable promptness claim is denied." Nowhere on p. 1147 is §1396a(a)(10)(B) mentioned at all.

16

8, 2003, pp. 45-56, and this Court's decision in <u>Rabin v. Wilson-Coker</u>, 266 F. Supp.2d 332, 341-342 (D. Conn. 2003) which found § 1396a(a)(8) enforceable under the analysis of individual enforceability pursuant to <u>Gonzaga University v. Doe</u>, 536 U.S. 273 (2002).

### III. **CONCLUSION**

Because the Court's ruling on the defendant's motion for summary judgment as to the plaintiffs' reasonable promptness claim under § 1396a(a)(8) contains clear errors of law, as set out above, the plaintiffs respectfully request the Court reconsider its Decision of January 19, 2006 on Count Four of the plaintiffs' Complaint.

Respectfully submitted,

PLAINTIFFS,
MARY CARR, ET AL.

By: *Jamey Bell*
JAMEY BELL
Fed. Bar No. CT15520
Jbell@ghla.org
VICTORIA VELTRI
Fed. Bar No. CT19754
Vveltri@ghla.org
GREG BASS
Fed. Bar No. CT18114
Gbass@ghla.org

GREATER HARTFORD LEGAL AID, INC.
999 Asylum Ave., 3rd Floor
Hartford, CT 06105-2465
(860) 541-5000
Fax (860) 541-5050

DAHLIA GRACE
Fed. Bar No. 19551
dgrace@connlegalservices.org
CONNECTICUT LEGAL SERVICES
211 State Street
Bridgeport, CT 06604

17

(203) 336-3851
Fax (203) 333-4976

Attorneys for the Plaintiffs

Of Counsel:
BERNHARDT K. WRUBLE
CT Juris No. 421195
316 Westmont
West Hartford, CT 06117
bkwruble@yahoo.com
(860)521-3543
Fax (860)521-3560

## CERTIFICATE OF SERVICE

This hereby certifies that the foregoing Plaintiffs' Memorandum In Support of Plaintiffs' Motion For Reconsideration was mailed this 2nd day of February, 2006 to counsel of record for Defendant, as follows:

**Tanya Feliciano**
**Hugh Barber**
**Richard Lynch**
Assistant Attorneys General
55 Elm Street, 4th Floor
P.O. Box 120
Hartford, CT 06141-0120

_____
Jamey Bell