UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY CARR, *et al.*,<br>　　　　Plaintiffs,<br><br>　　v.<br><br>PATRICIA WILSON-COKER, in her<br>official capacity as Commissioner of the State of<br>Connecticut Department of Social Services,<br>　　　　Defendant. | CIVIL ACTION NO.<br>3:00 CV 1050 (AVC)<br><br><br><br>CLASS ACTION<br><br><br><br>FEBRUARY 14, 2006 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE DENIAL OF THEIR MOTION FOR SUMMARY JUDGMENT**

I.　**INTRODUCTION**

On January 31, 2006, the Court denied the plaintiffs' partial motion for summary judgment in the above-captioned matter on Count Eight of the Complaint, concerning denials of services to the plaintiff subclass of children under the Medicaid Act's Early and Periodic Screening, Diagnostic and Treatment (EPSDT) provisions. The plaintiffs now respectfully request that the Court reconsider its denial of partial summary judgment for the plaintiffs with respect to Count Eight, the EPSDT claim. As set forth more fully below, the Court's analysis ignored key elements of EPSDT program requirements, including the periodicity schedule, and fundamentally undermines EPSDT's overarching thrust as "the nation's largest preventive health program for children." H.R.Rep.No. 101-247, 101st Cong., 1st Sess., P. 398, *reprinted in* 1989 U.S. Code Cong. & Ad. News 1906, p. 2124. (attached as Appendix 3 to Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment, June 19, 2003.)

1

II. **LAW AND ARGUMENT**

A. **The Legal Standard**

Local Rule 7 (c) permits the filing of a motion for reconsideration in order to bring to the Court's attention, "matters of controlling decisions which counsel believes the Court overlooked in the initial decision or order. The Second Circuit has stated that reconsideration is appropriate only under certain conditions: an intervening change in controlling law, new evidence, or the need to correct a clear error of law or to prevent manifest injustice." Lorenzetti v. Jones, 120 F. Supp. 2d 181, 184 (D. Conn. 2000) (quoting United States v. Sanchez, 35 F. 3d 673, 677 (2d Cir. 1994)). Such a motion may not be used merely "to plug gaps in an original argument or to argue in the alternative once a decision has been made." Channer v. Brooks, No. 399CV2564(CFD), 2001 WL 1094964 at *1 (D. Conn. Sept. 10, 2001). Thus, "the function of a motion for reconsideration is to present the court with an opportunity to correct 'manifest errors of law or fact or to consider newly discovered evidence'." Lo Sacco v. City of Middletown, 822 F. Supp. 870, 876-877 (D. Conn. 1993) (quoting Rothwell Cotton Co. v. Rosenthal & Co., 827 F. 2d 246, 251 (7th Cir. 1987), aff'd, 33 F. 3d 50 (2d Cir. 1994)).

B. **EPSDT**

The Court committed clear errors of law in its analysis of the plaintiffs' EPSDT claim, misconstruing the evidence and legal standard applicable to denials of EPSDT services. While the Court acknowledged that plaintiffs pleaded violations of 42 U.S.C. §§ 1396a(a)(43) and 1396d(r)[1], the Court misinterpreted the requirements of both those statutes and the implementing regulations. The Court's denial of the plaintiffs' motion for partial summary judgment on their EPSDT claim stated:

Carr has also provided undisputed evidence that some children eligible for EPSDT dental

---

[1] Unless otherwise specified, all statutory references are to section of 42 U.S.C.

2

services, who have requested such services, have had to wait substantial periods of time and travel outside their local area to find a dental service provider to supply them with preventive and treatment services. These cases, although compelling, do not tend to show that EPSDT dental services are not provided, but rather that they are not provided within a reasonable time or at a convenient location.

January 31, 2006 Decision pp. 7-8

In its discussion the Court looked only at § 1396a(a)(43)'s requirement that a state's Medicaid plan provide or arrange for the provision of screening services when they are requested. The Court failed to consider what the statute specifically requires for the delivery of EPSDT dental services, which are defined in § 1396d(r)(3), and which are wholly separate from the "screening services" defined in § 1396d(r)(1). As this Court noted, pre Judge Thompson, about this very provision, in its Ruling on the plaintiffs' motion for class certification:

> Under the EPSDT program, the defendant must provide dental services "at intervals which meet reasonable standards of ... dental practice, as determined by the State after consultation with recognized dental ... organizations involved in child health care," as well as "at other such intervals, indicated as medically necessary, to determine the existence of certain ... illnesses or conditions." 42 U.S.C. §§ 1396d(r)(1) and (3); see 42 U.S.C. § 1396a(a)(43)(B); HCFA State Medicaid Manual § 5110.

Carr v. Wilson-Coker, 203 F.R.D. 66, 69 (D. Conn. 2001).

The statute does not permit a state to provide EPSDT dental services whenever or wherever it chooses, or as is the overwhelming case here, only after recipients have searched for many months and have finally obtained a dental care appointment *somewhere*. It was a clear error of law not to consider how "dental services" are defined under § 1396d(r)(3), *i.e.* a requirement that dental services be provided to eligible children pursuant to a periodicity schedule determined pursuant to a specific professionally-based schedule of frequency. Connecticut's current EPSDT periodicity schedule, developed and implemented by DSS in 2001, requires a dental screen and an initial referral to a dentist commencing at age two, consistent with American Academy of Pediatrics ("AAP") Guidelines, as required by § 1396d(r). These

3

guidelines recommend a dental exam every six months, which is reflected in the defendant's Purchase of Services contracts with the managed care organizations. (Plaintiffs' Local Rule 56(a)1 Statement dated June 19, 2003, #s 30-32.)

Very recent case law on substantive EPSDT claims have found states' periodicity schedules to be a legal requirement of states' Medicaid EPSDT programs, and failures to provide service in conformity with them to be a violation of that law. In Clark v. Richman, 339 F. Supp.2d 631, 647 (M.D. Penn. 2004) the court, responding to the state's assertion that time standards for provision of treatment only applied to "initial" treatment, stated:

> ...[T]he six month outer limit for initiation of treatment does not supplant the need for additional timeliness standards. Regardless of what treatment is first initiated after a request is made, the Commonwealth is obliged, e.g., to adopt a schedule for screening service that meets reasonable standards of medical and dental practice, and cannot rely on a generalized schedule that does not take into account prevailing standards from the dental profession. See 42 C.F.R. §441.56(e).

Similarly, in Memisovski v. Maram, 2004 WL 1878332, No. 92 C 1982 (N.D. Ill. Aug. 23, 2004) the court held:

> While the American Academy of Pediatrics may have recommended a certain schedule for well-child screenings and immunizations, federal law requires states to adopt a periodicity schedule that meets reasonable standards of medical and dental practice. See 42 U.S.C. § 1396d(r)(1)-(4). In conformance with federal law, the state of Illinois adopted the recommendations of the American Academy of Pediatrics for the number and timing of well-child examinations. This periodicity schedule, therefore, is a required component of Illinois' EPSDT program.

Id. at *51.

Finally, in Health Care for All v. Romney, No. Civ.A.00-10833RWZ, 2005 WL 1660677, at *15, (D. Mass. July 14, 2005), the court merged the EPSDT periodicity requirements with the requirements concerning access to care, and held:

> To the extent, however, that defendant's conduct impeded enrollees' ability to obtain an initial appointment and thus even fall within the scope of the protocol [periodicity schedule], the factual underpinnings of plaintiffs' argument strongly resemble those presented in Count II

4

regarding the "reasonable promptness" provision. A child who cannot find a participating provider certainly cannot obtain dental care at the prescribed intervals. Accordingly, plaintiffs have shown that defendants failed to implement their EPSDT periodicity schedule, because enrollees were unable to locate participating providers and thus avail themselves of the periodic treatment required by the schedule.

The Court here determined that the defendant's failure to ensure services "within a reasonable time" would not allow it to find judgment for the plaintiffs as a matter of law. This failure to consider the periodicity schedule and the regulation implementing § 1396d(r)(3), 42 C.F.R. § 441.56(e), in its analysis of plaintiffs' EPSDT claim was a clear error of law, and plaintiffs respectfully request that the Court reconsider its denial of summary judgment for the plaintiffs on Count Eight.

The Court further failed to consider reams of undisputed material evidence that vast numbers of class members, whose experiences are representative of the class as a whole, do not receive EPSDT dental services after they request them, or only receive them after undue delay, and do not receive them pursuant to the legally mandated periodicity schedule. In addition to the undisputed evidence of the large disparity between children's dental care utilization rates and the 80% EPSDT participation goal, referred to by the Court in its January 31, 2006 Decision on pp. 6-7, plaintiffs also presented the undisputed facts that:

    1. Dental providers participating in the defendant's program are not able to provide care to all of the HUSKY A recipients seeking their care and some have had to shut down their practices periodically to HUSKY A clients. (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 93.)

    2. HUSKY A adult recipients and parents and legal guardians of HUSKY A child recipients from wide areas of the state have attested to their difficulties in locating a dental service provider for required preventive services in a timely manner. (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 176)

    3. HUSKY A adult and parents and legal guardians of HUSKY A child recipients from wide areas of the state have attested to their difficulties in locating a dental service provider for required treatment and specialist services in a timely manner. (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 177).

4. Public health officials, social service providers, safety net dental providers, and private dental service providers in wide areas of the state report a lack of, or scarcity of, participating HUSKY A dental providers in their local communities. (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 178)

5. Public health officials, social service providers, safety net dental providers and private dental service providers, in wide areas of the state report: a) an inability to locate dentists for dental treatment of HUSKY A recipients in a timely manner and the resulting delays in care/wait lists, and b) the inability of dental providers to treat all HUSKY A persons requesting care in a timely manner and the resulting delays in care/wait lists. (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 179).

6. As reported in September 2000 to DSS by Qualidigm, the External Quality Review Organization for the HUSKY A program, "children are not receiving adequate dental services as recommended by the EPSDT program. Dental visits are lacking general dental health assessment, including basic screens for tooth decay and advice regarding basic dental care by the primary care provider. Also, it is evident that children who may receive these initial assessments do not receive appropriate follow-up care with a dentist or dental hygienist." (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 213)

7. In statements made in and after 1997, David Parrella, the defendant's Director of Medical Care Administration and State Medicaid Director, has admitted that Connecticut's Medicaid recipients, both those in HUSKY A and in the traditional fee-for-service program suffer "serious problems with access to dental services," "poor access to dental care," "problems with dental access," unimproved or "probably" even "worse" access to care than under fee-for-service, and "under-utilization of dental services," and that "the same issues with access remain today [2002] as existed eight years ago." (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 47)

8. Mr. Parrella admitted that Connecticut's HCFA 416s indicate that less than 30% of Medicaid child recipients get regular preventive dental services and that "there's a large portion of children in the Medicaid program that have no dental service during the course of the year." (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 184)

9. According to Mr. Parrella, as of March 2003, the Connecticut Medicaid program was "down to about a hundred" dental practices that "do a significant amount of Medicaid." (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 59)

10. There are only a handful of providers east of the river, particularly in the northeastern part of the state, and in that area, the number of providers who "will do Medicaid business" is declining. (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 60)

11. DSS has never maintained a system for monitoring or assessing, on an ongoing basis, the accuracy of the dental provider lists provided by the MCOs to HUSKY A members, and whether the listed dental providers are accepting new HUSKY A patients. (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 92)

12. Mr. Parrella admitted that just about every month for "the last eight years" he has engaged in "casework" to obtain dental care for recipients, because "dental is a very big call center... from clients, from advocacy groups, from state representatives, political figures. ...[T]here's a great cry out there and need that people feel for access to dental services." Others on his DSS staff have also received those calls, "probably" with even greater frequency. (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 175)

13. Mr. Parrella admits that the current Medicaid dental fee schedule contributes to an insufficient number of dentists to meet the needs of children in the Medicaid program. (Plaintiffs' Local Rule 56(A)1 Statement dated June 19, 2003, ¶ 142)

The Center for Medicare and Medicaid Services, the entity charged with monitoring states' compliance with EPSDT requirements, concluded that in order to effectuate the service provision requirements of EPSDT, services must be actually available, and consequently, providers of those services must be available to provide the services. See 42 C.F.R. § 441.61. The Court therefore erred in not considering the undisputed facts of numerous classmembers' inability to obtain EPSDT services, and experts', providers' and others' evidence that classmembers are routinely turned away from services and/or placed on waiting lists.

On this count the plaintiffs' evidence is on all fours with the evidence presented concerning Massachusetts' EPSDT program's failure to provide mental health services to children with severe emotional disturbances. In <u>Rosie D. v. Romney</u>, No. CIV.A.01-30199-MAP, 2006 WL 181393, at *10, (D. Mass. Jan. 26, 2006) the court concluded:

> short of bringing to court a parent or guardian of every one of thousands of class members, and offering testimony by an expert clinician for reach child, it is hard to imagine how a more meticulously constructed case could have been offered on behalf of the plaintiff class. Moreover, Defendants' failure or inability to offer their own opposing concrete evidence showing actual delivery of services to the class members speaks volumes. Defendants' witnesses did provide fairly detailed evidence of the general design of the system intended to provide children in the Commonwealth with EPSDT services, along with descriptions of the way the system was <u>supposed</u> to work. Defendants, however, offered little objective data on the actual amount or quality of service delivered to class members or its clinical impact. The available data tended to show that EPSDT services—outside a few, limited geographical areas—were simply not being provided effectively to children with serious emotional disturbances in the Commonwealth.

7

The Court's construction of the EPSDT services provisions would eviscerate the EPSDT dental program, which "was enacted in a clear attempt to provide preventive dental services to the children of Medicaid recipients.... A program of preventive dentistry was deemed necessary to protect the children's teeth and to avoid the development of chronic or irreversible dental problems, problems far more costly to alleviate than to detect and prevent." Mitchell v. Johnston, 701 F. 2d 337, 347 (5th Cir. 1983).

III. **CONCLUSION**

Because the Court's ruling on the plaintiffs' motion for partial summary judgment as to the EPSDT claims contains clear errors of law, as set out above, the plaintiffs respectfully request the Court reconsider its January 31, 2006 ruling on Count Eight of the plaintiffs' Complaint.

        Respectfully submitted,

        PLAINTIFFS,
        MARY CARR, ET AL.

By: _____Jamey Bell_____
        JAMEY BELL
        Fed. Bar No. CT15520
        Jbell@ghla.org
        VICTORIA VELTRI
        Fed. Bar No. CT19754
        Vveltri@ghla.org
        GREG BASS
        Fed. Bar No. CT18114
        Gbass@ghla.org
        GREATER HARTFORD LEGAL AID, INC.
        999 Asylum Ave., 3rd Floor
        Hartford, CT 06105-2465
        (860) 541-5000
        Fax (860) 541-5050

        Attorneys for the Plaintiffs

## CERTIFICATE OF SERVICE

This hereby certifies that the foregoing Memorandum In Support of Plaintiffs' Motion for Reconsideration of the Denial of their Motion for Summary Judgment was mailed this 14th day of February, 2006 to counsel of record for Defendant, as follows:

**Tanya Feliciano**
**Hugh Barber**
**Richard Lynch**
Assistant Attorneys General
55 Elm Street, 4th Floor
P.O. Box 120
Hartford, CT 06141-0120

_____
Jamey Bell