UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARY CARR, ET AL. | : | CIVIL ACTION NO.: |
| *Plaintiffs* | : | 3:00 CV1050 (AWT) |
| | : | |
| v. | : | |
| | : | |
| PATRICIA WILSON-COKER, | : | |
| COMMISSIONER, DEPARTMENT OF | : | |
| SOCIAL SERVICES | : | |
| *Defendant* | : | FEBRUARY 22, 2006 |

**Defendant's Memorandum in Opposition to Plaintiffs' Motion to Reconsider This Court's January 19, 2006 Ruling Partially Granting Defendant's Motion for Summary Judgment**

Plaintiffs request the Court to reconsider its January 19, 2006 ruling that granted summary judgment in favor of the defendant on plaintiffs' "reasonable promptness" claim, based on 42 U.S.C. § 1396a (a) (8). This Court ruled that this subsection of the Act is limited to the prompt provision of <u>financial assistance</u> in the form of Medicaid payment for covered services that a participating provider undertakes to provide. Plaintiffs claim that the Court's ruling is "clearly erroneous" in that § 1396a(a)(8) purportedly "clearly requires" the state agency to provide actual medical service promptly, upon request, or to ensure that a willing provider is available to provide services promptly. Plaintiffs request for reconsideration does not present any new argument that was not carefully considered by this Court in its summary judgment ruling. The request for reconsideration should therefore be denied.

Plaintiff's claim of "clear error" is primarily based upon the language that is employed in <u>other sections</u> of the Act, <u>some of which</u> are <u>occasionally</u> worded in terms of the state agency

"providing services," instead of providing "medical assistance."[1] The scope of 42 U.S.C. § 1396 a (a) (8), however, depends upon the language employed in that particular section. It provides for the provision of "medical assistance," with reasonable promptness. As correctly noted by the Court in its summary judgment ruling, the term "medical assistances" is expressly defined in 42 U.S.C. § 1396d (a) as meaning payment for a covered service that a participating provider undertakes to provide.[2]

Notwithstanding plaintiffs selective citations to other isolated provisions of the Act that are phrased items of "services," it is clear from looking at the Act as a whole that the Medicaid program is a statutory health insurance program where the role of the administering state agency is limited to the essentially insurance functions of defining client eligibility, determining client eligibility, defining covered services, enrolling participating providers, setting rates of reimbursement, and paying participating providers who undertake to provide covered services on behalf of recipients of assistance. See, 42 U.S.C. § 1396 (purpose of program is to furnish "medical assistance" on behalf of individuals whose income and resources are insufficient to meet the costs of necessary services); § 1396a (a)(5) (the single state agency is responsible to "administering the plan"); § 1396a (a)(9) (the agency must provide for the establishment of health standards "for private or public institutions in which recipients of medical assistance under the plan may receive services"); 42 U.S.C. § 1396a (a)(10) (the plan must provide for making "medical assistance" available for the care and services listed in §1396d (a) ); § 1396a (a)(13) (the plan must provide for a public process to determine the rates of reimbursement for

---

[1] Plaintiffs acknowledge, however, that the references to "medical assistance" in other sections of the Act can generally be reasonably read to mean financial assistance in the form of payment for covered services.

2

hospital and nursing facility care); §1396a (a)(17) (the plan must provide reasonable standards for "determining eligibility for and the extent of medical assistance under the plan"); § 1396a (a)(23) the plan must provide that eligible individuals may obtain assistance for any institution, agency, community pharmacy, or persons qualified to perform the services...who untakes to provide him such services"); §1396a (a)(27) (the plan must provide for agreements with each provider in which the provider agrees to document the services that are provided to each recipient); §1396a (a)(30) (the plan must provide a method for determining the payment that is made to providers, which rates must be consistent with five different (inconsistent) factors; § 1396a (a)(33) (the plan must provides that the state health agency shall be responsible for establishing standards of care concerning services furnished to recipients of medical assistance under the plan"); § 1396a (a)(37) (the plan must provide standards for processing claims submitted by participating providers).

Equally telling is the absence of any statutory provisions that certainly would be necessary if the administering state agency were responsible by § 1396a(a)(8) to provide "services" directly, as opposed to providing "medical assistance" in the form of payment for covered services that are provided on behalf of an recipient of assistance by a participating provider. If plaintiff's interpretation of § 1396a(a)(8) were correct, there necessarily would be statutory provisions requiring the state agency to empty legions of doctors, dentists, nurses, pharmacists, and physical therapists, and to operate hospitals, nursing homes, pharmacies, and

---

[2] That definition of "medical assistance" expressly applies for purposes of the entire subchapter, including § 1396a (a) (8). See, 42 U.S.C. § 1396d (a).

3

clinics in order to be able to ensure that "services" were provided with "reasonable promptness" to all eligible recipients. However, there are not such statutory provisions.[3]

Moreover, plaintiff's claim that the language in § 1396a(a)(8) regarding the provision of "medical assistance" with "reasonable promptness" requires the state agency to ensure that desired services are promptly provided for <u>all</u> recipients who desire them is inconsistent with the statutory provisions that most specifically address the ability of recipients to access covered services. As noted in the parties' prior briefing, 42 U.S.C. § 1396a (a)(30(A) requires the State agency to set its payment rates to participating providers in a manner that is consistent with five different factors, one of which is that the payment rates "are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such are and services are available to the general population in the geographic area."[4] <u>Id</u>. Plaintiffs claim an entitlement for all recipients to receive <u>services</u> in the form of dental <u>treatment</u> promptly. Plaintiffs claimed "entitlement" to receive covered dental services promptly clearly exceeds the much more modest goal of § 1396a(a)(30(A), which is that payment rates be sufficient to enlist enough providers so as to afford recipients with access to care which access is comparable to the access to care that is available to the general population. Specifically, with respect to access to "dental services," access to services for the general population is a significant public health issue <u>because less than half of the population</u> is covered by <u>any form of third party dental insurance</u>.

---

[3] Alternatively, plaintiffs claim that this Court should construe the term "medical assistance" to mean an obligation to indirectly provide actual medical services promptly through enrolled providers who are reimbursed sufficiently so as to afford an ample pool of willing providers. Plaintiffs essentially only offer a desired policy outcome to justify a strained interpretation of § 1396a(a)(8), which interpretation fails to explain why the explicit statutory definition of medical assistance should not be employed.

[4] Alternatively, 42 U.S.C. §§ 1396b(m) and 1396 u-2 specifically address the ability of clients to access services in the context of Medicaid managed care.

4

Even if the term "general population" is somehow construed to mean only the "insured upper-middle class population," "comparable access" is still clearly not an individual entitlement for all recipients of assistance to receive actual treatment services promptly, but depends on what the access to care is for the insured population. In accordance with accepted rules of statutory interpretation, the specific provision of § 1396a(a)(30)(A) (or 42 U.S.C. §§ 1396b(m) and 1396 u-2 in the Medicaid managed care context) is controlling, and may not be superceded by the general language in § 1396a(a)(8), which, by its terms, imposes no obligation on the state agency to ensure that actual treatment services are provided for all recipients promptly. Edmond v. U.S., 520 U.S. 651 (1997) (specific statutory provision prevails over a general statute); American Land Title Ass'n v. Clarke, 968 F.2d 150 (2nd Cir. 1992) (same).[5]

The seventh circuit in Bruggerman v. Blagojevich, 324 F. 3d 906 (7th Cir 2003) correctly noted that the term "medical assistance" for purposes of 42 U.S.C. § 1396a(a)(8) was limited, by its definition, to financial assistance in the form of payment for covered services. Bruggeman further noted that those courts which had construed § a(a)(8) to impose an obligation on the state agency to ensure that desired services are promptly provided had failed to appreciate that medical assistance is limited to "financial assistance."

Plaintiffs' motion for reconsideration at pp. 12-13 continues to cite such earlier authority that had failed to acknowledge the definition of "medical assistance," and thereby improperly imposed an obligation on the administering state agency that is not provided in the statute as a

---

[5] This Court correctly ruled that § 1396a(a)(30) is not privately enforceable in a § 1983 cause of action. It remains enforceable by the federal Secretary to the extent it may apply to Medicaid managed care. Alternatively, the Secretary may refuse to authorize the state's contracts with Medicaid Managed Care Organizations because they do not adequately ensure client access to care. The Secretary is subject to an affirmative statutory obligation to ensure that that managed care organizations that contract with a state agency have the capacity to provide enrolled clients with access to care. See, 42 U.S.C. §§ 1396b(m) and 1396u-2 (b)(5).

5

clearly stated condition of participation. <u>Pennhurst State School and Hospital v. Halderman</u>, 451 U.S. 1, 101 S.CT. 1531 (1980) (states may only be required to implement clearly-stated conditions of participation); <u>South Dakota v. Dole</u>, 483 U.S. 203, 107 S.Ct. 2793 (1987) (same).[6]

The clear weight of authority subsequent to <u>Bruggeman</u> is that § a(a)(8) does not create a right in program recipients to the prompt provision of treatment services. See <u>Westside Mothers</u>, 368 F. Supp 2d 740 (ED Mich. 2005); <u>Sanders v. Kansas Dep't of Social and Rehabilitation Services</u>, 317 F. Supp 2d 1233, 1250.51 (D. Kan. 2004); <u>Clark v. Richman</u>, 339 F. Supp. 2d 631, 643 (M.D. Pa. 2004). Each of the foregoing cases are similar to the present case in that plaintiffs asserted a variety of claims in support of a request for increased access to covered Medicaid services, including claims based upon the "reasonable promptness" provision of § 1396a(a)(8), the equal access rate setting provisions of § 1396a(a)(30), and the EPSDT provisions of §§ 1396a(a)(43). All of the foregoing courts followed <u>Bruggeman</u>, applied the definition of "medical assistance," and properly rejected the claim that § 1396a(a)(8) provides a right to the prompt provision of services. Indeed, the court in <u>Westside Mothers</u> carefully considered the primary argument advanced by plaintiffs in their motion for reconsideration, based upon the language and structure of other sections of the Act which reference the provision of "services", and ruled the reference to "services" in other sections cannot be read to modify the definition of "medical assistance" or it is utilized in § 1396a(a)(8). <u>Westside Mothers</u>, 368 F. Supp. 2d at 765 (finding the explicit definition of "medical assistance" controlling).

Plaintiffs attempt to limit the scope of <u>Buggeman</u>, <u>Westside Mothers</u>, <u>Clark</u> and <u>Sanders</u>, by arguing that the courts in <u>all</u> of these cases improperly understood plaintiffs to claim that that

---

[6] The "clear statement" rule of <u>Pennhurst</u> and <u>Dole</u> indicates that any "right" must be clearly expressed in the text of 1396a(a)(8) in order to be enforceable. The text of 1396a(a)(8) certainly does not clearly create a right to receive actual covered dental services promptly, upon request

6

they were seeking actual medical services to be provided directly by the state agency when, in fact, plaintiffs actually sought to hold the state agency responsible for ensuring that medical services would be promptly provided by enrolled providers. Specifically, plaintiffs claim that § 1396a(a)(8) imposes an enforceable obligation on the state agency to ensure that a sufficient number of providers are enrolled in the program (as a result of attractive rates of reimbursement), such that every recipient receives described dental services promptly. Notwithstanding that these cases occasionally utilize language referencing the direct provision of services by the state agency itself (which is not required, and is not done by any state Medicaid agency), the cases are not so limited. The Court specifically indicates in Westside Mothers, for example, that, "To the extent that Plaintiffs' Court I alleges a failure by Defendants in their official capacity to ensure the actual provision of, or arrangement for, medical services, it fails to state a claim." 368 F.Supp.2d at 763. Accordingly, these cases stand for the proposition that § 1396a(a)(8) does not impose an obligation on the administering state agency to ensure that dental services are promptly provided for every recipient, either directly by the state agency or indirectly through enrolled providers.

Plaintiffs also cite two recent district court decisions that acknowledge the distinction made by Bruggeman, but nevertheless construed § 1396a(a)(8) expansively to provide an obligation on the state agency to ensure a broad network of participating providers and the prompt provision of actual medical services. See, Plaintiffs' Brief at p. 12, citing to Health Care for All v. Romney, No. Civ. A.00-10833 RWZ, 2005 WL 1660677 (D. Mass. 2005) and Oklahoma Academy of Pediatrics v. Fogerty, 366 F. Supp. 2d 1050, 1109 (N.D. Okl. 2005).[7]

---

[7] Plaintiffs also cite to a second, recent decision from the District of Massachusetts, Rosie D. v. Romney, No. CIV. A.01-30199-MAP, 2006 WL 181393 (D. Mass. January 26, 2006). Rosie D., however, does not even acknowledge the limited definition of "medical assistance" provided by

7

These decisions purportedly adopt a "middle ground" interpretation of the meaning of the term "medical assistance" in § 1396a(a)(8) as a result of "policy considerations" which the counts felt better achieved the objective of the Act. See, <u>HealthCare for All</u>, at *32, 33 finding that an interpretation of §1396a (a)(8) which requires rates of reimbursement to be set sufficiently high to enlist enough providers to ensure prompt access to actual medical services best implements the policy objectives of the Act. However, aside from the Courts' views of desirable public policy, these decisions offer no justification for departing from the definition of "medical assistance" that is explicitly provided by the terms of the Act. Furthermore, these decisions do not even attempt to explain why it is necessary for "policy reasons" to impose access to care requirements into § 1396a(a)(8) when access to care requirements are specifically addressed in other sections of the Act, including § 1396a(a)(30(A) (or §§ 1396b(m) and 1396u-2 for Medicaid managed care). Respectfully, the fact that §§ 1396a(a)(30), 1396b(m) and 1396u-2 are not privately enforceable in a § 1983 cause of action does not justify the judicial creation of "rights" in 1396a(a)(8) which exceed the more modest "right" that is provided by that section to receive "medical assistance" in the form of <u>payment</u> for covered services.

---

42 U.S.C. § 1396d(a) or the interpretation of "medical assistance" provided by the Seventh Circuit in <u>Bruggeman</u> as meaning <u>financial assistance</u> in the form of payment for covered services.

## **CONCLUSION**

Plaintiffs do not present any new argument that was not fully and correctly considered by the Court in its January 19, 2006 summary judgment ruling.  Plaintiffs motion for reconsideration should be denied.

                                                      RICHARD BLUMENTHAL
                                                      ATTORNEY GENERAL

                                                      Respectfully submitted,

                                                      DEFENDANT,
                                                      PATRICIA WILSON-COKER,
                                                      COMMISSIONER OF THE
                                                      DEPARTMENT OF SOCIAL SERVICES

BY:    /s/_____
           Hugh Barber
           Assistant Attorney General
           Federal Bar No. ct05731
           55 Elm Street
           P.O. Box 120
           Hartford, CT  06141-0120
           Tel: (860) 808-5210
           Fax: (860) 808-5385
           Email.:hugh.barber@po.state.ct.us

# CERTIFICATION

I hereby certify that a copy of the foregoing Defendant's Memorandum in Opposition to Plaintiffs' Motion to Reconsider This Court's January 19, 2006 Ruling Partially Granting Defendant's Motion for Summary Judgment was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 22nd day of February, 2006 first class postage prepaid to:

AMY LEETE VAN DYKE, ESQ.
Federal Bar Number ct23181
Updike, Kelly & Spellacy, P.C.
One State Street
P.O. Box 231277
Hartford, CT  06123-1277
Tel: (860) 548-2600
Fax: (860) 548-2680

JAMEY BELL, ESQ.
GREG BASS, ESQ.
VICTORIA VELTRI, ESQ.
MARIA MORELLI-WOLFE, ESQ.
Greater Hartford Legal Aid
90 Asylum Street 3rd Floor
Hartford, CT 06105-2465

DAHLIA O. F. GRACE, ESQ.
Connecticut Legal Services, Inc.
211 State Street
Bridgeport, CT 06604

ROBERT R. SIMPSON, ESQ.
Shipman & Goodwin
1 American Row
Hartford, CT 06103

/s/_____
Hugh Barber
Assistant Attorney General