**Joint Trial Memorandum Attachment H:**
**Defendant's Proposed Findings of Fact**

1.  DSS fulfills its responsibilities as the "single state agency" for purposes of administering the Medicaid program in Connecticut by requiring individuals in certain eligibility "coverage groups" to receive covered medial services through contracted "Managed Care Organizations" in accordance with the terms of a "1915(b) Waiver" which waives certain federal statutory provisions that would otherwise apply, including statutory provisions applicable to "comparability of services" and "freedom of choice."

2.  Medicaid eligible minor children and their "supervising adults" are covered by the Managed Care Waiver Program, and are generally required to receive medical services by enrolling in a health care plan sponsored by one of the Managed Care Organizations.

3.  The waiver document is a "preprint" that is prepared by the federal agency, Center for Medicare and Medicaid Services ("CMS") of the Department of Health and Human Services. The states are required to utilize the CMS Preprint in making their waiver submissions. In its CMS waiver preprint, DSS assures CMS, in Section B of the waiver document, that services are provided under the waiver that are adequate in amount, are provided within reasonable time frames, and are furnished within reasonable distances from the residences of enrollees in the program. DSS indicates in its waiver submission that it has established standards related to capacity of MCO provider networks per enrollee, which is stated in the federally-approved waiver as 486 members per provider, with hygienists counted at 50% of a provider, Waiver Section B. III; for appointment scheduling,

which is ten days to obtain an appointment with the appointment scheduled within six weeks for "wellcare," and for distance to be traveled which is stated to be not more than twenty miles. Waiver, Section B. I. The federally-approved waiver further indicates that DSS has the contractual authority to impose sanctions upon the MCO if they do not comply with their obligations with respect to the adequacy of their provider networks, including suspending enrollment of new members and imposing "strikes" which may lead to fiscal sanctions under the terms of the contact.

    4.  The MCOs relationship with DSS is based on a negotiated contract in which the MCOs promise to comply with the terms stated therein, which include an obligation to comply with the requirements of federal and state law. Four MCOs have participated in the Medicaid managed are program in recent years, and continue to participate today, as evidenced by the execution of contracts with DSS that remain outstanding. The four MCOs, listed in descending order based on the number of their enrollees, are Anthem BlueCare, HealthNet, Community Health Network, and Preferred One, a/k/a WellCare.

    5.  For purposes of this litigation, the substantive terms of the four managed care contracts are identical in that all four contracts have identical provisions with respect to the services that are required to be provided by the MCOs on behalf of their members and the standards that apply with respect to the capacity of their provider networks and to allow members to access to covered services.

    6.  The HUSKY MCOs' covenant in the managed care contracts to provide all of the covered services that are described in Appendix A of the contract for their enrolled members. The covered services described in Appendix A include dental care,

including diagnostic services, oral examinations, preventive services, including prophylaxis and fluoride treatment for children, and restorative services.  Appendix A, A.16.

7. In addition to dental care being covered as a separate service for all enrollees, covered services are also defined in the contracts as including Early and Periodic Screening, Diagnostic, and Treatment (EPSDT) Services, which are defined in Appendix A at A.25 as including those dental screening services recommended in the DSS periodicity schedule, and treatment services that are necessary for relief of pain and infection, restoration of teeth, and maintenance of dental health.

8. Covered services are further described as including EPSDT Case Management Services when the need for case management services is determined as a result of a periodic comprehensive health screening or inter periodic encounter.  EPSDT Case Management Services is defined as including the monitoring and coordinating the delivery of health services as necessary.  Appendix A, A. 25.

9. Covered services are further described for all enrollees as including medical transportation services when transportation is necessary to obtain covered medical services and when transportation is not otherwise available from other resources.  Appendix A, A.29.

10. MCOs are further required to have systems in place that provide for the coordination and continuation of care, including the provision of EPSDT case management services for members under age 21 when the member has a physical or mental condition that makes the coordination of services medically necessary.

11. The MCO contracts further require the MCOs to maintain provider networks statewide that are capable of delivering all covered health services, including dental services, and EPSDT dental, case management and transportation services. MCOs are required to report on the providers' networks monthly. Contract, 3.07 – 3.09.

12. The contracts limit the ability of MCOs to enroll Medicaid-eligible families in their health care plans based upon the adequacy of their provider networks to provide Medicaid-covered services. For dental providers, the required enrollment ratio is no more than 486 members per participating provider, with dental hygienists counted at 50% of a dental provider. The adequacy of the provider network is determined on a county by county basis. Contract 3.10a.4.

13. Section 3.18 of the managed care contracts provides a more detailed statement of the MCOs' obligations with respect to the provision of EPSDT services, including providing dental assessments in accordance with the periodicity schedule in Appendix C, which provides for an initial referral to a dentist before age three and routine well-child exams, cleanings and fluoride twice annually thereafter. Section 3.18 further requires the MCOs to provide necessary dental treatment services, to provide scheduling assistance, to provide or arrange medical transportation, to inform members of the importance of EPSDT services and how they can be obtained, and to inform members that assistance is available for scheduling appointments and for transportation.

14. Section 3.21 of the MCO contracts applies to dental care for all enrollees (including adult members) and requires the MCOs to maintain provider networks in each county that are sufficient to assure access to oral health care.

15. Section 3.29 of the MCO contracts require the MCOs to provide information and educational materials to their members, including Member Handbooks and Provider Directories. The Member Handbooks are required to describe the services that are covered and how the member can access services. The Member Handbooks are further required to describe EPSDT services for children, to inform how assistance with appointment scheduling may be obtained, to describe how medical transportation may be obtained, and to describe the available case management services that are provided to members when medically necessary. The content of the Member Handbook is required to be approved by DSS. Contract, 3.29. The MCOs' Provider Directories are required to describe the name, address of phone number of contracted providers in the member's service area. Contract, 3.29.

16. The MCOs are required to periodically report "encounter data" to DSS, including, but not limited to, the extent to which child members receive EPSDT screening and treatment services, including dental. Contract, 3.38.

17. The MCO contracts further state additional access requirements for dentists, including that it have enrolled providers available such that the member will not be required to travel more than 20 miles to see a dentist, Contract 3.07.

18. In return for the MCOs' covenants to provide covered services for its enrolled members as described in the contracts, DSS covenants to pay a negotiated per member, per-month capitated fee which is all-inclusive for all services that the MCO is required to provide for the capitated payment. The per member per month capitated fee does

not identify any portion of the capitated fee that is attributable to any particular type of covered service, including dental.

19. It is up to the MCOs to determine how they will recruit their provider networks, how they will reimburse their providers, what rates of reimbursement they will pay, and how much will be spent for providing each type of care that they are required to provide, as long as the MCOs comply with their contractual obligations to provide required services to their enrolled members.

20. All four MCOs currently subcontract with dental subcontractors to provide covered dental services for their enrolled members. Anthem BlueCare currently subcontracts with HealthPlex (effective July 2007); Preferred One/Wellcare and Community Health Network subcontract with BeneCare; and HealthNet subcontracts with Doral.

21. HealthPlex, BeneCare (2) and Doral, as dental subcontractors for the four MCOs, enroll providers in their dental provider networks. The dental subcontractors generally reimburse their enrolled providers, dentists and hygienists, on a fee for service basis. The amount that they pay each provider is kept confidential for trade secret/competitive reasons, but is generally believed to be significantly higher than the fee that would be paid for specific dental procedures in the Medicaid fee for service system. Upon information and belief, amounts paid by the MCOs' dental subcontractors do vary from provider to provider, especially when it is necessary for the MCO, through its dental subcontractor, to meet contractual requirements related to member access to services, including the required 1 to 486 dental provider to member enrollment cap ratio, by enrolling additional dentists.

22. In providing covered services, the MCOs are contractually required to provide or arrange for covered services in a manner that complies with all pertinent provisions of federal and state law.

23. DSS, Medical Services Policy, Section 184, sets the requirements that generally apply to the coverage of dental services, and Medical Service Policy, Section 171.3, sets the policies that generally apply to the coverage of dental services by clinics.

24. Any limitations on the amount, scope or duration of covered dental services stated in sections 184 and 171.3 may not apply to dental services for children since federal law, EPSDT statutory requirements (and the terms of DSS' contracts with the MCOs), require children to receive for all medically necessary treatment services that are identified in a "dental screen," without regard to any limitations on the scope of covered services that generally apply to adults under the program.

25. In an effort to expand the availability of dental services for low-income persons, DSS supported legislation which allows dental hygienists to practice relatively independently in public health settings, without the direct, on-site supervision of a licensed dentist being required. DSS then promulgated regulations which allow dental hygienists to be independently enrolled as participating providers, provided that they practice in schools, clinics, community health centers, and hospital outpatient departments. Medicaid reimbursement is available for public health dental hygienist services for preventive services only, such as dental exams, fluoride treatment for clients under age 21, and the application of sealants for children aged five through sixteen. Medicaid reimbursement is not available for

a public health dental hygienist to perform restorative services; those must be provided by a licensed dentist.

26. The amendment to state statute, and the revision of DSS' public health dental hygienist regulations, substantially expanded the pool of participating dental providers who can provide covered dental services for Medicaid recipients.

27. In accordance with the requirements of federal law, Connecticut is required to report periodically to CMS on the extent to which covered children receive EPSDT services, including dental screening and treatment services, in the reporting period. In filling out the reports, the states are required to utilize a prescribed federal reporting form, CMS FORM -416, and to follow federal directions on completion of the form. The information reported includes the total number of child recipients, the number of child recipients by age, the number of months of eligibility attributable to all recipients, the average period eligibility, the expected number of screens given the state's periodicity schedule, the unduplicated number of children who received at least one dental service of any type, the unduplicated number of children who received at least one preventive dental service, and the unduplicated number of children who received at least one dental treatment service.

28. Connecticut's CMS Form-416 for Federal Fiscal Year 2006 indicates that 281,910 children aged 0-21 were eligible for Medicaid at some point in Federal Fiscal Year 2006, of which 268,833 or approximately 95% were eligible for HUSKY managed care. The report further indicates that children were eligible for Medicaid, on average, for 83% of the year, or for about 9.9 months in the year.

29. Connecticut's CMS-416 EPSDT participation report for Federal Fiscal Year 2006 reports that an unduplicated count of 93,578 children aged 0-21 who received at least one covered dental service in the year, 77,818 children received at least one preventive dental service, and 39,739 children received at least one covered dental treatment service.

30. Excluding children under age 3, and excluding the number of children under age 3 who received dental services, results in the calculation that 75,863 children aged 3-21, out of 232,048 children aged 3-21, or 33% of children aged 3-21 who were enrolled in Medicaid at any time in the year received a preventive dental service. Applying the same methodology, 90,477 out of 232,048 children, or approximately 39%, received at least one dental service during the year.

31. It is appropriate to exclude children under age 3 from the calculated participation ratio because the DSS EPSDT periodically schedule recommends a referral to a dentist by age 3. The foregoing participation calculations do not adjust for the fact that, on average, Medicaid-covered children are eligible for less than ten months in a year.

32. Connecticut's reported EPSDT child dental utilization data for 2005 is somewhat lower than the other New England states, but it is significantly higher than several similar states, such as New Jersey and Maryland, and is about average nationally in comparison to all fifty states.

33. Only about one-half of the population in Connecticut is covered by any form of dental health insurance, including Medicaid.

34. The Connecticut State Dental Association reports that 50-55% of individuals who are covered by commercial dental insurance receive dental services in a year.

35. Individuals who are covered by commercial dental insurance tend to be upper-middle class, white collar workers and their families. In comparison to the Medicaid population, individuals who are covered by commercial dental insurance tend to be older, Caucasian (much lower percentage of minorities, including Hispanics and African-Americans), of higher economic status in their birth families, and much higher income levels in their current employment. They tend to be continually covered by the same dental insurer for many years.

36. The Medicaid population contains a much higher percentage of minorities, persons of lower-income birth families, persons of lower current income, and families headed by one parents and by minor children who are themselves parents. They are significantly younger, on average, than persons covered by commercial insurance, with a significant number of teenage parents. They also tend to seek medical assistance benefits during periods of crisis attributable to events such as divorce, separation, loss of employment, and sickness. A significant percentage of the adult caretaker relatives have mental illness, learning disabilities, and/or abuse substances. The average child recipient is eligible for Medicaid for less than ten months in a year.

37. The literature indicates that minorities and person from lower-income birth families tend to utilize dental services significantly less frequently than other individuals, even where all individuals are covered by the same health care plan.

38. Accessing dental services for themselves and their children appears to be a lower priority for HUSKY families in comparison to higher income families who are covered by commercial dental insurance.

39. For the foregoing reasons, the actual utilization of Medicaid-covered dental services in comparison to the utilization of individuals covered by commercial plans is not a reliable measure of an individual's ability to access dental services, upon request.

40. All four MCOs currently meet their contractual obligation to provide medical transportation services by subcontracting with transportation brokers to provide covered medical transportation services. Anthem, Preferred One/WellCare, and Health Net contract with Logisticare Solutions, LLC. to provide medical transportation services. Community Health Network subcontracts with Coordinated Transportation Solutions, Inc. ("CTS") to provide transportation services.

41. The Member Handbooks of all four MCOs describe medical transportation as an available covered service. The Handbooks indicate that the member can arrange medical transportation to a covered medical service, including dental visits, by calling the transportation broker themselves at the provided phone number. Alternatively, the MCO Member Handbooks indicate that assistance in arranging medical transportation can be obtained by calling the Member Service Department of the MCO at a provided phone number and requesting the MCO's assistance in arranging transportation.

42. The MCOs comply with their contractual obligations by providing medical transportation services through their sub-contracted transportation brokers.

43. Encounter data available to DSS, based upon MCOs reports that a child both received covered dental services and was provided medical transportation on the same day, indicates that the MCOs provided at least 3500 trips in 2006 for purposes of transporting HUSKY children to dental care. The foregoing number is believed to be significantly lower than actual experiences due to limitations in the reported encounter data.

44. DSS has received few complaints from HUSKY families regarding the availability of medical transportation services. To the extent complaints are received, they are shared with the MCOs and their transportation brokers so corrective action can be taken.

45. The evidence in the record suggests that the MCOs comply with their contractual obligations by providing medical transportation, as necessary, for purposes of HUSKY families, including children, receiving covered dental services.

46. The MCOs' Member Handbooks describe EPSDT case management services as services that are provided by the MCOs when medically necessary for purposes of monitoring and coordinating care. Case Management Services can be distinguished from scheduling assistance and transportation assistance that is required to be routinely provided to all members, upon request. Case management services are provided by the MCOs upon a provider's determination that case management services are medically necessary because the complexity of the medical condition or the circumstances of the member require monitoring and coordination of care.

47. The MCOs fulfill their obligation to provide EPSDT case management services in a variety of ways, including: mailing information on disease management to individuals who have been diagnosed with certain conditions, such as diabetes; providing

case management services internally with retained clinical staff; and by contracting out the responsibility for the case management of individuals with certain diseases, such as high risk pregnancy or asthma, to organizations that specializes in the management of such diseases.

48. The MCOs report quarterly to DSS on the extent to which they provide case management services for their members. During the fourth quarter of 2006, the MCOs reported that they provided case management services for a total (all four MCOs combined) of 850 clients. The most common categories for type of diagnosis are high risk pregnancy (334 clients) and asthma (119 clients).

49. Dental disease is not currently reported as a separate condition linked to the provision of case management services. Several years ago, when dental disease was separately recorded as a clinical condition related to the provision of case management services, no or very few (under five) clients were reported as receiving case management services related to dental disease. To the extent that any HUSKY children may currently be receiving EPSDT case management related to dental disease, they would be included in the total of 214 clients who are currently reported by the MCOs as receiving EPSDT case management within the board category of "other pediatric serious or chronic condition."

50. There is no evidence in the record that a dentist has prescribed EPSDT case management services as medically necessary to correct or manage dental disease uncovered in an EPSDT dental screen.

51. Assuming arguendo that a dentist has prescribed EPSDT case management services as medically necessary for a HUSKY child as a result of dental disease, there is no evidence in the record that the MCO failed to evaluate the medical necessity of