## **Attachment G. Plaintiffs' Proposed Conclusions of Fact**

1. Poor children suffer twice as much dental caries (tooth decay) as their more affluent peers. Edelstein Testimony; Stipulated Fact #1 in July 23, 2007 Joint Trial Memorandum.

2. As reported by public health officials, dental health experts and Connecticut dental practitioners, dental disease appears much more frequently in the low-income population of Connecticut than in higher-income populations of the State. Edelstein testimony; Crall Testimony, SJ Exh. A,[1] *Elements of Effective Action to Improve Oral Health & Access to Dental Care for Connecticut's Children and Families,* hereinafter "Elements" at 2, 30. Stipulated Fact #2 in July 23, 2007 Joint Trial Memorandum.

3. Low-income children have five times more untreated dental caries (cavities) than children in higher-income families and low-income adults are more likely to have lost six or more teeth to decay and gum disease than higher-income adults. Edelstein Testimony; SJ Exh. D. (United States General Accounting Office, "*ORAL HEALTH Dental Disease Is a Chronic Problem Among Low-Income Populations*" at 4, GAO/HEHS-00-72) (April 2000).

4. If left untreated, dental caries progresses to the "pulp" of the tooth, causing infection and inflammation of the nerve and blood vessels that extend into teeth from surrounding body

---

[1] "**Aff. # (name of affiant) at ¶** " refers to the affidavits filed in support of the Plaintiffs Motion for Partial Summary Judgment. "**Aff. # (name of affiant) at Exh. #**" refers to Affidavits citing exhibits attached to the affidavits. Affidavit exhibit names/titles of publications and reports are cited in full the first time that they are referenced in this Local 56(a) statement. Subsequent citations to exhibits refer only to the affidavit exhibit number. A numbered list of affidavits precedes the attached affidavits.

tissues. Delays in treatment at this stage generally lead to spread of infection into adjacent structures in the jaws, and can extend further to other structures in the face, head and neck, with associated pain and swelling. Extreme cases can result in loss of sight due to damage to optic nerves, threats to the airway and breathing as a result of neck swellings, and dissemination of infectious microorganisms into the blood stream. Crall Testimony.

5. Children and adults affected by dental disease frequently lose sleep, experience problems eating, lack concentration, miss school or work altogether, or suffer growth impairments. Severe dental infections can result in hospitalization or death. Poor oral health instigates and exacerbates systemic health problems, including premature delivery and cardiac disease. Edelstein Testimony; Crall Testimony; SJ Exh. A ("Elements" at 3-4);

A. Historic and Present Operation of the HUSKY A Program

6. In 1965, Congress enacted Title XIX of the Social Security Act, establishing Medicaid, a program cooperatively funded by the federal and state governments which provides for medical assistance to eligible individuals. Complaint ¶20, Answer ¶20.

7. The state of Connecticut has elected to participate in, and receive federal funding for, a Medicaid program. Connecticut receives 50% of its eligible Medicaid funding from the federal government as its "federal medical assistance percentage" or "FMAP". Ryan testimony; Stipulated Fact #4 in July 23, 2007 Joint Trial Memorandum.

8. Defendant Commissioner of the Department of Social Services ("DSS" or "the Department") administers the Medicaid program in and on behalf of the State of Connecticut. Complaint ¶32, Answer ¶32; Stipulated Fact #5 in July 23, 2007 Joint Trial Memorandum.

9. Omitted

10. Pursuant to a waiver initially obtained by DSS in June 1995 from the Health Care

Financing Administration ("HCFA")[2] of the US Department of Health and Human Services (HHS), which was renewed and extended in 1997, 2000, 2002, and 2006, and is currently effective, the Defendant Commissioner was and currently is allowed to provide medical assistance to eligible individuals through contracts with managed care organizations ("MCOs"). Stipulated Fact #6 in July 23, 2007 Joint Trial Memorandum.

11. Omitted.

12. One of the stated objectives of the 1995 Medicaid managed care waiver, as stated by DSS in its initial waiver request, was to assure adequate access to quality care for Medicaid recipients. Parella testimony; Stipulated Fact #7 in July 23, 2007 Joint Trial Memorandum.

13. At the commencement of Connecticut's Medicaid managed care program in 1995, eleven (11) MCOs participated in the program. Parella testimony; SJ 1 at RFA #8.

14. There are currently four MCOs participating in the HUSKY A program through Purchase of Services contracts with DSS: Anthem Blue Cross and Blue Shield/Blue Care Family Plan ("BCFP"), Community Health Network of Connecticut ("CHNCT"), Health Net of Connecticut (HNCT), formerly known as Health Net of the Northeast, Inc. (HNNE), Physicians Health Services, Inc." or "PHS") and First Choice Connecticut/Preferred One ("First Choice" or "Preferred One"). Parella Testimony; Balaski testimony; Stipulated Fact #8 in July 23, 2007 Joint Trial Memorandum.

15. All four of the MCOs or their predecessors have participated in the HUSKY A program through Purchase of Services contracts with DSS since 1995. Parella Testimony; Balaski testimony, Stipulated Fact #9 in July 23, 2007 Joint Trial Memorandum.

16. Since the inception of the HUSKY A program, there have been three Purchase of

---

[2] Now named the Centers for Medicare and Medicaid Services ("CMS").

3

Services contracts between the MCOs and DSS, one commencing during each of the following years: 1995, 1999 and 2001. Contract amendments extended the 1995 contracts through 1999 and the 2001 contract through June 30, 2003. The contracts were extended until July 1, 2007 and are currently extended until October 1, 2007. Parella Testimony; Balaski testimony; SJ 1 at RFA Docs. 1a-d; SJ 4.

17. The terms of the Purchase of Services contracts between each of the four participating MCOs and DSS are substantively identical. Parella Testimony; Balaski testimony.

18. Omitted.

19. Omitted.

20. Under all versions of the Purchase of Services contracts, DSS has required participating MCOs to provide children with Early Periodic Screening Diagnostic and Treatment ("EPSDT") dental screening services, preventive dental and medically necessary dental care treatment. Parella Testimony; Balaski testimony; Stipulated Fact #11 in July 23, 2007 Joint Trial Memorandum.

21. Each Purchase of Services contract requires the MCOs to provide, as EPSDT services, dental services to child Medicaid recipients under the direction of a dentist, including relief of pain and infections, restoration of teeth and maintenance of dental health, provided that the services are medically necessary, and in accordance with all other applicable conditions for coverage. Initial dental referral must be made before a child's 3rd birthday. Parella Testimony; Balaski testimony; Stipulated Fact #12 in July 23, 2007 Joint Trial Memorandum.

22. Under such Purchase of Services contracts, the MCOs are required to cover their enrolled Medicaid children from prior to a child's third birthday until age 21 for other necessary dental health care, diagnostic and treatment services and other measures to correct or ameliorate

defects and physical illnesses and conditions whether or not the service is otherwise covered by Connecticut in its Medicaid plan, provided that the service is medically necessary, was identified as a necessary service in an EPSDT dental screen, qualifies for coverage as a service that may be covered as medical assistance by a state Medicaid program under federal law, and all other conditions for coverage are satisfied. Parella Testimony; Balaski testimony; Stipulated Fact #13 in July 23, 2007 Joint Trial Memorandum.

23. The HUSKY A program requires that its beneficiaries enroll in an MCO. Parella Testimony; Balaski testimony; Stipulated Fact #14 in July 23, 2007 Joint Trial Memorandum.

24. Omitted.

25. According to DSS as of April 1, 2007, the plaintiff subclass numbers 213,662 children, *i.e.* all Connecticut children who are now or will be under the age of 21, who are or will be seeking dental health services, and who are or will be eligible for Medicaid managed care HUSKY A benefits. Parella testimony; Balaski testimony.

27. Almost seventy-five percent (75%) of the plaintiff class is currently enrolled in either BCFP or HNNE. Balaski testimony.

B.  Covered dental services

28. The MCOs provide Medicaid covered services under the Purchase of Services contracts in exchange for a "capitated" payment. The capitation payment is a single payment per member per month ("PMPM"). Complaint ¶66, Answer ¶66; SJ 1 at RFA Docs. 1a (Part II § 4.3), 1b (§ 4.6), 1c (§ 4.06); SJ 4 contract amendments at § 4.06; SJ 73 at ¶ 8; Parella testimony.

29. Under their Purchase of Services contracts with DSS, the MCOs are required to provide coverage for the services listed under the following categories of dental services "performed by a licensed dentist or dental hygienist which conform to accepted methods of

diagnosis and treatment": diagnostic services (including initial, periodic and emergency oral examinations); preventive services (including prophylaxis, fluoride treatment for children under 21, and sealants for children between the ages of 5 and 16); restorative services (including fillings and crowns for carious permanent and primary teeth); endodontics; prosthodontics; dental surgery, exodontia (extractions); orthodontics under the EPSDT program; alveolectomy; patient management (for dental services for persons with cognitive disabilities); restorative procedures to deciduous teeth nearing exfoliation; and general surgical anesthesia. Parella testimony; Stipulated Fact #16 in July 23, 2007 Joint Trial Memorandum.

30. Under their Purchase of Services contracts with DSS, the MCOs are required to provide coverage for EPSDT dental services in conformance with the EPSDT periodicity schedule. Balaski testimony; Parella testimony; Stipulated Fact #17 in July 23, 2007 Joint Trial Memorandum.

31. The current EPSDT periodicity schedule, developed and implemented by DSS in 2001, requires a dental screen and an initial referral to a dentist commencing at age two consistent with American Academy of Pediatrics ("AAP") Guidelines. Parella testimony; Stipulated Fact #18 in July 23, 2007 Joint Trial Memorandum.

32. Since 1998, the EPSDT periodicity schedule has required an initial dental referral prior to a child's 3rd birthday and consistent with AAP Guidelines; prior to 1998, the EPSDT periodicity schedules required an initial dental referral at age 3. Balaski testimony; Parella testimony; Stipulated Fact #19 in July 23, 2007 Joint Trial Memorandum.

33. Omitted.

C. General Dental Access provisions

34. Each Purchase of Services contract requires that the MCO's dental provider network

enable access for each enrolled plan member to a general dentist at a distance of no more than twenty (20) Miles from the member's residence. Parella testimony; Stipulated Fact #20 in July 23, 2007 Joint Trial Memorandum.

35. Each Purchase of Services contract requires that the MCO: maintain an adequate Medicaid dental provider network throughout the state's eight (8) counties; maintain Medicaid dental provider networks in each county in Connecticut at a ratio of at least one general dentist for every 486 enrolled plan members with dental hygienists counted at .50% of a dentist; and ensure that dental visits are scheduled within six (6) weeks. Balaski testimony; Parella testimony; Stipulated Fact #21 in July 23, 2007 Joint Trial Memorandum.

36. Each Purchase of Services contract requires that the MCOs ensure that the locations of facilities and practitioners providing healthcare services, to Members are sufficient in terms of geographic convenience to low-income areas. SJ 1 at RFA Docs. 1a (§ 3.4), 1b (§ 3.2b), 1c (§ 3.02b); SJ 4 contract amendments at § 3.4; Balaski testimony; Parella testimony.

D. Reporting requirements

37. In 1991, the Secretary of HHS announced a goal that all states including Connecticut, by fiscal year 1995, achieve an 80% participation ratio for all services specified in EPSDT Medicaid statutory provisions. Balaski testimony; Parella testimony; Stipulated Fact #22 in July 23, 2007 Joint Trial Memorandum.

38. Defendant reports annually to CMS the number of Medicaid-enrolled children receiving required preventive and dental treatment services on forms commonly known as "HCFA 416" reports, now "CMS 416" reports. Balaski testimony; Parella testimony; Stipulated Fact #23 in July 23, 2007 Joint Trial Memorandum.

39. Since 1995, DSS has required each MCO to submit to DSS, on a monthly basis,

reports on utilization of dental care and on compliance with the screening requirements of the EPSDT program.  Balaski testimony; Parella testimony; Stipulated Fact #20 in July 23, 2007 Joint Trial Memorandum. .

40. The Children's Health Council was created in 1995 by the Connecticut General Assembly in part to monitor compliance of the HUSKY A program with federal requirements of the EPSDT program. Testimony Parella, Lee; Stipulated Fact #25 in July 23, 2007 Joint Trial Memorandum.

41. The MCOs are required to report monthly enrollment utilization and claims data and encounter data, to the Children's Health Council through DSS or its actuarial agent, William M. Mercer, Inc. Balaski testimony; Parella testimony; Stipulated Fact #26 in  July 23, 2007 Joint Trial Memorandum.

42. The Medicaid Managed Care Advisory Council ("MMCC") was created in 1995 by the Connecticut General Assembly to provide oversight and monitoring of the HUSKY A program.  The MMCC receives periodic reports from the defendant concerning the HUSKY A program based on the data that each MCO reports to DSS on children's and overall utilization of dental services.  Parrella testimony; Nardello testimony; Stipulated Fact #27in July 23, 2007 Joint Trial Memorandum.

E.  Subcontracting of dental services provision and/or administration

43. The four MCOs currently participating in the HUSKY A program subcontract with other vendors concerning HUSKY A dental services as follows: BCFP subcontracts with Dental Benefit Providers, Inc. ("DBP") (since 1999) for the delivery of Medicaid dental services in Connecticut; HNCT subcontracts with Doral Dental USA ("Doral") (since 2001) for administrative services concerning the delivery of Medicaid dental services in Connecticut;

CHNCT subcontracts with BeneCare (since 2000) for administrative services concerning the delivery of Medicaid dental services in Connecticut; and First Choice subcontracts with BeneCare for the delivery of Medicaid dental services in Connecticut. SJ 1 at RFA #s 10, 11, 12, 13; SJ 13; SJ 14; SJ 15; SJ 16; SJ 17; SJ 23; SJ 25; SJ 26; SJ 27; SJ 28; SJ 29; Balaski testimony; Parella testimony.

44. Omitted.

45. Omitted.

46. DSS approves all MCO subcontracts, including financial terms. Parrella testimony; Balaski testimony; SJ 1 at RFA Docs. 1a (Part II § 3.23), 1b (§ 3.43c), 1c (§ 3.44d); SJ 4 contract amendments at § 3.44d.

F. Facts Relating to Failures to Comply with the Law

50. In 1995, DSS actuarial consultant, Lewin-VHI reported that a serious problem with dental capacity already existed in Connecticut that demanded immediate DSS and health plan action. SJ 1 at RFA Doc. 3a (Memorandum from Lewin to James Gaito, DSS, "Dental Capacity Issues and Options" at 1) (September 5, 1995). Parella testimony

51. Similarly, in 1996, Lewin-VHI reported that a HUSKY A participants' ability to schedule appointments varied tremendously across counties with the lowest rate of scheduled appointments in Tolland, Windham and Litchfield counties; at least eight of the dentists called were not taking new Medicaid patients; and at least four offices had wait-lists of up to eighteen (18) months for Medicaid appointments. SJ 1 at RFA Doc. 3b (Memorandum from Jim Gaito, DSS to Connecticut Access Health Plans at heading "Dental Network Audit Results and Methodology" at 2-3) (September 30, 1996); Parella testimony.

52. DSS has had documentation noting serious deficits in the delivery of dental services