# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARY CARR, et al., individually and on behalf of all other persons similarly situated, | : : : | CIVIL ACTION NO. |
| *Plaintiffs* | : : | 3:00 CV 1050 (AVC) |
| v. | : : | |
| PATRICIA WILSON-COKER, in her official capacity as Commissioner of the State of Connecticut, Department of Social Services | : : : : | |
| *Defendant* | : | April 29, 2008 |

### SETTLEMENT AGREEMENT

WHEREAS, the named plaintiffs and all others similarly situated, as low-income recipients of the Connecticut "HUSKY A" Medicaid program, commenced this action against defendant PATRICIA WILSON-COKER, in her official capacity as Commissioner of the State of Connecticut Department of Social Services, for DSS' alleged failure to comply with federal law that allegedly requires her to implement policies and procedures designed to ensure the meaningful access of plaintiffs to oral health care provided by participating Medicaid dentists, in alleged violation of Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq., including the Early and Periodic Screening, Diagnosis and Treatment program, and implementing federal regulations promulgated by the Centers for Medicare and Medicaid Services of the U.S. Department of Health and Human Services, 42 C.F.R. § 431.1, et seq.; and

WHEREAS, Defendant denies the allegations but has determined that settlement of the action on mutually acceptable terms is in the best interest of all parties; and

WHEREAS, Michael P. Starkowski succeeded Patricia Wilson-Coker as the Commissioner of the Department of Social Services following the commencement of this action, and currently remains in that position; and

WHEREAS, the parties intend, through this Settlement Agreement, to maintain significant and substantial improvement to the procedures by which children and adults in Connecticut who receive Medicaid assistance may access dental health care services in a network of providers maintained and administered by the Department of Social Services; and

WHEREAS, the parties desire to settle this action on terms and conditions that are just and fair to all parties.

NOW, THEREFORE, IT IS HEREBY AGREED by and between the parties, as represented below, as follows:

## I. General Recitals

1. The parties believe that resolving this matter through negotiation rather than adversarial litigation is in the best interests of both plaintiffs and defendant. The agreement to settle this case, subject to the approval of the Court in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, is the outcome of negotiations and bargaining by the parties. Each party has made concessions the party believed were necessary in light of the facts of this action. In addition, each party has been able to obtain favorable concessions and agreements potentially beyond the reach of that party if this action had been decided by the Court, instead of being resolved through negotiations.

2. This Agreement embodies the entire agreement and understanding of the parties with respect to the subject matter contained herein. The parties hereby declare and represent that no promise, inducement, or agreement has been made other than those contained in this document,

and the parties acknowledge that the terms and conditions of this agreement are contractual and not a mere recital.

3. This Settlement Agreement is contingent upon approval by the Connecticut legislature in accordance with the provisions of Conn. Gen. Stat. § 3-125a, and by the Court after the Court holds such "fairness hearings" as may be dictated by the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure of the U.S. District Court for the District of Connecticut, and the Rulings of this Court.

4. This Settlement Agreement shall become effective, final and binding upon the parties, their successors and assigns, only at such time as it is approved by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

5. No portion of this Settlement Agreement is severable and no portion of this Settlement Agreement is enforceable unless and until approval by the Connecticut General Assembly pursuant to Conn. Gen. Stat. § 3-125a and a subsequent, final and complete approval by the Court.

6. In reaching this settlement, defendant expressly does not admit liability, or violation of the law, as to any claims raised or which could have been raised, by plaintiffs pertinent to events giving rise to this lawsuit. Similarly, the plaintiffs do not admit that the relief agreed to herein by way of compromise agreement is necessarily all that is required by the terms of the Medicaid Act.

**II. Definitions**

7. The following definitions apply to this Settlement Agreement:

    a. "Children" refers to all persons under the age of 21.

    b. "CMS" refers to the Centers for Medicare and Medicaid Services.

3

c. "Defendant" means the named defendant, Commissioner of the State of Connecticut Department of Social Services, in this action and his successors and assigns.

d. "The Department of Social Services," "DSS" or "the Department" means the State of Connecticut Department of Social Services, or any successor agency, its officers, administrators, staff, employees, agents and assigns, and all persons acting in concert therewith.

e. "Early and Periodic, Screening, Diagnostic and Treatment (EPSDT) program" refers to the provision of medical services, including dental health care, diagnostic and treatment services, as a benefit that is available to children under the Medicaid HUSKY A program, pursuant to 42 U.S.C. §§ 1396a(a)(43)(A) and (B); 1396d(r)(1), (3) and (5), and regulations promulgated by the Centers for Medicare and Medicaid Services, U.S. Department of Health and Human Services. The term "provision" as used in this definition refers to the term as it is used in the EPSDT statute, taking into account the roles and responsibilities of the state Medicaid agency under Medicaid law.

f. "Managed Care Organizations" or "MCOs" refers to the organization or organizations which contract with DSS to provide covered medical services to their enrolled members under the HUSKY Medicaid managed care waiver program.

g. "Medicaid" or "HUSKY A", for purposes of this Settlement Agreement, refers to the program of medical assistance benefits provided to eligible families that contain a pregnant woman or at least one child under the HUSKY Medicaid managed care waiver program.

h. "Plaintiffs" refers to the named plaintiffs in this action, the certified plaintiff class, and the certified plaintiff subclass, as certified by order of the Court on March 3, 2001.

i. "Plaintiffs' Counsel" refers to counsel for the plaintiffs from Greater Hartford Legal Aid, Inc., Connecticut Legal Services, Inc., Updike, Kelly and Spellacy, P.C., and Shipman and Goodwin, LLP.

j. "Safety Net" facilities refers to non-profit providers of dental services, including Federally Qualified Health Centers ("FQHCs"), hospital-based dental clinics, dental clinics operated by non-profit corporations that are not FQHCs or hospital-based, and school-based providers of dental services that are either provided directly by a municipality or by a non-profit organization under contract to the municipality.

k. "Screening" means dental screening as defined by the EPSDT provisions of Medicaid law.

l. "Urgent Care" means dental care of relief of acute pain or elimination of acute infection.

## III. Class Certification

8. In an Order entered March 30, 2001, this Court granted plaintiffs' motion for class certification and certified the following plaintiff class:

> "all individuals in Connecticut who are or will be eligible for Medicaid managed care HUSKY A benefits and are or will be seeking dental health services."

The Court further certified a subclass consisting of:

> [a]ll children in Connecticut who are now or will be under the age of 21, are or will be seeking dental health services, and are or will be eligible for Medicaid managed care Husky A benefits.

For purposes of this Settlement Agreement, the parties agree that these definitions are the sole definitions of the plaintiff class and the plaintiff subclass.

## IV. Scope of Litigation/Settlement Agreement

5

9. The parties agree that this lawsuit concerns the ability of plaintiffs and the members of the certified class and certified subclass to access dental services that are covered benefits in Connecticut's HUSKY Medicaid managed care waiver program. The parties intend to conclude the issues raised in the lawsuit by this Settlement Agreement. The parties agree that there are a number of other issues related to the provision of medical assistance for the cost of covered dental services that are outside the scope of this litigation, which other issues are not the subject of this litigation and are not concluded by this Settlement Agreement. Examples of issues that are not addressed in this litigation/Settlement Agreement include the ability of the Department to adopt definitions of medical necessity/utilization review procedures, the ability of the Department to adopt amount, scope, or duration limitations on covered dental services, and the ability of the Department to entirely withdraw coverage of dental services for adults as a covered medical assistance benefit.

## V. Term of Settlement Agreement

10. This Settlement Agreement is binding upon the parties. The term of the Settlement Agreement is defined as beginning on the date that the Settlement Agreement is finally approved by the Court, after approval of the Connecticut Legislature pursuant to Conn. Gen. Stat. § 3-125a, and after the Court holds a fairness hearing pursuant to Rule 23 (e) of the Federal Rules of Civil Procedure. The term of the Settlement Agreement shall end four years after the date of its commencement, and will be of no effect after that date.

11. This settlement agreement conclusively resolves all claims that were asserted, or could have been asserted, that are related to claims or defenses regarding the subject matter of the litigation, by the parties during the term of the Settlement Agreement. The parties retain the right to assert whatever claims and defenses they may have under state and federal law after the

6

expiration of the terms of the Settlement Agreement with respect to any claim concerning the

adequacy of the defendant's implementation of any of the requirements of federal law related to

the provision of dental services as a covered benefit under the Connecticut Medicaid program.

In any dispute that arises after the expiration of the term of this Settlement Agreement, the

provisions of the Settlement Agreement may not be looked to for guidance as to the meaning of

any requirements of federal or state Medicaid law.

## VI. Limited Applicability as to Adults Enrolled in HUSKY Managed Care

12. The parties acknowledge that dental services are "optional" services which are

covered for adults at state option under the terms of the federal Medicaid Act, and that the

federal Medicaid EPSDT statutory provisions do not apply to adults. The parties further

acknowledge that dental services are required services that must be covered as "medical

assistance" benefits for eligible children as a result of federal EPSDT Medicaid statutory

requirements. To the extent the Department continues to provide optional dental services to

adults, the parties further acknowledge that the only provisions of this Settlement Agreement that

impose obligations on the defendant with respect to adults who are class members because they

are or will be eligible to participate in the HUSKY Medicaid managed care program are

Paragraphs 13 and 14. In all other respects, the terms of this Settlement Agreement shall be

construed as imposing obligations on the defendant only with respect to the coverage of dental

services for children who are members of the plaintiff subclass.

## VII. Carve Out of Dental Care

13. The Department agrees to "carve" dental services out of Medicaid managed care and

to administer coverage of the dental services benefits directly, with the assistance of a single

contracted Administrative Services Organization (ASO"), no later than July 1, 2008. The ASO

7

will be solely responsible for assisting the Department for all administrative purposes related to the provision of dental services for HUSKY A members (who will continue to receive other medical services through managed care), including developing policy and regulations, setting provider credentialing requirements, setting billing requirements, setting utilization review requirements, conducting prior authorization and other utilization reviews, and conducting audits of provider compliance. Upon the Department's assumption of the administration of dental coverage, the MCOs will not be responsible for providing covered dental services for their assigned members under HUSKY A managed care. The Department will be directly responsible for administering the dental services benefit, including reimbursing participating providers for providing covered dental services to class members, acting on its own behalf, or with the assistance of an ASO or other contracted fiscal agents. The cost of providing dental services as a Medicaid benefit will be an obligation of the Department. The ASO shall not be "at risk".

## VIII. Fee Schedules

14. The Department agrees that effective July 1, 2008, after carve out, it will directly reimburse participating providers for providing covered dental services to class members and child subclass members at levels that are at least equal to the fee schedule that is attached hereto as Exhibit A. Exhibit A is the fee schedule that will apply to child subclass members. As indicated on that schedule, dental services for adults will be reimbursed at 52 % of the fee for children. The Department further agrees that it will ensure that enrolled providers of dental services are reimbursed no less than the fees set forth in Exhibit A for services provided to enrolled members on or after July 1, 2008 whether or not the Department fully complies with its obligation under Paragraph 13 to "carve out" dental services from managed care, effective July 1, 2008. In the event that the Department, in its discretion, elects to increase the fees for child

dental services higher than the fees listed in Exhibit A, it is under no obligation to continue to reimburse dental services for adults at 52% of the new, higher child fee schedule.

15.  Paragraph 14 shall not be construed as preventing the Department, in its discretion, from reimbursing selected providers, who were previously paid at higher levels by the MCOs, at levels that are higher than the levels that are set in the attached Exhibit A fee schedules.

16.  The establishment of minimum fee levels for identified procedures in accordance with Paragraph 14 shall not be construed as limiting the discretion of the Department to limit the amount, scope, or duration of covered dental services for adult class members or as limiting the discretion of the Department under federal law to entirely eliminate coverage of optional dental services for adults.

17.  Beginning in the state fiscal year that first commences after the Court's approval of this Settlement Agreement but no sooner than the state fiscal year that begins July 1, 2008, the Department agrees that it will expend at least $20 million dollars more per year in additional expenditures for the coverage of dental services to covered children in comparison to the amount that was expended for that purpose in the state fiscal year that commenced on July 1, 2006.  In the event that the Department's total expenditures for dental services to children do not meet the requirements of this Paragraph in any state fiscal year covered by the term of this Settlement Agreement, the Department agrees to develop a plan, with input from plaintiffs' counsel, for the expenditure of the unspent funds on measures to improve access to oral health care.

## IX.  Provider Recruitment

18.  The Department, with the assistance of its contracted ASO, shall engage in an aggressive program of provider recruitment that is designed to encourage dentists, dental hygienists, and clinics and hospitals that provide dental services, to participate in the Medicaid

program as participating providers. The Department will endeavor to enlist the cooperation and support of the Connecticut Dental Association, the Connecticut Society of Pediatric Dentists, the Connecticut Dental Hygienists Association, the Connecticut Oral Health Initiative, the Connecticut Primary Care Association, the Connecticut Association of School-Based Health Clinics, and the Yale University/Yale New Haven Hospital and University of Connecticut Dental Schools' graduating classes and/or dental residency programs, in its provider recruitment efforts. Provider recruitment shall be conducted in a variety of formats, including direct mailing of informational material to licensed dentists and the holding of informational seminars at various locations throughout the state where information is verbally presented to interested dentists on the advantages of participating in the program. At least once annually, the Department will request that each of the organizations allow the Department or its representatives time on their meeting agendas to inform providers about participation in the HUSKY A Medicaid program and about the coverage of dental care services under EPSDT. The defendant or his designee will begin these outreach activities within one month from the entry of the Court's provisional approval of the Agreement. Defendant or his designee will work with the Dental Advisory Committee and the other entities described in Paragraph 35 to identify ongoing methods for increasing dentists' participation in the Medicaid EPSDT/HUSKY A program.

19. Effective July 1, 2008, the Department's panel of participating dental providers will be open to all willing and qualified providers who agree to participate in the program and to accept the Medicaid payment paid by the Department as payment in full for covered dental services provided to class members and sub-class members. The "open panel" provisions of this paragraph shall not be construed as (1) limiting the discretion of the Department to set credentialing requirements defining which dental providers are qualified to participate, (2)

10

preventing the Department from requiring interested providers to sign the required provider agreement, or (3) from refusing to execute a provider agreement with particular providers if the Department determines that it is not in the best interest of the program to allow the provider to participate for reasons that include, but are not limited to, program integrity concerns.

## X. Notice of the Availability of EPSDT Dental Services

20. Effective July 1, 2008, the Department shall amend the notice that it currently provides to HUSKY A eligible families when they are determined eligible for assistance, or shall develop a new notice, which shall inform HUSKY A families of the availability and of the importance of EPSDT dental services, including the recommended periodicity schedule for eligible children to receive preventive and diagnostic EPSDT screening dental services and of the availability of coverage for any necessary dental treatment services. The notice shall inform HUSKY A families: (1) how to obtain the identity of dental providers who participate in the program; (2) of the availability of assistance in scheduling dental appointments and in obtaining medical transportation, and shall state how scheduling and transportation assistance can be obtained; and (3) of the availability of case management services, and shall state how case management services can be obtained. The Department shall consult with counsel for plaintiffs in developing the terms of said notice, and shall accept the recommendations of counsel for plaintiffs as to the content of the notice if they are determined to be reasonable by the Department.

21. The notice(s) referenced in Paragraph 20 shall be mailed by the Department to the supervising adult member of the HUSKY A family when the family is initially determined eligible for assistance and periodically thereafter whenever the family is redetermined eligible for HUSKY A Medicaid assistance.

22. In addition to providing written notices, the Department, through its contracted ASO, will provide for the provision of oral notice to HUSKY families concerning the importance and availability of EPSDT dental services to the extent the provision of oral notice is determined to be reasonable by the Department.

### XI. Reminder Notices

23. Effective September 1, 2008, the Department or the ASO acting on behalf of the Department shall electronically monitor the receipt of dental services by child members of the plaintiff subclass based upon the submission (or lack of submission) of claims for reimbursement by participating providers, and shall cause a reminder notice to be automatically issued to the family if the child subclass member does not receive covered dental services within the recommended EPSDT periodicity schedule. The reminder notice shall inform the HUSKY A adult supervisory relative that a child in the family (specifically named) is overdue for dental services, that the periodic receipt of dental services is important for the child's health and development, and that scheduling and transportation assistance is available from the Department or its contractors at provided phone numbers. The Department shall consult with counsel for plaintiffs on the development of the text of the required reminder notices, and shall accept the recommendations of counsel for plaintiffs as to the content of the notice if they are determined to be reasonable by the Department.

### XII. Provision of Scheduling Assistance

24. Effective July 1, 2008, with the "carve out" of dental services from HUSKY A managed care, the Department, acting by and through its contracted ASO, shall provide "scheduling assistance" to any HUSKY A family who requests assistance in obtaining an appointment for dental services for a child subclass member.

25. The Department shall develop protocols which shall guide member services staff employed by the ASO in asking the family if it wishes to be provided a listing of participating dental providers so the family can make its own dental appointment directly with participating dental providers, or if it wishes the member services staff to actually make an appointment for the child with a participating provider.

26. The Department shall ensure that a HUSKY A family that requests the Department, through its ASO, to schedule a dental appointment for a HUSKY A child actually receives an appointment with a participating dental provider. The appointment will generally be scheduled on a date that is no more than two business days after the request for scheduling assistance in the case of urgent care, and not more than eight weeks in the case of requests for assistance in scheduling non-emergency dental care. The HUSKY A family will generally be notified within ten days that an appointment has been scheduled. Appointments with primary care dentists/general dentists shall generally be scheduled with a participating provider who is located within a twenty (20) mile radius. The 20 mile radius for purposes of this provision shall be measured from the town line of the HUSKY A family to the town line of the participating dental provider. In cases where the HUSKY A family has no working phone, notice will be given via mail. If DSS has taken the steps noted above, DSS will not be determined to be out of compliance with its obligations under this paragraph in cases where the HUSKY A family is unreasonably restrictive as to the child's availability for an appointment, unreasonably fails to accept an offered appointment, has a history of repeatedly missing appointment making scheduling a new appointment difficult, or does not receive services as a result of the child's failure to attend a scheduled appointment. In accordance with Paragraph 46, DSS' compliance

with this and with all other paragraphs shall be determined by reference to the substantial compliance standard with respect to the class and to the subclass as a whole.

27. In cases where a HUSKY A family member, in the opinion of the Department, has a history of skipping or being late for dental appointments, Paragraph 24 shall not be construed as limiting the discretion of the Department in selecting the identity of the participating provider when scheduling assistance is requested. Specifically, the Department may limit the provision of scheduling assistance to making appointments with any FQHC or other participating provider who agrees to schedule appointments in blocks of time for a number of individuals, not all of whom are reasonably expected to appear as scheduled.

28. The Department will propose a regulation, through the Uniform Administrative Procedures Act ("UAPA"), that makes the failure of the Department, acting through its ASO, to assist a HUSKY family, upon request, in obtaining an appointment for a HUSKY child with a participating dental provider a "denial" of assistance that is appealable through the Department's fair hearing process. Pending the adoption of a formal regulation pursuant to the UAPA, the Department agrees to operate under its proposed regulation, giving it the force of law pursuant to Conn. Gen. Stat. § 17b-10. The parties agree that nothing contained herein shall limit the authority of the Attorney General or the Legislative Regulations Review Committee to comply with their statutory authority with respect to reviewing the proposed regulation.

## XIII. Provision of Transportation Assistance

29. Upon request and in accordance with the Department's current policies and procedures, including the limitations contained in current policy, the Department shall provide medical transportation to HUSKY A families who request medical transportation for dental care to be provided in order for a HUSKY child to receive covered dental services. As provided

under current policy, HUSKY families will be entitled to request administrative fair hearings if they are aggrieved by the Department's denial of a request for medical transportation for dental care.

## XIV.  EPSDT Dental Case Management

30.  The Department shall cover EPSDT dental case management services as a covered service for HUSKY A children when a HUSKY A child has a complicated dental condition and another co-morbid condition such that the provision of dental services needs to be coordinated with either the provision of other specialty dental services or the provision of medical services. In order to be covered, the need for EPSDT dental case management services must be identified by a dentist in conducting a dental examination.  Coverage of EPSDT dental case management services is subject to prior authorization by the Department, or the ASO acting on behalf of the Department, of the medical necessity of such services.  In requesting prior authorization to provide covered EPSDT case management services, the participating dentist must describe the child's dental condition, must describe the child's co-morbid condition(s), and must describe why it is necessary to coordinate the provision of dental services with the other services that are required by the child.  The need for routine EPSDT services, such as appointment and transportation assistance, is not sufficient to justify EPSDT case management services. Furthermore, a referral to a specialty dental or other medical provider, such as an orthodontist, is insufficient to justify the provision of EPSDT dental case management services unless the dentist's provision of dental services must be closely coordinated on an ongoing basis with the other dental or medical services that are necessary to be provided for the child.  By requesting authorization to provide EPSDT dental case management services, the participating dentist undertakes to provide such services on behalf of the child, and to document the extent of care

15

coordination services that are provided in the child's dental records. Case management requires coordination of care with a specialty dentist or with a physician. Dentists will be reimbursed for authorized EPSDT case management services based on a fixed per member per month fee to be set by the Department. Any prior authorization period shall be limited to not more than six months, after which time the participating provider must file a renewed prior authorization request demonstrating the need for ongoing EPSDT dental case management services. Any denial of a request for authorization to provide EPSDT dental case management services shall be appealable through the Department's fair hearing process. Notice of the availability of dental case management services, how to obtain prior authorization for those services, and the fee provided for those services, will be included in appropriate Policy Transmittals, periodic updates, and other communications provided to dental providers concerning EPSDT Medicaid dental services.

## XV. FQHC Expansion

31. The parties acknowledge that the Department has assisted in the provision of state bond and private demutualization grant funds that have enabled the Federally Qualified Health Centers ("FQHCs") to open at least one new, stand alone dental clinic, to substantially increase the space allotted for the provision of dental services at their existing (expanded) locations, and to replace or to install over 100 dental chairs and related equipment.

32. The parties further acknowledge that FQHCs will not be limited in their reimbursements to the fee schedules referenced in Paragraph 14, but that the FQHCs are entitled to receive full Medicaid dental encounter rate reimbursement from the Department of Social Services, in accordance with the requirements of federal law.

33. The parties acknowledge that the bond funds and the demutualization grants have significantly increased the capacity of the FQHCs to provide dental services to individuals that include members of the plaintiff class and the plaintiff subclass.

## XVI. Establishment of Dental Policy Advisory Committee

34. The Department shall re-establish its Dental Policy Advisory Committee (DPAC) to provide input, guidance, and recommendations to the Department of Social Services regarding additional measures that may be helpful in eliminating barriers to access to dental care, and on the development of an outreach and education program to HUSKY recipients emphasizing the importance of prevention and patient compliance with scheduling and treatment recommendations.

35. The DPAC will be chaired by a representative of the Department of Social Services. The Committee will include representatives from the Connecticut State Dental Association, the Pediatric, Endodontic, Periodontic, Orthodontic, Oral Surgical, and the Prosthodontic Dental Associations, the Association of Dental Hygienists, the UCONN School of Dental Medicine, the Connecticut Oral Health Initiative, the Connecticut Health Foundation, the Connecticut Primary Care Association, the Connecticut Hospital Association, the Office of Policy and Management, the Department of Public Health, counsel for plaintiffs, and the Department of Social Services. DSS will convene full meetings of the DPAC on a quarterly basis. The responsibility of DSS is limited to inviting representatives of the foregoing organizations to attend the DPAC meetings. DSS is not responsible for ensuring the participation of a representative from each organization. The role of the DPAC shall be advisory only. The Department is not required to implement any of its recommendations as a result of this Settlement Agreement.

17

**XVII.  Client Outreach Education Program**

36.  With the advice of its Dental Policy Advisory Committee, the Department shall develop and implement a program of client education for families enrolled in the  HUSKY managed care  program concerning the importance of obtaining regular, routine dental exams at periodic intervals, keeping scheduled appointments on time, following the treatment recommendations of the dental practitioner, and engaging in appropriate office waiting room behavior.  The program may include such a combination of written, oral, radio, and television public service material as the Department deems appropriate.

**XVIII.  Implementation of ABC Program**

37.  The Department agrees to implement its "ABC Program" whereby pediatricians and other primary care providers who have participated in required training can be reimbursed under Departmental policy, for providing oral health services to young HUSKY children, under age three.  Elements of the program qualifying for reimbursement include an oral examination, the application of topical fluoride, and education of the supervisory adult of the importance of the child receiving dental care from a dentist before age three.

**XIX.  Amendment of Departmental Dental and Clinic Policies**

38.  The Department agrees to take such diligent good faith efforts that are in its control to amend its policies and regulations applicable to Medicaid coverage of dental services by FQHCs by allowing the FQHCs to enter into provider agreements, and to claim reimbursement in their own names, without requiring the performing dentist or hygienist to also be enrolled in the Medicaid program as a participating provider.

18

39.  This article shall not limit the ability of the Department to require the performing dentist or hygienist from first passing credentialing requirements or from requiring the FQHC to disclose the identity of the non-participating, performing provider on its claim submission.  Any FQHC that enters into a provider agreement in its own name must agree to be fully responsible to the Department for all services that are provided on its behalf by a non-enrolled dentist or hygienist, with the FQHC being responsible for audit, record retention and disclosure, and the repayment of over-payment requirements.

## XX. SFY' 08 Expenditures for Program Expansion

40.  The Department agrees to expend $5 million dollars in SFY'08, by making grants, as set forth below, for purposes of promoting access to care in this state fiscal year, prior to the implementation of increased rates of reimbursement on July 1, 2008.  The agreed grant expenditures are one-time in SFY'08 and are understood to be non-recurring in future years.

a.  **Non-FQHC Safety Net** – The Department will provide grant support to non-FQHC safety net facilities to help them with operating expenses and/or infrastructure or capital improvements.  The total amount targeted for this initiative is $4.5 million.

b.  **Provider Outreach** – The Department will sponsor an information and public relations campaign of regional meetings with community providers to raise awareness about the reforms enacted as part of this Settlement and to increase provider enrollment.  The amount for this project is $250,000.

c.  **E-Dental Health** -- The Department will provide grants to Medicaid enrolled safety net providers to support purchase of hardware and software to enhance the automation of dental treatment records and billing.  The total for this initiative in is $150,000.

d.  **Connecticut State Dental Association's "Increasing Access to Dental Care" Service Project**. - The Department shall co-sponsor the "Increasing Access to Dental Care" service project sponsored by the CT State Dental Association (CSDA).  The Department will invest up to $100,000 to support this project.

## XXI. Performance Reporting and Monitoring

41.  The Department shall report in writing, the information listed below on the HUSKY A dental program to counsel for plaintiffs and to the members of the Dental Policy Advisory Committee referenced in Paragraph 35.  The term "reporting period" for the purposes of this Paragraph shall refer to each succeeding annual twelve month period, or to the six month semi-annual period, calculated by reference to the carve out of dental services on July 1, 2008.  The term "timely filing period" means the period of time allowed under Department of Social Services policy for the participating provider to submit a claim for reimbursement for services provided to HUSKY A families.

## A.  **Semi-Annual Reports**

The following written report will cover the reporting periods of July through December and January through June of each year, and shall be produced with a time lag equal to the timely filing period plus two months.

1.  Total expenditures in the HUSKY A dental program in the reporting period broken down for children and adults;

2.  for each billing provider, total payments made and related billed amounts;

3.  number of children treated and encounters for HUSKY children for any preventive and treatment services as defined by CMS in its Medicaid 416 instructions for Lines 12a, b, c;

4.  the unduplicated number of children enrolled at any time during the reporting period;

5.  the amount billed by and paid to each billing provider for services provided to HUSKY children;

6.  the unduplicated number of dentists who were enrolled as billing providers any time in the six month period;

7.  by month, the distribution of billing providers by numbers of unduplicated children treated, numbers of dental visits provided, and amount of payments. Number of enrolled providers who did not bill for any services.  Primary sort

will be type of provider (safety-net and non-safety net). Secondary sort will be amount paid in descending order;

8. Provider Turnover Report with the following data elements: unduplicated number of enrolled performing providers as of the beginning of the reporting period, number of performing providers enrolled during the reporting period, number of performing providers disenrolled during the reporting period number of enrolled performing providers on the last day of the six month reporting period;

9. the dental participation level for HUSKY A children as determined by DSS employing CMS EPSDT reporting methodology for any visit, prevention visit, and treatment visit (CMS Form 416 Lines 12a, b, c);

10. the number of HUSKY A children who were sent overdue reminder notices in the reporting period;

11. the number of requests for scheduling assistance for HUSKY A children in the reporting period and whether the request was for a) a list of participating providers, or b) assistance in obtaining an appointment;

12. the number of appointments scheduled for HUSKY A children where assistance was requested in the form of assistance in obtaining an appointment; and;

13. the number of HUSKY A children who were authorized to receive dental case management services.

## B. **Annual Reports**

The following written reports will be produced annually. Annual reports shall be produced annually covering the reporting period of the previous state fiscal year, and shall be produced with a time lag equal to the timely filing period plus three months.

1) The unduplicated number of children enrolled during the reporting period;

2) the number of children continuously enrolled during the reporting period (as defined by HEDIS as children enrolled for 12 months with no more than a 45 day gap in coverage and having coverage on the last day of the year);

3) the unduplicated number of children enrolled during the reporting period who obtained one or more dental visits;

4) the number of children continuously enrolled (as defined by HEDIS) during the reporting period who obtained one or more dental visits;

5) the total number of visits for the unduplicated number of children enrolled at any time during the reporting period; and

6) the total number of visits for the continuously enrolled children during the reporting period;

7) the aggregate number of procedures covered for enrolled HUSKY children in the reporting period.

42. The Department will, biannually, in the State fiscal years that commence in July, 2009, and in July, 2011, produce a "Mystery Shopper" study, using a scientifically valid instrument and sampling numbers and techniques, to determine the availability of dental appointments to the plaintiff class.

43. The Department will, biannually, in the State fiscal years commencing in July, 2009, and in July, 2011, survey a statistically valid number of the families of the plaintiff class to determine whether they have sought, but been unable to obtain, EPSDT dental services in the defendant's EPSDT program.

44. Upon request, the Department will meet quarterly with counsel for plaintiffs to discuss the status of its implementation of any of its undertakings specified in this Settlement Agreement. DSS will provide additional reasonable information to plaintiffs within two months of their request.

## XXII. Binding Effect

45. The counsel of record signing this Settlement Agreement represent that they have the authority to enter into it on behalf of their respective clients including, but not limited to, the certified class and subclass, and that this Settlement Agreement shall be binding upon, and inure to the benefit of, all parties to this Settlement Agreement and to their successors.

## XXIII. Enforcement

46.  During the term of this Settlement Agreement, plaintiffs may bring a motion before the Court seeking enforcement or contempt only if the defendant fails to substantially comply with the terms of this Settlement Agreement.  Substantial compliance shall be determined by reference to the adequacy of the defendant's efforts to implement the requirements of this Settlement Agreement with respect to the class, and to the subclass, as a whole, and not solely by reference to the individual circumstances of any one individual plaintiff or class or subclass member.

47.  Prior to bringing an action for enforcement, plaintiffs shall provide at least seventy-five (75) days advance written notice of the facts and circumstances that allegedly warrant the filing of a motion seeking enforcement or contempt against the Defendant Commissioner of Social Services. The parties agree to meet informally in an effort to resolve any dispute as to the adequacy of implementation before a motion for enforcement or contempt is filed.

## XXIV. Attorneys' Fees and Costs

48.  The defendant shall pay the sum of Three Hundred Thousand ($300,000.00) Dollars representing payment in full for all attorneys' fees ($190,000.00) and costs ($110,000.00) payable through the date of final court approval of this Settlement  Agreement.  Plaintiffs' counsel shall certify how the amount of Three Hundred Thousand ($300,000.00) Dollars shall be apportioned between counsel for the plaintiffs, and the defendant may rely upon such certification in paying the fees and costs agreed to herein.

49.  Except as provided in the following paragraph, plaintiffs shall not be entitled to payment of any additional attorneys' fees or costs for activities related to monitoring the defendant's implementation of this Settlement Agreement.

50. Plaintiffs may be awarded additional attorneys fees and costs by the Court, in its discretion, only if plaintiffs bring a motion seeking enforcement or contempt and the Court adjudicates the motion finding the defendant in contempt. Any such additional fees or costs shall be reasonable in amount, as determined by the Court, shall be limited to the time reasonably and necessarily spent in pursuing enforcement commencing on the date when the motion was filed with the Court and shall not include any time expended in providing the notice and meetings and preparation thereof as set forth in Paragraph 47.

**XXV.  Jurisdiction**

51. The United States District Court shall retain jurisdiction of this settlement only with respect to the obligations of the Defendant under paragraphs 8, 10, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 28, 29, 30, 40, 41, and 46.

52. The United States District Court shall not have jurisdiction over any aspect of this agreement provided for in any other paragraph not specifically stated above. This Article shall not prevent the Court from reviewing any of the paragraphs of this Settlement Agreement for purposes of construing the defendant's obligations; however, any enforcement action in this Court may only be based upon an alleged violation of a paragraph listed in Paragraph 51 of this Settlement Agreement.

53. Disputes concerning eligibility for Medicaid benefits or services for any member of the plaintiff class or subclass that could be the subject of any administrative fair hearing process, are excluded from jurisdiction of the U.S. District Court and can not be the subject of any enforcement action of this Settlement Agreement.

54. The United States District Court shall not have jurisdiction to entertain any motions or requests for relief that are filed after the term of the agreement expires pursuant to Paragraph

10, or after four years after the day on which the Court approves the Settlement Agreement after holding a fairness hearing.

55. In the event that a motion or request for relief alleging non-compliance with the paragraphs listed in Paragraph 51 of this Settlement Agreement is pending on the date that the term of the agreement expires, the Court will have continuing jurisdiction to entertain, and to rule on, the motion or request of relief. In the event that the Court finds that the defendant failed to substantially comply with a paragraph listed in paragraph 51, the Court's continuing jurisdiction shall be limited to entering relief that is limited to assuring compliance with the specific requirements of the paragraphs listed in Paragraph 51. The Court shall not have continuing jurisdiction to consider, or to enter, any other form of relief, other than an order requiring compliance with the specific requirements of the listed paragraphs, as a consequence of the defendant's failure to substantially comply.

**For the Plaintiffs:**

_Jamey Bell_     _5/1/08_
Jamey Bell          Date
Greater Hartford Legal Aid
Fed. Bar No. CT15520

_Greg Bass_     _5/1/08_
Greg Bass          Date
Greater Hartford Legal Aid
Fed. Bar No. CT18114

**For the Defendant:**

_Michael Starkowski_     _4/29/08_
Michael Starkowski    Date
Commissioner, DSS

_Hugh Barber_     _4/29/08_
Hugh Barber       Date
Assistant Attorney General
Fed. Bar No. CT05731

Anne Louise Blanchard          Date
Connecticut Legal Services
Fed. Bar No. CT08718

Kristen Noelle Hatcher          Date 5/1/08
Connecticut Legal Services
Fed. Bar No. CT27002

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| **DIAGNOSTIC** | | |
| D0120 | PERIODIC ORAL EVALUATION - ESTABLISHED PATIENT | 35.00 |
| D0140 | LIMITED ORAL EVALUATION - PROBLEM FOCUSED | 48.00 |
| D0150 | COMPREHENSIVE ORAL EVALUATION - NEW OR ESTABLISHED PATIENT | 65.00 |
| D0210 | INTRAORAL-COMPLETE SERIES (INCLUDING BITEWINGS) | 101.00 |
| D0220 | INTRAORAL-PERIAPICAL-FIRST FILM | 19.00 |
| D0230 | INTRAORAL-PERIAPICAL-EACH ADDITIONAL FILM | 17.00 |
| D0240 | INTRAORAL-OCCLUSAL FILM | 19.00 |
| D0272 | BITEWINGS-TWO FILMS | 32.00 |
| D0310 | SIALOGRAPHY | 92.00 |
| D0321 | OTHER TEMPOROMANDIBULAR JOINT FILMS, BY REPORT | 350.00 |
| D0330 | PANORAMIC FILM | 87.00 |
| **PREVENTIVE** | | |
| D1110 | PROPHYLAXIS-ADULT | 64.00 |
| D1120 | PROPHYLAXIS-CHILD | 46.00 |
| # D1203 | TOPICAL APPLICATION OF FLUORIDE (PROPHYLAXIS NOT INCLUDED)-CHILD | 29.00 |
| * #D1204 | TOPICAL APPLICATION OF FLUORIDE (PROPHYLAXIS NOT INCLUDED)-ADULT | 28.00 |
| D1351 | SEALANT-PER TOOTH | 40.00 |
| D1510 | SPACE MAINTAINER-FIXED UNILATERAL | 215.00 |
| D1515 | SPACE MAINTAINER-FIXED BILATERAL | 328.00 |
| D1525 | SPACE MAINTAINER-REMOVABLE BILATERAL | 350.00 |
| **RESTORATIVE** | | |
| D2140 | AMALGAM-ONE SURFACE, PRIMARY OR PERMANENT | 95.00 |
| D2150 | AMALGAM-TWO SURFACES, PRIMARY OR PERMANENT | 114.00 |
| D2160 | AMALGAM-THREE SURFACES, PRIMARY OR PERMANENT | 145.00 |
| D2161 | AMALGAM-FOUR OR MORE SURFACES, PRIMARY OR PERMANENT | 200.00 |
| D2330 | RESIN-ONE SURFACE, ANTERIOR | 100.00 |
| D2331 | RESIN-TWO SURFACES, ANTERIOR | 136.00 |
| D2332 | RESIN-THREE SURFACES, ANTERIOR | 170.00 |
| D2335 | RESIN-FOUR OR MORE SURFACES OR INVOLVING INCISAL ANGLE (ANTERIOR) | 210.00 |
| D2391 | RESIN-BASED COMPOSITE - ONE SURFACE, POSTERIOR | 130.00 |
| D2392 | RESIN-BASED COMPOSITE - TWO SURFACES, POSTERIOR | 160.00 |
| D2393 | RESIN-BASED COMPOSITE - THREE SURFACES, POSTERIOR | 200.00 |
| D2751 | CROWN-PORCELAIN FUSED TO PREDOMINANTLY BASE METAL | 585.00 |

M.P. MANUALLY PRICED
*   PRIOR AUTHORIZATION REQUIRED
@   MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

"EXHIBIT A"

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| D2791 | CROWN-FULL CAST PREDOMINANTLY BASE METAL | 805.00 |
| D2910 | RECEMENT INLAY, ONLAY OR PARTIAL COVERAGE RESTORATION | 26.00 |
| D2920 | RECEMENT CROWN | 42.00 |
| D2930 | PREFABRICATED STAINLESS STEEL CROWN-PRIMARY TOOTH | 230.00 |
| D2931 | PREFABRICATED STAINLESS STEEL CROWN-PERMANENT TOOTH | 239.00 |
| D2940 | SEDATIVE FILLING | 50.00 |
| D2950 | CORE BUILD-UP, INCLUDING ANY PINS | 124.00 |
| D2951 | PIN RETENTION-PER TOOTH, IN ADDITION TO RESTORATION | 35.00 |
| D2954 | PREFABRICATED POST AND CORE IN ADDITION TO CROWN | 230.00 |
| D2999 | UNSPECIFIED RESTORATIVE PROCEDURE, BY REPORT | M.P. |

**ENDODONTICS**

| | | |
|---|---|---|
| D3110 | PULP CAP-DIRECT (EXCLUDING FINAL RESTORATION) | 104.00 |
| D3220 | THERAPEUTIC PULPOTOMY (EXCLUDING FINAL RESTORATION) REMOVAL OF PULP CORONAL TO THE DENTINOCEMENTAL JUNCTION AND APPLICATION OF MEDICAMENT | 133.00 |
| D3310 | ANTERIOR (EXCLUDING FINAL RESTORATION) | 589.00 |
| D3320 | BICUSPID (EXCLUDING FINAL RESTORATION) | 758.00 |
| D3330 | MOLAR (EXCLUDING FINAL RESTORATION) | 875.00 |
| D3351 | APEXIFICATION/RECALCIFICATION-INITIAL VISIT (APICAL CLOSURE/CALCIFIC REPAIR OF PERFORATIONS, ROOT RESORPTION, ETC.) | 253.00 |
| D3410 | APICOECTOMY/PERIRADICULAR SURGERY-ANTERIOR | 400.00 |
| D3950 | CANAL PREPARATION AND FITTING OF PREFORMED DOWEL OR POST | 136.00 |
| D3999 | UNSPECIFIED ENDODONTIC PROCEDURE, BY REPORT | M.P. |

**PERIODONTICS**

| | | |
|---|---|---|
| D4210 | GINGIVECTOMY OR GINGIVOPLASTY - FOUR OR MORE CONTIGUOUS TEETH OR BOUNDED TEETH SPACES PER QUADRANT | 401.00 |
| D4211 | GINGIVECTOMY OR GINGIVOPLASTY - ONE TO THREE CONTIGUOUS TEETH OR BOUNDED TEETH SPACES PER QUADRANT | 105.00 |

**PROSTHODONTICS**

| | | |
|---|---|---|
| D5110 | COMPLETE DENTURE - MAXILLARY | 504.00 |
| D5120 | COMPLETE DENTURE - MANDIBULAR | 594.00 |
| D5211 | UPPER PARTIAL-RESIN BASE (INCLUDING ANY CONVENTIONAL CLASPS, RESTS AND TEETH) | 509.00 |
| D5212 | LOWER PARTIAL-RESIN BASE (INCLUDING ANY CONVENTIONAL CLASPS, RESTS AND TEETH) | 977.00 |
| D5213 | MAXILLARY PARTIAL DENTURE - CAST METAL FRAMEWORK WITH RESIN DENTURE BASES (INCLUDING ANY CONVENTIONAL CLASPS, RESTS AND TEETH) | 1197.00 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
    THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
    THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| D5214 | MANDIBULAR PARTIAL DENTURE - CAST METAL FRAMEWORK WITH RESIN DENTURE BASES (INCLUDING ANY CONVENTIONAL CLASPS, RESTS AND TEETH) | 1176.00 |
| D5510 | REPAIR BROKEN COMPLETE DENTURE BASE | 184.00 |
| D5520 | REPLACE MISSING OR BROKEN TEETH-COMPLETE DENTURE (EACH TOOTH) | 57.00 |
| D5610 | REPAIR RESIN DENTURE BASE | 150.00 |
| D5620 | REPAIR CAST FRAMEWORK | 62.00 |
| D5630 | REPAIR OR REPLACE BROKEN CLASP | 135.00 |
| D5640 | REPLACE BROKEN TEETH-PER TOOTH | 124.00 |
| D5650 | ADD TOOTH TO EXISTING PARTIAL DENTURE | 91.00 |
| D5660 | ADD CLASP TO EXISTING PARTIAL DENTURE | 120.00 |
| D5730 | RELINE COMPLETE MAXILLARY DENTURE (CHAIRSIDE) | 104.00 |
| D5731 | RELINE LOWER COMPLETE MANDIBULAR DENTURE (CHAIRSIDE) | 104.00 |
| D5740 | RELINE MAXILLARY PARTIAL DENTURE (CHAIRSIDE) | 104.00 |
| D5741 | RELINE MANDIBULAR PARTIAL DENTURE (CHAIRSIDE) | 104.00 |
| D5750 | RELINE COMPLETE MAXILLARY DENTURE (LABORATORY) | 188.00 |
| D5751 | RELINE COMPLETE MANDIBULAR DENTURE (LABORATORY) | 180.00 |
| D5760 | RELINE MAXILLARY PARTIAL DENTURE (LABORATORY) | 180.00 |
| D5761 | RELINE MANDIBULAR PARTIAL DENTURE (LABORATORY) | 180.00 |
| D5899 | UNSPECIFIED REMOVABLE PROSTHODONTIC PROCEDURE, BY REPORT | M.P. |
| D5931 | OBTURATOR PROSTHESIS, SURGICAL | 1078.00 |
| D5932 | OBTURATOR PROSTHESIS, DEFINITIVE | 2069.00 |
| D6930 | RECEMENT BRIDGE | 26.00 |

ORAL SURGERY

| | | |
|---|---|---|
| D7140 | EXTRACTION, ERUPTED TOOTH OR EXPOSED ROOT (ELEVATION AND/OR FORCEPS REMOVAL) | 115.00 |
| D7210 | SURGICAL REMOVAL OF ERUPTED TOOTH REQUIRING ELEVATION OF MUCOPERIOSTEAL FLAP AND REMOVAL OF BONE AND/OR SECTION OF TOOTH | 200.00 |
| D7220 | REMOVAL OF IMPACTED TOOTH-SOFT TISSUE | 228.00 |
| D7230 | REMOVAL OF IMPACTED TOOTH-PARTIALLY BONY | 288.00 |
| D7240 | REMOVAL OF IMPACTED TOOTH-COMPLETELY BONY | 378.00 |
| D7241 | REMOVAL OF IMPACTED TOOTH-COMPLETELY BONY, WITH UNUSUAL SURGICAL COMPLICATIONS | 415.00 |
| D7260 | ORAL ANTRAL FISTULA CLOSURE | 600.00 |
| D7270 | TOOTH REIMPLANTATION AND/OR STABILIZATION OF ACCIDENTALLY EVULSED OR DISPLACED TOOTH | M.P. |
| D7272 | TOOTH TRANSPLANTATION (INCLUDES REIMPLANTATION FROM ONE SITE TO ANOTHER AND SPLINTING AND/OR STABILIZATION) | 150.00 |
| D7280 | SURGICAL ACCESS OF AN UNERUPTED TOOTH | 352.00 |
| D7286 | BIOPSY OF ORAL TISSUE - SOFT | 131.00 |
| D7320 | ALVEOLOPLASTY NOT IN CONJUNCTION WITH EXTRACTIONS - FOUR OR MORE TEETH OR TOOTH SPACES, PER QUADRANT | 189.00 |

M.P. MANUALLY PRICED
*   PRIOR AUTHORIZATION REQUIRED
@   MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
#   NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| D7410 | EXCISION OF BENIGN LESION UP TO 1.25 CM | 88.00 |
| D7411 | EXCISION OF BENIGN LESION GREATER THAN 1.25 CM | 225.00 |
| D7412 | EXCISION OF BENIGN LESION, COMPLICATED | 288.00 |
| D7413 | EXCISION OF MALIGNANT LESION UP TO 1.25 CM | 194.00 |
| D7414 | EXCISION OF MALIGNANT LESION GREATER THAN 1.25 CM | 259.00 |
| D7415 | EXCISION OF MALIGNANT LESION, COMPLICATED | 326.00 |
| D7440 | EXCISION OF MALIGNANT TUMOR-LESION DIAMETER UP TO 1.25 CM | 259.00 |
| D7441 | EXCISION OF MALIGNANT TUMOR-LESION DIAMETER GREATER THAN 1.25 CM | 325.00 |
| D7450 | REMOVAL OF BENIGN ODONTOGENIC CYST OR TUMOR-LESION DIAMETER UP TO 1.25 CM | M.P. |
| D7451 | REMOVAL OF BENIGN ODONTOGENIC CYST OR TUMOR-LESION DIAMETER GREATER THAN 1.25 CM | M.P. |
| D7460 | REMOVAL OF BENIGN NONDONTOGENIC CYST OR TUMOR-LESION DIAMETER UP TO 1.25 CM | M.P. |
| D7461 | REMOVAL OF BENIGN NONDONTOGENIC CYST OR TUMOR-LESION DIAMETER GREATER THAN 1.25 CM | M.P. |
| D7465 | DESTRUCTION OF LESION(S) BY PHYSICAL OR CHEMICAL METHODS, BY REPORT | 126.00 |
| D7471 | REMOVAL OF LATERAL EXOSTOSIS (MAXILLA OR MANDIBLE) | 99.00 |
| D7472 | REMOVAL OF TORUS PALATINUS | 497.00 |
| D7473 | REMOVAL OF TORUS MANDIBULARIS | 497.00 |
| D7485 | SURGICAL REDUCTION OF OSSEOUS TUBEROSITY | 169.00 |
| D7510 | INCISION AND DRAINAGE OF ABSCESS-INTRAORAL SOFT TISSUE | 69.00 |
| D7511 | INCISION AND DRAINAGE OF ABSCESS-INTRAORAL SOFT TISSUE - COMPLICATED (INCLUDES DRAINAGE OF MULTIPLE FASCIAL SPACES) | 94.00 |
| D7520 | INCISION AND DRAINAGE OF ABSCESS-EXTRAORAL SOFT TISSUE | 214.00 |
| D7521 | INCISION AND DRAINAGE OF ABSCESS - EXTRAORAL SOFT TISSUE - COMPLICATED (INCLUDES DRAINAGE OF MULTIPLE FASCIAL SPACES) | 95.00 |
| D7530 | REMOVAL OF FOREIGN BODY FROM MUCOSA, SKIN, OR SUBCUTANEOUS ALVEOLAR TISSUE | 41.00 |
| D7540 | REMOVAL OF REACTION-PRODUCING FOREIGN BODIES-MUSCULOSKELETAL SYSTEM | 62.00 |
| D7550 | PARTIAL OSTECTOMY/SEQUESTRECTOMY FOR REMOVAL OF NON-VITAL BONE | 99.00 |
| D7560 | MAXILLARY SINUSOTOMY FOR REMOVAL OF TOOTH FRAGMENT OR FOREIGN BODY | 676.00 |
| D7630 | MANDIBLE-OPEN REDUCTION (TEETH IMMOBILIZED IF PRESENT) | 675.00 |
| D7640 | MANDIBLE-CLOSED REDUCTION (TEETH IMMOBILIZED IF PRESENT) | 880.00 |
| D7670 | ALVEOLUS - CLOSED REDUCTION, MAY INCLUDE STABILIZATION OF TEETH | 206.02 |
| D7671 | ALVEOLUS - OPEN REDUCTION, MAY INCLUDE STABILIZATION OF TEETH | 456.00 |
| D7710 | MAXILLA-OPEN REDUCTION | 127.00 |
| D7720 | MAXILLA-CLOSED REDUCTION | 975.00 |
| D7730 | MANDIBLE-OPEN REDUCTION | 127.00 |
| D7740 | MANDIBLE-CLOSED REDUCTION | 675.00 |
| D7750 | MALAR AND/OR ZYGOMATIC ARCH-OPEN REDUCTION | 450.00 |
| D7760 | MALAR AND/OR ZYGOMATIC ARCH-CLOSED REDUCTION | 75.00 |
| D7780 | FACIAL BONES-COMPLICATED REDUCTION WITH FIXATION AND MULTIPLE SURGICAL APPROACHES | 975.00 |
| D7810 | OPEN REDUCTION OF DISLOCATION | 728.00 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| D7820 | CLOSED REDUCTION OF DISLOCATION | 75.00 |
| D7840 | CONDYLECTOMY | 1125.00 |
| D7865 | ARTHROPLASTY | 123.00 |
| D7910 | SUTURE OF RECENT SMALL WOUNDS UP TO 5 CM | 138.00 |
| D7911 | COMPLICATED SUTURE-UP TO 5 CM | 389.00 |
| D7912 | COMPLICATED SUTURE-GREATER THAN 5 CM | 104.00 |
| D7910 | OSTEOPLASTY-FOR ORTHOGNATHIC DEFORMITIES | 1330.00 |
| D7941 | OSTEOTOMY - MANDIBULAR RAMI | 1330.00 |
| D7943 | OSTEOTOMY - MANDIBULAR RAMI WITH BONE GRAFT; INCLUDES OBTAINING THE GRAFT | 1330.00 |
| D7944 | OSTEOTOMY-SEGMENTED OR SUBAPICAL | 1330.00 |
| D7945 | OSTEOTOMY-BODY OF MANDIBLE | 1200.00 |
| D7946 | LEFORT I (MAXILLA-TOTAL) | 1389.00 |
| D7947 | LEFORT I (MAXILLA-SEGMENTED) | 1389.00 |
| D7948 | LEFORT II OR LEFORT III (OSTEOPLASTY OF FACIAL BONES FOR MIDFACE HYPOPLASIA OR RETRUSION)-WITHOUT BONE GRAFT | 1389.00 |
| D7949 | LEFORT II OR LEFORT III-WITH BONE GRAFT | 1389.00 |
| D7960 | FRENULECTOMY (FRENECTOMY OR FRENOTOMY)-SEPARATE PROCEDURE | 146.00 |
| D7970 | EXCISION OF HYPERPLASTIC TISSUE-PER ARCH | 284.00 |
| D7971 | EXCISION OF PERICORONAL GINGIVA | 127.00 |
| D7972 | SURGICAL REDUCTION OF FIBROUS TUBEROSITY | 311.00 |
| D7980 | SIALOLITHOTOMY | 600.00 |
| D7983 | CLOSURE OF SALIVARY FISTULA | 421.00 |
| D7997 | EMERGENCY TRACHEOTOMY | 600.00 |
| | APPLIANCE REMOVAL (NOT BY DENTIST WHO PLACED APPLIANCE), INCLUDES REMOVAL OF ARCHBAR | |
| D7999 | UNSPECIFIED ORAL SURGERY PROCEDURE, BY REPORT | M.P. |

ORTHODONTICS

| | | |
|---|---|---|
| D0470 | DIAGNOSTIC CASTS | 98.00 |
| D0080 | COMPREHENSIVE ORTHODONTIC TREATMENT OF THE ADOLESCENT DENTITION | 596.23 |
| * D8660 | PRE-ORTHODONTIC VISIT | 34.32 |
| D8670 | PERIODIC ORTHODONTIC TREATMENT VISIT (AS PART OF CONTRACT) | 93.80 |
| * D8692 | REPLACEMENT OF LOST OR BROKEN RETAINER | 101.03 |
| * D8999 | UNSPECIFIED ORTHODONTIC PROCEDURE, BY REPORT | 197.08 |

ADJUNCTIVE SERVICES

| | | |
|---|---|---|
| D9110 | PALLIATIVE (EMERGENCY) TREATMENT OF DENTAL PAIN-MINOR PROCEDURES | 90.00 |
| D9220 | DEEP SEDATION/GENERAL ANESTHESIA-FIRST 30 MINUTES | 255.00 |
| D9221 | DEEP SEDATION/GENERAL ANESTHESIA-EACH ADDITIONAL 15 MINUTES | 123.00 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

PAGE 6

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
| --- | --- | --- |
| D9410 | HOUSE/EXTENDED CARE FACILITY CALL | 23.00 |
| D9920 | BEHAVIOR MANAGEMENT, BY REPORT | M.P. |
| D9940 | OCCLUSAL GUARDS, BY REPORT | 342.00 |
| D9999 | UNSPECIFIED ADJUNCTIVE PROCEDURE, BY REPORT | M.P. |

**FEDERALLY QUALIFIED HEALTH CENTER**

| | | PSR |
| --- | --- | --- |
| @ T1015 | CLINIC VISIT/ENCOUNTER, ALL-INCLUSIVE | PSR |

**SURGICAL**

| | | |
| --- | --- | --- |
| 12011 | SIMPLE REPAIR OF SUPERFICIAL WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; 2.5 CM OR LESS | 45.01 |
| 12013 | SIMPLE REPAIR OF SUPERFICIAL WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; 2.6 CM TO 5.0 CM | 65.23 |
| 12014 | SIMPLE REPAIR OF SUPERFICIAL WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; 5.1 CM TO 7.5 CM | 65.23 |
| 12015 | SIMPLE REPAIR OF SUPERFICIAL WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; 7.6 CM TO 12.5 CM | 65.23 |
| 12016 | SIMPLE REPAIR OF SUPERFICIAL WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; 12.6 CM TO 20.0 CM | 65.23 |
| 12017 | SIMPLE REPAIR OF SUPERFICIAL WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; 20.1 CM TO 30.0 CM | 65.23 |
| 12018 | SIMPLE REPAIR OF SUPERFICIAL WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; OVER 30.0 CM | 65.23 |
| 12031 | LAYER CLOSURE OF WOUNDS OF SCALP, AXILLAE, TRUNK AND/OR EXTREMITIES (EXCLUDING HANDS AND FEET); 2.5 CM OR LESS | 104.38 |
| 12032 | LAYER CLOSURE OF WOUNDS OF SCALP, AXILLAE, TRUNK AND/OR EXTREMITIES (EXCLUDING HANDS AND FEET); 2.6 CM TO 7.5 CM | 130.01 |
| 12041 | LAYER CLOSURE OF WOUNDS OF NECK, HANDS, FEET AND/OR EXTERNAL GENITALIA; 2.5 CM OR LESS | 104.38 |
| 12042 | LAYER CLOSURE OF WOUNDS OF NECK, HANDS, FEET AND/OR EXTERNAL GENITALIA; 2.6 CM TO 7.5 CM | 130.01 |
| 12051 | LAYER CLOSURE OF WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; 2.5 CM OR LESS | 104.38 |
| 12052 | LAYER CLOSURE OF WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; 2.6 CM TO 5.0 CM | 104.38 |
| 12053 | LAYER CLOSURE OF WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; 5.1 CM TO 7.5 CM | 130.01 |
| 12054 | LAYER CLOSURE OF WOUNDS OF FACE, EARS, EYELIDS, NOSE, LIPS AND/OR MUCOUS MEMBRANES; 7.6 CM TO 12.5 CM | 104.38 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
    THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
    THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| 14040 | ADJACENT TISSUE TRANSFER OR REARRANGEMENT, FOREHEAD, CHEEKS, CHIN, MOUTH, NECK, AXILLAE, GENITALIA, HANDS AND/OR FEET; DEFECT 10 SQ CM OR LESS | 521.92 |
| 14041 | ADJACENT TISSUE TRANSFER OR REARRANGEMENT, FOREHEAD, CHEEKS, CHIN, MOUTH, NECK, AXILLAE, GENITALIA, HANDS AND/OR FEET; DEFECT 10.1 SQ CM TO 30.0 SQ CM | 750.26 |
| 14060 | ADJACENT TISSUE TRANSFER OR REARRANGEMENT, EYELIDS, NOSE, EARS AND/OR LIPS; DEFECT 10 SQ CM OR LESS | 728.05 |
| 14061 | ADJACENT TISSUE TRANSFER OR REARRANGEMENT, EYELIDS, NOSE, EARS AND/OR LIPS; DEFECT 10.1 SQ CM TO 30.0 SQ CM | 900.31 |
| 14300 | ADJACENT TISSUE TRANSFER OR REARRANGEMENT, MORE THAN 30 SQ CM, UNUSUAL OR COMPLICATED, ANY AREA | 1043.84 |
| 15000 | SURGICAL PREPARATION OR CREATION OF RECIPIENT SITE 77 EXCISION OF OPEN WOUNDS, BURN ESCHAR, OR SCAR (INCLUDING SUBCUTANEOUS TISSUES), OR INCISIONAL RELEASE OF SCAR CONTRACTURE; FIRST 100 SQ CM OR O | 600.21 |
| 15120 | SPLIT-THICKNESS AUTOGRAFT, FACE, SCALP, EYELIDS, MOUTH, NECK, EARS, ORBITS, GENITALIA, HANDS, FEET, AND/OR MULTIPLE DIGITS; FIRST 100 SQ CM OR LESS, OR ONE PERCENT OF BODY AREA OF INFANTS AND CHIL | 570.14 |
| 15121 | SPLIT GRAFT, FACE, SCALP, EYELIDS, MOUTH, NECK, EARS, ORBITS, GENITALIA, HANDS, FEET AND/OR MULTIPLE DIGITS; EACH ADDITIONAL 100 SQ CM, OR EACH ADDITIONAL ONE PERCENT OF BODY AREA OF INFANTS AND CHIL | 105.05 |
| 15240 | FULL THICKNESS GRAFT, FREE, INCLUDING DIRECT CLOSURE OF DONOR SITE, FOREHEAD, CHEEKS, CHIN, MOUTH, NECK, AXILLAE, GENITALIA, HANDS, AND/OR FEET; 20 SQ CM OR LESS | 624.04 |
| 15241 | FULL THICKNESS GRAFT, FREE, INCLUDING DIRECT CLOSURE OF DONOR SITE, FOREHEAD, CHEEKS, CHIN, MOUTH, NECK, AXILLAE, GENITALIA, HANDS, AND/OR FEET; EACH ADDITIONAL 20 SQ CM (LIST SEPARATELY IN ADDITION TO | 105.05 |
| 15260 | FULL THICKNESS GRAFT, FREE, INCLUDING DIRECT CLOSURE OF DONOR SITE, NOSE, EARS, EYELIDS, AND/OR LIPS; 20 SQ CM OR LESS | 750.26 |
| 15261 | FULL THICKNESS GRAFT, FREE, INCLUDING DIRECT CLOSURE OF DONOR SITE, NOSE, EARS, EYELIDS, AND/OR LIPS; EACH ADDITIONAL 20 SQ CM (LIST SEPARATELY IN ADDITION TO CODE FOR PRIMARY PROCEDURE) | 105.05 |
| 15574 | FORMATION OF DIRECT OR TUBED PEDICLE, WITH OR WITHOUT TRANSFER; FOREHEAD, CHEEKS, CHIN, MOUTH, NECK, AXILLAE, GENITALIA, HANDS OR FEET | 416.03 |
| 15576 | FORMATION OF DIRECT OR TUBED PEDICLE, WITH OR WITHOUT TRANSFER; EYELIDS, NOSE, EARS, LIPS, OR INTRAORAL | 431.08 |
| 15620 | DELAY OF FLAP OR SECTIONING OF FLAP (DIVISION AND INSET); AT FOREHEAD, CHEEKS, CHIN, NECK, AXILLAE, GENITALIA, HANDS, OR FEET | 247.59 |
| 15732 | MUSCLE, MYOCUTANEOUS, OR FASCIOCUTANEOUS FLAP; HEAD AND NECK (EG, TEMPORALIS, MASSETER MUSCLE, STERNOCLEIDOMASTOID, LEVATOR SCAPULAE) | 897.07 |
| 15840 | GRAFT FOR FACIAL NERVE PARALYSIS; FREE FASCIA GRAFT (INCLUDING OBTAINING FASCIA) | 1182.04 |
| 20000 | INCISION OF SOFT TISSUE ABSCESS (EG, SECONDARY TO OSTEOMYELITIS); SUPERFICIAL | 30.01 |
| 20005 | INCISION OF SOFT TISSUE ABSCESS (EG, SECONDARY TO OSTEOMYELITIS); DEEP OR COMPLICATED | 75.03 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
  THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
  THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| 20670 | REMOVAL OF IMPLANT; SUPERFICIAL, (EG, BURIED WIRE, PIN OR ROD) (SEPARATE PROCEDURE) | 194.74 |
| 20680 | REMOVAL OF IMPLANT; DEEP (EG, BURIED WIRE, PIN, SCREW, METAL BAND, NAIL, ROD OR PLATE) | 391.44 |
| 21025 | EXCISION OF BONE (EG, FOR OSTEOMYELITIS OR BONE ABSCESS); MANDIBLE | 99.18 |
| 21034 | EXCISION OF MALIGNANT TUMOR OF MAXILLA OR ZYGOMA | 375.13 |
| 21040 | EXCISION OF BENIGN TUMOR OR CYST OF MANDIBLE, BY ENUCLEATION AND/OR CURETTAGE | 250.08 |
| 21044 | EXCISION OF MALIGNANT TUMOR OF MANDIBLE; | 1125.40 |
| 21060 | MENISCECTOMY, PARTIAL OR COMPLETE, TEMPOROMANDIBULAR JOINT (SEPARATE PROCEDURE) | 1125.40 |
| 21160 | RECONSTRUCTION MIDFACE, LEFORT III (EXTRA AND INTRACRANIAL) WITH FOREHEAD ADVANCEMENT (EG, MONO BLOC), REQUIRING BONE GRAFTS (INCLUDES OBTAINING AUTOGRAFTS); WITH LEFORT I | 1500.53 |
| 21193 | RECONSTRUCTION OF MANDIBULAR RAMI, HORIZONTAL, VERTICAL, C, OR L OSTEOTOMY; WITHOUT BONE GRAFT | 1330.16 |
| 21194 | RECONSTRUCTION OF MANDIBULAR RAMI, HORIZONTAL, VERTICAL, C, OR L OSTEOTOMY; WITH BONE GRAFT (INCLUDES OBTAINING GRAFT") | 1330.16 |
| 21210 | GRAFT, BONE; NASAL, MAXILLARY OR MALAR AREAS (INCLUDES OBTAINING GRAFT) | 675.25 |
| 21215 | GRAFT, BONE; MANDIBLE (INCLUDES OBTAINING GRAFT") | 1500.53 |
| 21230 | GRAFT, RIB CARTILAGE, AUTOGENOUS, TO FACE, CHIN, NOSE OR EAR (INCLUDES OBTAINING GRAFT) | 1050.36 |
| 21260 | PERIORBITAL OSTEOTOMIES FOR ORBITAL HYPERTELORISM, WITH BONE GRAFTS; EXTRACRANIAL APPROACH | 1500.53 |
| 21270 | MALAR AUGMENTATION, PROSTHETIC MATERIAL | 810.30 |
| 21275 | SECONDARY REVISION OF ORBITOCRANIOFACIAL RECONSTRUCTION | 727.25 |
| 21280 | MEDIAL CANTHOPEXY (SEPARATE PROCEDURE) | 475.46 |
| 21310 | CLOSED TREATMENT OF NASAL BONE FRACTURE WITHOUT MANIPULATION | 45.02 |
| 21315 | CLOSED TREATMENT OF NASAL BONE FRACTURE; WITHOUT STABILIZATION | 75.03 |
| 21320 | CLOSED TREATMENT OF NASAL BONE FRACTURE; WITH STABILIZATION | 250.96 |
| 21325 | OPEN TREATMENT OF NASAL FRACTURE; UNCOMPLICATED | 375.13 |
| 21330 | OPEN TREATMENT OF NASAL FRACTURE; COMPLICATED, WITH INTERNAL AND/OR EXTERNAL SKELETAL FIXATION | 600.21 |
| 21335 | OPEN TREATMENT OF NASAL FRACTURE; WITH CONCOMITANT OPEN TREATMENT OF FRACTURED SEPTUM | 884.06 |
| 21337 | CLOSED TREATMENT OF NASAL SEPTAL FRACTURE, WITH OR WITHOUT STABILIZATION | 94.55 |
| 21338 | OPEN TREATMENT OF NASOETHMOID FRACTURE; WITHOUT EXTERNAL FIXATION | 283.66 |
| 21339 | OPEN TREATMENT OF NASOETHMOID FRACTURE; WITH EXTERNAL FIXATION | 472.76 |
| 21340 | PERCUTANEOUS TREATMENT OF NASOETHMOID COMPLEX FRACTURE, WITH SPLINT, WIRE OR HEADCAP FIXATION, INCLUDING REPAIR OF CANTHAL LIGAMENTS AND/OR THE NASOLACRIMAL APPARATUS | 472.76 |
| 21343 | OPEN TREATMENT OF DEPRESSED FRONTAL SINUS FRACTURE | 555.24 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| 21345 | CLOSED TREATMENT OF NASOMAXILLARY COMPLEX FRACTURE (LEFORT II TYPE), WITH INTERDENTAL WIRE FIXATION OF DENTURE OR SPLINT | 465.95 |
| 21346 | OPEN TREATMENT OF NASOMAXILLARY COMPLEX FRACTURE (LEFORT II TYPE); WITH WIRING AND/OR LOCAL FIXATION | 750.26 |
| 21347 | OPEN TREATMENT OF NASOMAXILLARY COMPLEX FRACTURE (LEFORT II TYPE); REQUIRING MULTIPLE OPEN APPROACHES | 889.26 |
| 21365 | OPEN TREATMENT OF COMPLICATED (EG, COMMINUTED OR INVOLVING CRANIAL NERVE FORAMINA) FRACTURE(S) OF MALAR AREA, INCLUDING ZYGOMATIC ARCH AND MALAR TRIPOD; WITH INTERNAL FIXATION AND MULTIPLE SURG | 975.35 |
| 21385 | OPEN TREATMENT OF ORBITAL FLOOR BLOWOUT FRACTURE; TRANSANTRAL APPROACH (CALDWELL-LUC TYPE OPERATION) | 856.82 |
| 21386 | OPEN TREATMENT OF ORBITAL FLOOR BLOWOUT FRACTURE; PERIORBITAL APPROACH | 1267.84 |
| 21387 | OPEN TREATMENT OF ORBITAL FLOOR BLOWOUT FRACTURE; COMBINED APPROACH | 1267.84 |
| 21390 | OPEN TREATMENT OF ORBITAL FLOOR BLOWOUT FRACTURE; PERIORBITAL APPROACH, WITH ALLOPLASTIC OR OTHER IMPLANT | 1156.93 |
| 21395 | OPEN TREATMENT OF ORBITAL FLOOR BLOWOUT FRACTURE; PERIORBITAL APPROACH WITH BONE GRAFT (INCLUDES OBTAINING GRAFT) | 756.41 |
| 21400 | CLOSED TREATMENT OF FRACTURE OF ORBIT, EXCEPT BLOWOUT; WITHOUT MANIPULATION | 52.50 |
| 21401 | CLOSED TREATMENT OF FRACTURE OF ORBIT, EXCEPT BLOWOUT; WITH MANIPULATION | 975.35 |
| 21406 | OPEN TREATMENT OF FRACTURE OF ORBIT, EXCEPT BLOWOUT; WITHOUT IMPLANT | 1150.31 |
| 21407 | OPEN TREATMENT OF FRACTURE OF ORBIT, EXCEPT BLOWOUT; WITH IMPLANT | 1150.31 |
| 21431 | CLOSED TREATMENT OF CRANIOFACIAL SEPARATION (LEFORT III TYPE) USING INTERDENTAL WIRE FIXATION OF DENTURE OR SPLINT | 468.28 |
| 21432 | OPEN TREATMENT OF CRANIOFACIAL SEPARATION (LEFORT III TYPE); WITH WIRING AND/OR INTERNAL FIXATION | 750.26 |
| 21433 | OPEN TREATMENT OF CRANIOFACIAL SEPARATION (LEFORT III TYPE); COMPLICATED (EG, COMMINUTED OR INVOLVING CRANIAL NERVE FORAMINA), MULTIPLE SURGICAL APPROACHES | 777.78 |
| 21435 | OPEN TREATMENT OF CRANIOFACIAL SEPARATION (LEFORT III TYPE); COMPLICATED, UTILIZING INTERNAL AND/OR EXTERNAL FIXATION TECHNIQUES (EG, HEAD CAP, HALO DEVICE, AND/OR INTERMAXILLARY FIXATION) | 750.26 |
| 21452 | PERCUTANEOUS TREATMENT OF MANDIBULAR FRACTURE, WITH EXTERNAL FIXATION | 280.02 |
| 21454 | OPEN TREATMENT OF MANDIBULAR FRACTURE WITH EXTERNAL FIXATION | 675.25 |
| 21461 | OPEN TREATMENT OF MANDIBULAR FRACTURE; WITHOUT INTERDENTAL FIXATION | 675.25 |
| 21465 | OPEN TREATMENT OF MANDIBULAR CONDYLAR FRACTURE | 675.25 |
| 21480 | CLOSED TREATMENT OF TEMPOROMANDIBULAR DISLOCATION; INITIAL OR SUBSEQUENT | 75.03 |
| 21485 | CLOSED TREATMENT OF TEMPOROMANDIBULAR DISLOCATION; COMPLICATED (EG, RECURRENT REQUIRING INTERMAXILLARY FIXATION OR SPLINTING), INITIAL OR SUBSEQUENT | 75.03 |
| 21490 | OPEN TREATMENT OF TEMPOROMANDIBULAR DISLOCATION | 728.10 |
| 21501 | INCISION AND DRAINAGE, DEEP ABSCESS OR HEMATOMA, SOFT TISSUES OF NECK OR THORAX; | 182.01 |
| 30000 | DRAINAGE ABSCESS OR HEMATOMA, NASAL, INTERNAL APPROACH | 30.01 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

PAGE 10

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
| --- | --- | --- |
| 30020 | DRAINAGE ABSCESS OR HEMATOMA, NASAL SEPTUM | 37.62 |
| 30100 | BIOPSY, INTRANASAL | 39.14 |
| 30110 | EXCISION, NASAL POLYP(S), SIMPLE | 105.05 |
| 30115 | EXCISION, NASAL POLYP(S), EXTENSIVE | 521.92 |
| 30140 | SUBMUCOUS RESECTION INFERIOR TURBINATE, PARTIAL OR COMPLETE, ANY METHOD | 391.44 |
| 30300 | REMOVAL FOREIGN BODY, INTRANASAL; OFFICE TYPE PROCEDURE | 52.00 |
| 30320 | REMOVAL FOREIGN BODY, INTRANASAL; BILATERAL RHINOTOMY | 130.47 |
| 30520 | SEPTOPLASTY OR SUBMUCOUS RESECTION, WITH OR WITHOUT CARTILAGE SCORING, CONTOURING OR REPLACEMENT WITH GRAFT | 1043.84 |
| 30540 | REPAIR CHOANAL ATRESIA; INTRANASAL | 150.05 |
| 30545 | REPAIR CHOANAL ATRESIA; TRANSPALATINE | 900.31 |
| 30560 | LYSIS INTRANASAL SYNECHIA | 30.01 |
| 30600 | REPAIR FISTULA; ORONASAL | 300.10 |
| 30801 | CAUTERY AND/OR ABLATION, MUCOSA OF INFERIOR TURBINATES, UNILATERAL OR BILATERAL, ANY METHOD; SUPERFICIAL | 43.86 |
| 30802 | CAUTERY AND/OR ABLATION, MUCOSA OF TURBINATES, UNILATERAL OR BILATERAL, ANY METHOD, (SEPARATE PROCEDURE); INTRAMURAL | 43.86 |
| 30901 | CONTROL NASAL HEMORRHAGE, ANTERIOR, SIMPLE (LIMITED CAUTERY AND/OR PACKING) ANY METHOD | 52.19 |
| 30905 | CONTROL NASAL HEMORRHAGE, POSTERIOR, WITH POSTERIOR NASAL PACKS AND/OR CAUTERY, ANY METHOD; INITIAL | 130.47 |
| 30906 | CONTROL NASAL HEMORRHAGE, POSTERIOR, WITH POSTERIOR NASAL PACKS AND/OR CAUTERY, ANY METHOD; SUBSEQUENT | 30.01 |
| 31015 | LIGATION ARTERIES; ETHMOIDAL | 450.16 |
| 31100 | LIGATION BY ANNULUS; MAXILLARY SINUS (ANTRUM PUNCTURE OR NATURAL OSTIUM) | 30.01 |
| 31200 | SINUSOTOMY FRONTAL; SIMPLE (TREPHINE OPERATION) | 300.10 |
| 31075 | SINUSOTOMY FRONTAL; EXTERNAL | 600.21 |
| 31080 | SINUSOTOMY FRONTAL; TRANSORBITAL, UNILATERAL (FOR MUCOCELE OR OSTEOMA, LYNCH TYPE) | 900.88 |
|  | SINUSOTOMY FRONTAL; OBLITERATIVE WITHOUT OSTEOPLASTIC FLAP, BROW INCISION (INCLUDES ABLATION) |  |
| 31090 | SINUSOTOMY, UNILATERAL, THREE OR MORE PARANASAL SINUSES (FRONTAL, MAXILLARY, ETHMOID, SPHENOID) | 1200.43 |
| 31200 | ETHMOIDECTOMY; INTRANASAL, ANTERIOR | 416.03 |
| 31225 | MAXILLECTOMY; WITHOUT ORBITAL EXENTERATION | 1500.53 |
| 31230 | MAXILLECTOMY; WITH ORBITAL EXENTERATION (EN BLOC) | 1500.53 |
| 31320 | LARYNGOTOMY (THYROTOMY, LARYNGOFISSURE); DIAGNOSTIC | 525.20 |
| 31500 | INTUBATION, ENDOTRACHEAL, EMERGENCY PROCEDURE | 105.05 |
| 31510 | LARYNGOSCOPY, INDIRECT; WITH BIOPSY | 78.00 |
| 31530 | LARYNGOSCOPY, DIRECT, OPERATIVE, WITH FOREIGN BODY REMOVAL; | 546.03 |
| 31600 | TRACHEOSTOMY, PLANNED (SEPARATE PROCEDURE); | 300.10 |
| 31601 | TRACHEOSTOMY, PLANNED (SEPARATE PROCEDURE); UNDER TWO YEARS | 300.10 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| 31820 | SURGICAL CLOSURE TRACHEOSTOMY OR FISTULA; WITHOUT PLASTIC REPAIR | 375.13 |
| 31825 | SURGICAL CLOSURE TRACHEOSTOMY OR FISTULA; WITH PLASTIC REPAIR | 375.13 |
| 31830 | REVISION OF TRACHEOSTOMY SCAR | 375.13 |
| 37600 | LIGATION, EXTERNAL CAROTID ARTERY | 600.21 |
| 38300 | DRAINAGE OF LYMPH NODE ABSCESS OR LYMPHADENITIS; SIMPLE | 45.02 |
| 38500 | BIOPSY OR EXCISION OF LYMPH NODE(S); OPEN, SUPERFICIAL | 130.47 |
| 38510 | BIOPSY OR EXCISION OF LYMPH NODE(S); OPEN, DEEP CERVICAL NODE(S) | 200.73 |
| 38520 | BIOPSY OR EXCISION OF LYMPH NODE(S); OPEN, DEEP CERVICAL NODE(S) WITH EXCISION SCALENE FAT PAD | 312.02 |
| 38550 | EXCISION OF CYSTIC HYGROMA, AXILLARY OR CERVICAL; WITHOUT DEEP NEUROVASCULAR DISSECTION | 291.30 |
| 38700 | SUPRAHYOID LYMPHADENECTOMY | 750.26 |
| 38720 | CERVICAL LYMPHADENECTOMY (COMPLETE) | 1200.43 |
| 40490 | BIOPSY OF LIP | 45.02 |
| 40500 | VERMILIONECTOMY (LIP SHAVE), WITH MUCOSAL ADVANCEMENT | 600.21 |
| 40510 | EXCISION OF LIP; TRANSVERSE WEDGE EXCISION WITH PRIMARY CLOSURE | 375.13 |
| 40520 | EXCISION OF LIP; V-EXCISION WITH PRIMARY DIRECT LINEAR CLOSURE | 375.13 |
| 40525 | EXCISION OF LIP; FULL THICKNESS, RECONSTRUCTION WITH LOCAL FLAP (EG, ESTLANDER OR FAN) | 567.30 |
| 40527 | EXCISION OF LIP; FULL THICKNESS, RECONSTRUCTION WITH CROSS LIP FLAP (ABBE-ESTLANDER) | 567.30 |
| 40530 | RESECTION OF LIP, MORE THAN ONE-FOURTH, WITHOUT RECONSTRUCTION | 375.13 |
| 40650 | REPAIR LIP, FULL THICKNESS; VERMILION ONLY | 378.20 |
| 40652 | REPAIR LIP, FULL THICKNESS; UP TO HALF VERTICAL HEIGHT | 378.20 |
| 40654 | REPAIR LIP, FULL THICKNESS; OVER ONE-HALF VERTICAL HEIGHT, OR COMPLEX | 520.03 |
| 40700 | PLASTIC REPAIR OF CLEFT LIP/NASAL DEFORMITY; PRIMARY, PARTIAL OR COMPLETE, UNILATERAL | 1050.36 |
| 40701 | PLASTIC REPAIR OF CLEFT LIP/NASAL DEFORMITY; PRIMARY BILATERAL, ONE STAGE PROCEDURE | 1350.48 |
| 40702 | PLASTIC REPAIR OF CLEFT LIP/NASAL DEFORMITY; PRIMARY BILATERAL, ONE OF TWO STAGES | 900.31 |
| 40720 | PLASTIC REPAIR OF CLEFT LIP/NASAL DEFORMITY; SECONDARY, BY RECREATION OF DEFECT AND RECLOSURE | 1050.36 |
| 40761 | PLASTIC REPAIR OF CLEFT LIP/NASAL DEFORMITY; WITH CROSS LIP PEDICLE FLAP (ABBE-ESTLANDER TYPE), INCLUDING SECTIONING AND INSERTING OF PEDICLE | 1323.72 |
| 40800 | DRAINAGE OF ABSCESS, CYST, HEMATOMA, VESTIBULE OF MOUTH; SIMPLE | 45.02 |
| 40801 | DRAINAGE OF ABSCESS, CYST, HEMATOMA, VESTIBULE OF MOUTH; COMPLICATED | 113.46 |
| 40804 | REMOVAL OF EMBEDDED FOREIGN BODY, VESTIBULE OF MOUTH; SIMPLE | 75.63 |
| 40805 | REMOVAL OF EMBEDDED FOREIGN BODY, VESTIBULE OF MOUTH; COMPLICATED | 113.46 |
| 40808 | BIOPSY, VESTIBULE OF MOUTH | 45.02 |
| 40810 | EXCISION OF LESION OF MUCOSA AND SUBMUCOSA, VESTIBULE OF MOUTH; WITHOUT REPAIR | 75.63 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
% FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
   THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
   THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| 40812 | EXCISION OF LESION OF MUCOSA AND SUBMUCOSA, VESTIBULE OF MOUTH; WITH SIMPLE REPAIR | 103.17 |
| 40814 | EXCISION OF LESION OF MUCOSA AND SUBMUCOSA, VESTIBULE OF MOUTH; WITH COMPLEX REPAIR | 141.82 |
| 40816 | EXCISION OF LESION OF MUCOSA AND SUBMUCOSA, VESTIBULE OF MOUTH; COMPLEX, WITH EXCISION OF UNDERLYING MUSCLE | 170.19 |
| 40818 | EXCISION OF MUCOSA OF VESTIBULE OF MOUTH AS DONOR GRAFT | 141.82 |
| 40830 | CLOSURE OF LACERATION, VESTIBULE OF MOUTH; 2.5 CM OR LESS | 56.73 |
| 40831 | CLOSURE OF LACERATION, VESTIBULE OF MOUTH; OVER 2.5 CM OR COMPLEX | 94.55 |
| 41100 | BIOPSY OF TONGUE; ANTERIOR TWO-THIRDS | 52.00 |
| 41105 | BIOPSY OF TONGUE; POSTERIOR ONE-THIRD | 75.03 |
| 41108 | BIOPSY OF FLOOR OF MOUTH | 161.99 |
| 41110 | EXCISION OF LESION OF TONGUE WITHOUT CLOSURE | 75.63 |
| 41112 | EXCISION OF LESION OF TONGUE WITH CLOSURE; ANTERIOR TWO-THIRDS | 450.16 |
| 41113 | EXCISION OF LESION OF TONGUE WITH CLOSURE; POSTERIOR ONE-THIRD | 141.82 |
| 41115 | EXCISION OF LINGUAL FRENUM (FRENECTOMY) | 113.46 |
| 41116 | EXCISION, LESION OF FLOOR OF MOUTH | 141.82 |
| 41120 | GLOSSECTOMY; LESS THAN ONE-HALF TONGUE | 600.12 |
| 41130 | GLOSSECTOMY; HEMIGLOSSECTOMY | 600.21 |
| 41135 | GLOSSECTOMY; PARTIAL, WITH UNILATERAL RADICAL NECK DISSECTION | 1040.07 |
| 41140 | GLOSSECTOMY; COMPLETE OR TOTAL, WITH OR WITHOUT TRACHEOSTOMY, WITHOUT RADICAL NECK DISSECTION | 1050.36 |
| 41145 | GLOSSECTOMY; COMPLETE OR TOTAL, WITH OR WITHOUT TRACHEOSTOMY, WITH UNILATERAL RADICAL NECK DISSECTION | 1323.72 |
| 41150 | GLOSSECTOMY; COMPOSITE PROCEDURE WITH RESECTION FLOOR OF MOUTH AND MANDIBULAR RESECTION, WITHOUT RADICAL NECK DISSECTION | 1486.38 |
| 41153 | GLOSSECTOMY; COMPOSITE PROCEDURE WITH RESECTION FLOOR OF MOUTH, WITH SUPRAHYOID NECK DISSECTION | 1826.73 |
| 41155 | GLOSSECTOMY; COMPOSITE PROCEDURE WITH RESECTION FLOOR OF MOUTH, MANDIBULAR RESECTION, AND RADICAL NECK DISSECTION (COMMANDO TYPE) | 3500.86 |
| 41250 | REPAIR OF LACERATION 2.5 CM OR LESS; FLOOR OF MOUTH AND/OR ANTERIOR TWO-THIRDS OF TONGUE | 66.18 |
| 41251 | REPAIR OF LACERATION 2.5 CM OR LESS; POSTERIOR ONE-THIRD OF TONGUE | 94.55 |
| 41252 | REPAIR OF LACERATION OF TONGUE, FLOOR OF MOUTH, OVER 2.6 CM OR COMPLEX | 199.10 |
| 41510 | FIXATION OF TONGUE, MECHANICAL, OTHER THAN SUTURE (EG, K-WIRE) | 247.16 |
| 41520 | SUTURE OF TONGUE TO LIP FOR MICROGNATHIA (DOUGLAS TYPE PROCEDURE) | 220.45 |
| 41520 | FRENOPLASTY (SURGICAL REVISION OF FRENUM, EG, WITH Z-PLASTY) | 203.70 |
| 41800 | DRAINAGE OF ABSCESS, CYST, HEMATOMA FROM DENTOALVEOLAR STRUCTURES | 30.01 |
| 41805 | REMOVAL OF EMBEDDED FOREIGN BODY FROM DENTOALVEOLAR STRUCTURES; SOFT TISSUES | 47.27 |
| 41806 | REMOVAL OF EMBEDDED FOREIGN BODY FROM DENTOALVEOLAR STRUCTURES; BONE | 113.46 |
| 41823 | EXCISION OF OSSEOUS TUBEROSITIES, DENTOALVEOLAR STRUCTURES | 169.00 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| 41825 | EXCISION OF LESION OR TUMOR (EXCEPT LISTED ABOVE), DENTOALVEOLAR STRUCTURES; WITHOUT REPAIR | 86.98 |
| 41826 | EXCISION OF LESION OR TUMOR (EXCEPT LISTED ABOVE), DENTOALVEOLAR STRUCTURES; WITH SIMPLE REPAIR | 170.19 |
| 41827 | EXCISION OF LESION OR TUMOR (EXCEPT LISTED ABOVE), DENTOALVEOLAR STRUCTURES; WITH COMPLEX REPAIR | 189.10 |
| 42000 | DRAINAGE OF ABSCESS OF PALATE, UVULA | 30.01 |
| 42100 | BIOPSY OF PALATE, UVULA | 45.01 |
| 42104 | EXCISION, LESION OF PALATE, UVULA; WITHOUT CLOSURE | 94.85 |
| 42106 | EXCISION, LESION OF PALATE, UVULA; WITH SIMPLE PRIMARY CLOSURE | 141.82 |
| 42120 | RESECTION OF PALATE OR EXTENSIVE RESECTION OF LESION | 601.23 |
| 42140 | UVULECTOMY, EXCISION OF UVULA | 45.02 |
| 42180 | REPAIR, LACERATION OF PALATE; UP TO 2 CM | 173.76 |
| 42182 | REPAIR, LACERATION OF PALATE; OVER 2 CM OR COMPLEX | 141.82 |
| 42200 | PALATOPLASTY FOR CLEFT PALATE, SOFT AND/OR HARD PALATE ONLY | 900.31 |
| 42205 | PALATOPLASTY FOR CLEFT PALATE, WITH CLOSURE OF ALVEOLAR RIDGE; SOFT TISSUE ONLY | 1200.43 |
| 42210 | PALATOPLASTY FOR CLEFT PALATE, WITH CLOSURE OF ALVEOLAR RIDGE; WITH BONE GRAFT TO ALVEOLAR RIDGE (INCLUDES OBTAINING GRAFT) | 1418.27 |
| 42215 | PALATOPLASTY FOR CLEFT PALATE; MAJOR REVISION | 900.31 |
| 42220 | PALATOPLASTY FOR CLEFT PALATE; SECONDARY LENGTHENING PROCEDURE | 1050.36 |
| 42225 | PALATOPLASTY FOR CLEFT PALATE; ATTACHMENT PHARYNGEAL FLAP | 900.31 |
| 42226 | LENGTHENING OF PALATE, AND PHARYNGEAL FLAP | 945.51 |
| 42227 | LENGTHENING OF PALATE, WITH ISLAND FLAP | 585.63 |
| 42235 | REPAIR OF ANTERIOR PALATE, INCLUDING VOMER FLAP | 450.16 |
| 42260 | REPAIR OF NASOLABIAL FISTULA | 661.86 |
| 42280 | MAXILLARY IMPRESSION FOR PALATAL PROSTHESIS | 118.57 |
| 42281 | INSERTION OF PIN-RETAINED PALATAL PROSTHESIS | 118.59 |
| 42325 | FISTULIZATION OF SUBLINGUAL SALIVARY CYST (RANULA); | 75.63 |
| 42326 | FISTULIZATION OF SUBLINGUAL SALIVARY CYST (RANULA); WITH PROSTHESIS | 94.55 |
| 42400 | BIOPSY OF SALIVARY GLAND; NEEDLE | 75.03 |
| 42405 | BIOPSY OF SALIVARY GLAND; INCISIONAL | 75.03 |
| 42408 | EXCISION OF SUBLINGUAL SALIVARY CYST (RANULA) | 189.10 |
| 42409 | MARSUPIALIZATION OF SUBLINGUAL SALIVARY CYST (RANULA) | 521.92 |
| 42420 | EXCISION OF PAROTID TUMOR OR PAROTID GLAND; TOTAL, WITH DISSECTION AND PRESERVATION OF FACIAL NERVE | 1050.36 |
| 42425 | EXCISION OF PAROTID TUMOR OR PAROTID GLAND; TOTAL, EN BLOC REMOVAL WITH SACRIFICE OF FACIAL NERVE | 900.31 |
| 42426 | EXCISION OF PAROTID TUMOR OR PAROTID GLAND; TOTAL, WITH UNILATERAL RADICAL NECK DISSECTION | 1144.00 |
| 42440 | EXCISION OF SUBMANDIBULAR (SUBMAXILLARY) GLAND | 486.20 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES.
THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| 42450 | EXCISION OF SUBLINGUAL GLAND | 468.00 |
| 42500 | PLASTIC REPAIR OF SALIVARY DUCT, SIALODOCHOPLASTY; PRIMARY OR SIMPLE | 525.20 |
| 42505 | PLASTIC REPAIR OF SALIVARY DUCT, SIALODOCHOPLASTY; SECONDARY OR COMPLICATED | 750.26 |
| 42507 | PAROTID DUCT DIVERSION, BILATERAL (WILKE TYPE PROCEDURE); | 391.56 |
| 42508 | PAROTID DUCT DIVERSION, BILATERAL (WILKE TYPE PROCEDURE); WITH EXCISION OF ONE SUBMANDIBULAR GLAND | 603.59 |
| 42509 | PAROTID DUCT DIVERSION, BILATERAL (WILKE TYPE PROCEDURE); WITH EXCISION OF BOTH SUBMANDIBULAR GLANDS | 686.21 |
| 42510 | PAROTID DUCT DIVERSION, BILATERAL (WILKE TYPE PROCEDURE); WITH LIGATION OF BOTH SUBMANDIBULAR (WHARTON'S) DUCTS | 570.06 |
| 42550 | INJECTION PROCEDURE FOR SIALOGRAPHY | 15.01 |
| 42600 | CLOSURE SALIVARY FISTULA | 600.21 |
| 42650 | DILATION SALIVARY DUCT | 15.01 |
| 42660 | DILATION AND CATHETERIZATION OF SALIVARY DUCT, WITH OR WITHOUT INJECTION | 53.04 |
| 42665 | LIGATION SALIVARY DUCT, INTRAORAL | 75.63 |
| 42700 | INCISION AND DRAINAGE ABSCESS; PERITONSILLAR | 78.29 |
| 42720 | INCISION AND DRAINAGE ABSCESS; RETROPHARYNGEAL OR PARAPHARYNGEAL, INTRAORAL APPROACH | 150.05 |
| 42725 | INCISION AND DRAINAGE ABSCESS; RETROPHARYNGEAL OR PARAPHARYNGEAL, EXTERNAL APPROACH | 312.02 |
| 42800 | BIOPSY; OROPHARYNX | 45.02 |
| 42802 | BIOPSY; HYPOPHARYNX | 75.03 |
| 42804 | BIOPSY; NASOPHARYNX, VISIBLE LESION, SIMPLE | 75.03 |
| 42806 | BIOPSY; NASOPHARYNX, SURVEY FOR UNKNOWN PRIMARY LESION | 113.46 |
| 42808 | EXCISION OR DESTRUCTION OF LESION OF PHARYNX, ANY METHOD | 100.89 |
| 42809 | REMOVAL OF FOREIGN BODY FROM PHARYNX | 130.10 |
| 42810 | EXCISION BRANCHIAL CLEFT CYST OR VESTIGE, CONFINED TO SKIN AND SUBCUTANEOUS TISSUES | 225.08 |
| 42815 | EXCISION BRANCHIAL CLEFT CYST, VESTIGE, OR FISTULA, EXTENDING BENEATH SUBCUTANEOUS TISSUES AND/OR INTO PHARYNX | 260.02 |
| 42970 | CONTROL OF NASOPHARYNGEAL HEMORRHAGE, PRIMARY OR SECONDARY (EG, POSTADENOIDECTOMY); SIMPLE, WITH POSTERIOR NASAL PACKS, WITH OR WITHOUT ANTERIOR | 300.10 |
| 42970 | SUTURE PHARYNX FOR WOUND OR INJURY | 105.05 |
| 61586 | BICORONAL, TRANSZYGOMATIC AND/OR LEFORT I OSTEOTOMY APPROACH TO ANTERIOR CRANIAL FOSSA WITH OR WITHOUT INTERNAL FIXATION WITHOUT BONE GRAFT | 450.16 |
| 64734 | TRANSECTION OR AVULSION OF; INFRAORBITAL NERVE | 406.98 |
| 64736 | TRANSECTION OR AVULSION OF; MENTAL NERVE | 352.20 |
| 64738 | TRANSECTION OR AVULSION OF; INFERIOR ALVEOLAR NERVE BY OSTEOTOMY | 441.84 |
| 64740 | TRANSECTION OR AVULSION OF; LINGUAL NERVE | 423.73 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED

MEDICAL ASSISTANCE POLICY FEE SCHEDULE

DENTAL SERVICES
  THIS FEE SCHEDULE LISTS THE FEES FOR A CLIENT UNDER THE AGE OF 21.
  THE FEE FOR A CLIENT 21 YEARS OF AGE AND OLDER IS 52% OF THE FEE LISTED ON THIS SCHEDULE.

| PROC CODE | DESCRIPTION OF SERVICE | FEE |
|---|---|---|
| 99221 | INITIAL HOSPITAL CARE, PER DAY, FOR THE EVALUATION AND MANAGEMENT OF A PATIENT. WHICH REQUIRES THESE THREE KEY COMPONENTS: A DETAILED OR COMPREHENSIVE HISTORY; A DETAILED OR COMPREHENSIVE EXAMINATIO | 58.28 |
| 99231 | SUBSEQUENT HOSPITAL CARE, PER DAY, FOR THE EVALUATION AND MANAGEMENT OF A PATIENT, WHICH REQUIRES AT LEAST TWO OF THESE THREE KEY COMPONENTS: A PROBLEM FOCUSED INTERVAL HISTORY; A PROBLEM FOCU | 28.98 |
| 99241 | OFFICE CONSULTATION FOR A NEW OR ESTABLISHED PATIENT, WHICH REQUIRES THESE THREE KEY COMPONENTS: A PROBLEM FOCUSED HISTORY; A PROBLEM FOCUSED EXAMINATION; AND STRAIGHTFORWARD MEDICAL DECISION MAK | 42.88 |

M.P. MANUALLY PRICED
* PRIOR AUTHORIZATION REQUIRED
@ MAY BE BILLED ONLY BY FQHCS - PROVIDER SPECIFIC RATE
# NOTE: PAYMENT FOR THIS CODE WILL FOLLOW THE PRICING METHODOLOGY FOR ADULTS AND WILL PAY AT 52% OF THE FEE LISTED