UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARY CARR, *et al.,* | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | 3:00 CV 1050 (AVC) |
| v. | ) | |
| | ) | August 21, 2008 |
| PATRICIA WILSON-COKER, in her | ) | |
| official capacity as Commissioner of the State | ) | CLASS ACTION |
| of Connecticut Department of Social Services, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

**I.** Introduction

Pursuant to Fed. R. Civ. P. 23(e), the parties to this action, including the Plaintiff class of

low-income Connecticut residents in the Medicaid managed care program, and Defendant

Michael Starkowski, Commissioner of the Connecticut Department of Social Services (DSS),1,

hereby jointly file this Memorandum in support of their joint Motion, in conjunction with the

hearing scheduled by the Court for August 26, 2008, for an order granting final approval of their

proposed Settlement Agreement in this matter, previously filed with the Court on May 1, 2008.

Following notice sent to plaintiff class members and subsequent comments received, the parties'

proposed settlement continues to meet the conditions for approval specified in Rule 23(e) of the

Federal Rules of Civil Procedure.

II. Procedural History

Plaintiffs commenced this class action against DSS on June 8, 2000, claiming the Defendant

---

1 Substituted in his official capacity for former Defendant Commissioner Patricia

failed to comply with federal statutes and regulations allegedly mandating the provision of reasonable and adequate access to oral health care furnished by dental providers to the child and adult recipients of the Connecticut "HUSKY A" Medicaid managed care program. The parties' proposed settlement of the litigation addresses the crux of plaintiffs' action, by raising Medicaid reimbursement rates to levels sufficient to ensure the participation of an adequate number of Connecticut dental providers in the Medicaid program, which would in turn allow child and adult Medicaid HUSKY A recipients to have reasonable and adequate access to dental care.[2]

Following the parties' joint motion, the Court entered an order on May 8, 2008 preliminarily approving the proposed Settlement Agreement in this matter, specifying the form, content, manner and deadline for notice to the Plaintiff class, setting July 28, 2008 as the deadline for class members to notify the Court of their intent to comment on the proposed Settlement Agreement; and setting August 26, 2008 at 11:00 a.m. for the final fairness hearing.

III. Notification To Class Members of Proposed Settlement and Fairness Hearing

After the court preliminarily approved the Settlement Agreement, DSS conducted a computer run on May 21, 2008 to determine the names of individual class members to receive notice. 127,356 notices were mailed by DSS to individuals as specified in the Court's order of May 8, 2008. DSS also translated the Notice into Spanish. Mailing was accomplished between June 5 and June 12, 2008.

The poster approved by this Court was also translated into Spanish and bilingual versions

---

Wilson-Coker.

2 The parties hereby incorporate by reference their "Joint Motion for Preliminary Approval of Settlement Agreement and Class Action Notice, and to Schedule a Hearing Regarding Settlement Approval" and accompanying Joint Memorandum of Law in Support, both filed May 1, 2008.

were prominently displayed in the waiting rooms of all DSS offices no later than June 13, 2008. Copies of the notice in English and Spanish were available either next to the poster or nearby.

By June 15, 2008, copies of the notices were posted prominently on the DSS website. A copy of the Settlement Agreement was also posted on the website. The notices and Settlement Agreement will remain on the website until at least August 26, 2008. [http://www.ct.gov/dss/cwp/view.asp?Q=385930&A=2345]

An affidavit dated August 8, 2008 prepared by Donna Balaski, D.M.D., a manager in Health Care Administration at DSS, describing the steps DSS has taken to provide notice to all class members, is attached as Exhibit A.

## IV. Comments On The Proposed Settlement Agreement

Plaintiffs' counsel received 93 telephone calls and 4 written comments from class members who had received the notices. None of the callers and only two of the commenters made an "objection" to the Settlement Agreement. The telephone calls from class members fell into the following categories, in decreasing numbers, with section "a" below listing the most common type of call:

a. Commenter sought clarification of the meaning of the notice, expressed no opinion about the Settlement Agreement;

b. Commenter approved of the settlement, described past/present difficulty locating a dental provider, and expressed thanks that the action was brought;

c. Commenters recounted their current difficulties accessing dental care;

d. One commenter objected to the Settlement because it does not provide for repayment of out-of-pocket costs incurred due to lack of providers in past, and another disagreed with "this

3

decision" because the state should be "responsible to fix my dental problems they caused me to have";

     e. One commenter expressed that "the adult situation is very bad", and one commenter wrote that dental care is very difficult for adults to obtain, and the adult fees are too low to attract/retain providers.

     f. Two callers commented that they had not been able to obtain authorization from DSS for orthodontic dental services in the past

         Plaintiffs' counsel was also contacted by phone by an orthodontist with the complaint that the orthodontia fees under the Settlement Agreement fee schedule are inadequate. This orthodontist also sent a written "Intent to Comment" to Plaintiffs' and Defendants' counsel. One written comment sent to plaintiffs' counsel included issues outside the scope of this litigation, specifically extensive problems obtaining orthopedic, mental health, and primary care, in addition to problems accessing dental care.

    Counsel for Defendant received copies of the four (4) written comments that were submitted to the Court and to counsel for plaintiffs. Counsel for Defendant did not receive any telephonic comments.

    The Court received four (4) written Notices of Intent to Comment. One commenter had no objections to the Settlement Agreement but recounted her extensive problems obtaining and retaining dental providers for her son under the HUSKY program. One individual objected to the Settlement Agreement because the Agreement does not provide payment for costs incurred due to the class member putting her children on her employer's insurance, because of a lack of HUSKY-participating providers. The third commenter objected because she feels the state is responsible for

4

fixing her dental problems caused by the poor care and lack of providers in the state's program. The fourth comment was from two orthodontists commenting on the inadequacy of the orthodontic fees.

The parties submit that the plaintiff class member comments received to date lend support to their proposal to the Court for approval of the Settlement Agreement, which is focused exclusively on steps to improve access to dental care in the Medicaid program. The parties submit that full implementation of the Settlement Agreement will result in significant improvement in the great majority of the areas of concern identified by the commenters.

The "objection" of the two orthodontists that was filed with the Court contends that the fee schedule under the Settlement Agreement is insufficient to allow adequate access to orthodontic providers. The parties note that Rule 23(e)(1) of the Federal Rules of Civil Procedure requires that notice of proposed class settlements be given only to class members "who would be bound by the proposal." This Court's review of the fairness, reasonableness and adequacy of the settlement is required if "the proposal would bind class members." Fed. R. Civ. P. 23(e)(2). Any "class member" may object to the proposed settlement. Fed. R. Civ. P. 23(e)(5). The orthodontists are not plaintiff class members who will be bound by the Settlement Agreement. Neither have they moved to intervene in this litigation, pursuant to Fed. R. Civ. P. 24. They therefore lack the requisite standing to file an objection to the proposed class settlement. *See* Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989), *cert. denied,* 493 U.S. 1058 (1990) ("We hold, therefore, that non-class members have no standing to object, pursuant to a Rule 23(e) notice directed to class members, to a proposed settlement. Interjection of the opposing views of non-class members should proceed via intervention under Rule 24."); *see also,* A. Conte, H. Newberg, 4 Newberg on Class Actions § 11.55 (4ᵗʰ ed.) (2008) ("Although it

5

may be appropriate for a nonclass member to state her or his opposition to a class settlement

through intervention pursuant to Rule 24, as a general rule only class members have standing to

object to a proposed settlement.").

      Even assuming that these two orthodontists have standing to object to the settlement,

their contentions are misplaced.  The ability of class members to access orthodontic services has

not been a significant problem, perhaps because orthodontic fees in the Medicaid fee for service

program were raised very substantially in the early 1990s, to levels that equaled or exceeded

commercial rates.  See, Affidavit of Dr. Donna Balaski dated August 21, 2008 (attached hereto as

Exhibit 2).  The discrepancy between Medicaid rates and commercial rates has not been nearly as

large for orthodontia services in comparison to other types of dental services.  Eligible children

have been able to access orthodontia services without undue difficulty.  See, Affidavit of Balaski

dated August 21, 2008 (attached hereto as Exhibit 2).  The proportion of expenditures for

Medicaid dental services that were paid for orthodontia services has historically been higher than

the proportion that is commonly paid by commercial plans for orthodontia services.  If basic

dental problems, such as caries, are not identified and treated, disease progression and serious

health problems are likely to occur.  In contrast, the medical need for orthodontia in terms of

maintaining health is not always so clear cut.  See, Affidavit of Balaski dated August 21, 2008

(attached hereto as Exhibit 2).  Given the lack of a historic problem in accessing orthodontia

services, the clear need to foster access to basic dental care for the entire HUSKY population,

and the limited funds that were available for settlement purposes, the parties reasonably

determined to settle the case on a basis that focuses primarily on steps that will be taken to foster

access to basic dental care.

The parties further note that the Settlement Agreement contains a "safety valve" which would alleviate any access problems experienced by class members. The Agreement provides that DSS must provide scheduling assistance to any HUSKY A family who requests assistance in obtaining an appointment for a child subclass member (Section XII, paragraphs 24 – 28).

Regarding the written comment expressing concern about the lower increase in adult dental rates under the proposed Settlement Agreement, the parties agree that these fees are in fact less substantial than the children's fees in the schedule. The parties have targeted limited overall funding for a significant increase in dental access for children in Connecticut.[3]

## V. Expenses Incurred by Plaintiffs

Plaintiffs incurred the following major expenses in this litigation :

a. Expert witness fees totaling $75,362.50 for Sandra Hunt, Price Waterhouse Coopers, LLP; Robert Hoyer, Hoyer Actuarial Litigation, LLC; Dr. Burton Edelstein, DDS, MPH, Columbia University; Dr. Donald Schneider, DDS, MPH.

b. Deposition expenses totaling $27,655.35 relating to the following: 15 depositions by plaintiffs of DSS employees and third party witnesses such as the Secretary of the Office of Policy and Management, the dental director of the Department of Public Health, data analysts from the Children's Health Council and CT Voices for Children, and various MCO and MCO subcontractor employees; defense of 26 depositions conducted of plaintiffs' retained trial experts; and defense of 3 depositions of the named plaintiffs.

---

[3] In its January 19, 2006 ruling, the Court awarded partial summary judgment to Defendant with respect to Causes of Action I-VI of the Complaint, finding no private right of enforcement under 42 U.S.C. § 1983. These were the primary claims affecting allegations of

c. Miscellaneous costs, e.g. postage, printing, phone, travel, sheriffs' fees: $43,552.74.

Finally, Plaintiffs' counsel in this matter have expended over 7118.55 hours in pursuit of this litigation.

VI. Conclusion

WHEREFORE, the parties request entry of an order of final Court approval of the Settlement Agreement.

Respectfully submitted:

Plaintiffs, by their counsel of record:


Jamey Bell
Federal Bar No. CT15520
Greater Hartford Legal Aid
999 Asylum Avenue, 3rd Floor
Hartford, CT 06105
(Tel.) 860.541.5046
(Fax) 860.541.5050
jbell@ghla.org

Greg Bass
Federal Bar No. CT 18114
Greater Hartford Legal Aid
999 Asylum Avenue, 3rd Floor
Hartford, CT 06105
(Tel.) 860.541.5018
(Fax) 860.541.5050
gbass@ghla.org

---

lack of dental access for adults.

_____

Anne Louise Blanchard
Federal Bar No. CT08718
Connecticut Legal Services
872 Main St.
P.O. Box 258
Willimantic, CT 06226
(Tel.) 860.456.1761
(Fax) 860.456.7420
ablanchard@connlegalservices.org

_____

Kristen Noelle Hatcher
Federal Bar No. CT27002
Connecticut Legal Services
587 Main St.
New Britain, CT 06051
(Tel.) 860.225.8678
(Fax) 860.225.6105
khatcher@connlegalservices.org

Defendant, by counsel of record:

_____

HUGH BARBER
Fed. Bar No. CT05731
hugh.barber@po.state.ct.us
Office of the Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
(860) 808-5210
Fax (860) 808-5385

Dated: _____ August 21, 2008 _____

9

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARY CARR, et al.,<br> Individually and on Behalf of all<br> Other Persons Similarly Situated,<br> PLAINTIFFS<br> v. | : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO.<br> 3:00CV1050 (AVC) |
| PATRICIA WILSON-COKER, in her<br> official capacity as Commissioner<br> of the State of Connecticut<br> Department of Social Services,<br> DEFENDANT | : <br> : <br> : <br> : <br> : | AUGUST 8, 2008 |

## <u>AFFIDAVIT OF DONNA BALASKI, D.M.D.</u>

Donna Balaski, D.M.D., being duly sworn, deposes and says:

1)  That she is employed by the Department of Social Services as a Manager in Health Care Administration.

2)  That she was responsible for overseeing the Department's implementation of the Court-ordered notice to class members of the proposed settlement of this action.

3)  That the Court-approved Summary Notice and Notice of Proposed Settlement Agreement were translated into Spanish. DSS then did a computer run on May 21, 2008 to extract the names and addresses of individuals who were entitled to receive notice under the terms of the Court's Order. 127, 356 notices were mailed to individual heads of HUSKY households. To the best of the affiant's knowledge, notice was sent to every individual who is entitled to receive notice under the Court's Order. Mailing was accomplished between June 5 2008 and June 12, 2008.

4)  That the poster approved by this Court was translated into Spanish. English and Spanish versions of the poster were prominently displayed in the waiting rooms of all DSS offices by no later than June 13, 2008. Copies of the Summary Notice and of the Notice of Proposed Settlement were available in each DSS office, either nearby the posters or at the client check-in area. The posters and notices will remain posted and available at all DSS offices until the date of the fairness hearing.

5)  Copies of the notices were prominently posted and available on the DSS website by June 15, 2008. A copy of the full Settlement Agreement was also available on the DSS website. The notices and agreement will remain available on the website until at least August 26, 2008.

Exhibit 1 p. 1

6) The foregoing facts are attested to by the affiant on the basis of her own personal knowledge and/or based on a review of the DSS files.


_____
Donna Balaski, D.M.D.


STATE OF CONNECTICUT:
                     : ss.  Hartford
COUNTY OF HARTFORD   :

Donna Balaski, D.M.D., personally appeared before me on this 8th day of August, 2008, and swore that the foregoing is true to the best of her knowledge and belief.

BY:  _____
     Hugh Barber
     Commissioner of the Superior Court

2

Exhibit 1 p. 2

UNITED STATES DISTFUCT COURT
DISTRICT OF CONNECTICUT

MARY CARR, et al.,                                   CIVIL ACTION NO.
   Individually and on Behalf of all            3:00CV1050 (AVC)
   Other Persons Similarly Situated,
      PLAINTIFFS
     v.

PATRICIA WILSON-COKER, in her
   official capacity as Commissioner
   of the State of Connecticut
   Department of Social Services,
      DEFENDANT                              AUGUST 21, 2008

## APFIDAVIT OF DONNA BALASKI, D.M.D.

Donna Balaski, D.M.D., being duly sworn, deposes and says:

1) That she is employed by the Department of Social Services as a Manager in Health Care Administration.

2) That she is a dentist and that her responsibilities include overseeing the Department's provision of dental services as a covered benefit under its Medicaid program.

3) That historically, the Medicaid fees for covered orthodontia services in the Medicaid fee for service program were raised substantially, in the early 1990s, to levels that equaled or exceeded commercial reimbursement rates.

4) That prior to the adjustment in fees called for by this Settlement Agreement, the Medicaid fee for service fees for orthodontia services were much closer to commercial rates in comparison to the discrepancy between the Medicaid fees for other types of dental services and commercial rates.

5) That a sufficient number of orthodontists have historically participated in the Medicaid program such that difficulty in obtaining access to care has not been a significant issue for orthodontia services.

6) That part of her job duties includes assisting Medicaid-covered individuals in obtaining access to dental services. That she has documented approximately 150 cases over the last year or so where her assistance was requested in obtaining access to dental care. In not one of those cases was her assistance sought where the client had followed the

*Exhibit 2 p.1*

established procedure of calling orthodontists listed in the Member Handbook first before her assistance was sought. In one case, assistance was sought in accessing orthodontia services, but, in that case, the family had not attempted to call participating orthodontists listed in the Member Handbook.

7) With some exceptions, DSS has provided Medicaid-covered services through contracted Medicaid Managed Care Organizations (MCOs) to eligible families that contain dependent children. The MCOs are required to meet contractual access to care requirements. MCOs are required to reimburse their participating providers at a level that at least equals the Medicaid fee for service fee schedule. However, they are permitted to reimburse providers at a higher level. The MCOs are also permitted to vary their fees as a result of contract negotiations with individual participating providers and as necessary to meet contractual access to care standards. Excluding "outlier" fees paid to individual providers on an exceptions basis, a "typical" orthodontia fee paid by a MCO, acting through dental subcontractors, was an "all inclusive" fee of approximately $3,300.00.

8) The DSS Medicaid fee for service fees for orthodontia services historically, and going forward under the proposed Settlement Agreement, are as follows:

| Procedure Code | Fee |
|---|---|
| D8080 Appliance | $596.33 |
| D8660 Pre Orth Visit | 34.32 |
| D8670 Monthly Rx | 93.80 x 24 = $2,251/80 |
| | 93.80 x 30 = $2,814.00 |
| TOTALS | 24 months $2,881.85 |
| | 30 months $3,444.65 |

9) The 24 versus 30 month orthodontia treatment fees under Medicaid fee for service depend upon the severity of the malocclusion and the likely duration of treatment. In contrast, MCOs typically paid a single all-inclusive fee, generally about $3,300, without distinguishing based upon the severity of the case or likely duration of treatment.

10) In addition, current and prospective DSS Medicaid fee for service policies also allow for the separate reimbursement for the following procedures when provided in connection with the provision of orthodontic services. In contrast, the MCOs did not allow separate billing for these services related to the provision of orthodontia services.

| Procedure Code | | Medicaid Fee for Service Fee |
|---|---|---|
| D 0370 | Panoramic Film | $97.00 |
| D0470 | Diagnostic Costs | $98.00 |

2

Exh. 2 p. 2

Many orthodontists were apparently not previously aware that they could bill Medicaid separately for these services when provided in connection with orthodontia services since most commercial insurers only allow orthodontists to bill a single "bundled rate" for all services related to the provision of orthodontia. If these two additional procedures are provided and billed separately, the effective Medicaid for service fees for all orthodontia-related services would effectively be either $3,076.85 or $3,639.65, in comparison to a single all-inclusive fee of approximately $3,300.

11) When allowable Medicaid fee for service fees are compared to typical all-inclusive MCO fees, the above paragraphs demonstrate that the Medicaid fee for service fees have been and will be, either approximately equal to the typical all-inclusive MCO fee (24 month fees) or actually higher than the typical MCO fee (30 month fees).

12) Since almost all families with dependent children have been enrolled in Medicaid managed care, orthodontia utilization data is primarily derived from the MCOs. The orthodontia utilization data indicates that the number of new orthodontia cases started each month is trending up over time, not declining as a result of any concerns related to orthodontia reimbursement rates. See "Exhibit A" attached hereto which summarizes the number of new orthodontia cases started each month for Medicaid-eligible children between July 2005 and March 2008. It is expected that Medicaid-eligible children will continue to enjoy similar access to orthodontia services if the Settlement Agreement is approved and dental services are "carved out" of Medicaid managed care.

13) The Department of Social Services is currently engaged in conversations with orthodontists about the possibility of allowing orthodontists to bill separately for two additional services in connection with the provisions of orthodontia.

<u>Considered Fee</u>

| | | |
|---|---|---|
| D 0340 | Cephalometricic Film | $90.00 |
| D 0350 | Oral/Facial Images | $52.00 |

No decision has been made at this time and no representation can be made that the Department will allow separate billing for these two procedures when provided in connection with orthodontia. If separate billing is allowed for these two services, it will increase the amount of total reimbursement that is available to orthodontists under the program.

14) Only a small percentage of Medicaid-eligible children require orthodontia services. Basic dental services are necessary to identify and treat dental disease and to prevent further harm, which will occur if the problem is left untreated. In contrast, the medical need for orthodontia in terms of preventing disease progression and further harm is not always clear. Given limited resources, it is a more prudent use of scarce resources to

3

Exh. 2 p. 3

increase fees for basic dental services substantially instead of utilizing a significant amount of funds to raise orthodontia fees since access to orthodontia services has not historically been as problematic as access to routine preventive and restorative services, which are necessary to prevent and treat dental disease, pain, and discomfort.

15) The foregoing facts are attested to by the affiant on the basis of her own personal knowledge and/or based on a review of the DSS files.

Donna Balaski, D.M.D.

STATE OF CONNECTICUT:
                 : ss.  Hartford
COUNTY OF HARTFORD :

     Donna Balaski, D.M.D., personally appeared before me on this 21st day of August, 2008, and swore that the foregoing is true to the best of her knowledge and belief.

Commissioner of the Superior Court

4

Exh. 2  p. 4

| Month | FFS New Orthodontic Cases | HealthPlex Ortho Cases Started | Wellcare Ortho Cases Started | BeneCare Ortho Case Started | Total Number of New Orthodontic Cases |
|---|---|---|---|---|---|
| July-05 | 2 | n/a | n/a | 102 | 104 |
| August-05 | | n/a | n/a | 39 | 39 |
| September-05 | 1 | n/a | n/a | 35 | 36 |
| October-05 | | n/a | n/a | 48 | 48 |
| November-05 | | 30 | 8 | 48 | 86 |
| December-05 | | 35 | 10 | 47 | 93 |
| January-06 | | 50 | 14 | 51 | 115 |
| February-06 | | 49 | 18 | 64 | 131 |
| March-06 | | 87 | 7 | 55 | 149 |
| April-06 | | 50 | 13 | 36 | 99 |
| May-06 | | 77 | 6 | 39 | 122 |
| June-06 | 1 | 87 | 20 | 47 | 155 |
| July-06 | | 29 | 22 | 42 | 93 |
| August-06 | 2 | 51 | 24 | 50 | 128 |
| September-06 | | 101 | 20 | 45 | 166 |
| October-06 | | 103 | 25 | 48 | 176 |
| November-06 | 1 | 80 | 23 | 36 | 140 |
| December-06 | | 82 | 26 | 42 | 150 |
| January-07 | | 79 | 26 | 48 | 153 |
| February-07 | 2 | 83 | 28 | 40 | 153 |
| March-07 | | 96 | 35 | 57 | 189 |
| April-07 | | 90 | 42 | 43 | 175 |
| May-07 | 1 | 94 | 16 | 37 | 148 |
| June-07 | | 62 | 12 | 30 | 104 |
| July-07 | 1 | 72 | 17 | 42 | 132 |
| August-07 | | 45 | 15 | 46 | 106 |
| September-07 | | 117 | 6 | 38 | 161 |
| October-07 | 1 | 139 | 2 | 34 | 176 |
| November-07 | 1 | 120 | 0 | 30 | 151 |
| December-07 | 1 | 85 | n/a | 23 | 109 |
| January-08 | | 133 | n/a | 40 | 173 |
| February-08 | | 101 | n/a | 39 | 140 |
| March-08 | 1 | 139 | n/a | 107 | 248 |

Exh. 2 p.5